**Stanton R. Gallegos, OSB #160091**
StantonGallegos@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085

**Neal J. Deckant** *
ndeckant@bursor.com
**Julia K. Venditti** *
jvenditti@bursor.com
BURSOR & FISHER, P.A.
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455

*Attorneys for Plaintiffs and the Putative Class*
*Additional Counsel on Signature Page*


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| VICTOR WALKINGEAGLE; and NATHAN BRIGGS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, d/b/a YOUTUBE, a Delaware limited liability company; and YOUTUBE, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 3:22-cv-763<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF OREGON'S UNLAWFUL TRADE PRACTICES ACT ("UTPA"), ORS 646.608(1)(ttt)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Victor Walkingeagle and Nathan Briggs (collectively, "Plaintiffs") bring this

action individually and on behalf of all others similarly situated against Defendants Google LLC,

d/b/a YouTube, and YouTube, LLC, (collectively, "YouTube" or "Defendants"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a putative class action lawsuit against Defendants for engaging in an illegal "automatic renewal" scheme with respect to their subscription plans for YouTube-branded products and services that are available exclusively to consumers who enroll in Defendants' auto-renewal membership programs (collectively, the "YT Subscriptions," enumerated below).

2.      Defendants own and operate a media-sharing platform, YouTube (the "YouTube Platform"), which contains videos created by individuals and entities that have registered with YouTube and uploaded their videos to a "channel." The YouTube Platform is accessible as a website at youtube.com (the "YT Website"), or as a mobile application or an application on a set top streaming device (collectively, the "YT Apps").

3.      Through the YouTube Platform, Defendants market, advertise, and sell paid memberships to the YT Subscriptions, which include YouTube TV, YouTube Music, and YouTube Premium. YouTube TV is a subscription-based service that provides paying subscribers in the United States access to exclusive YouTube content, premium channels, and film rentals via authorized devices. YouTube Music and YouTube Premium are subscription-based services that offer, among other things, premium and ad-free music streaming and ad-free access to all YouTube content, including exclusive content commissioned from notable YouTube personalities. Consumers may sign up for Defendants' YT Subscriptions through the YT

Website and, in some cases, the YT Apps.[1]

4.      Relevant to Plaintiffs' allegations, when consumers sign up for the YT Subscriptions, Defendants actually enroll consumers in a program that automatically renews the YT Subscriptions from month-to-month or year-to-year and results in monthly or annual charges to the consumer's credit card, debit card, or third-party payment account ("Payment Method"). In doing so, Defendants fail to provide the requisite disclosures and authorizations required to be made to Oregon consumers under Oregon's Automatic Renewal Law ("ARL"), ORS 646A.295, in direct violation of Oregon's Unlawful Trade Practices Act ("UTPA"), ORS 646.608(1)(ttt).

5.      To sign up for Defendants' YT Subscriptions through the YT Website or the YT Apps, customers provide Defendants with their billing information and Defendants then automatically charges their customers' Payment Method as payments are due, typically on a monthly or annual basis.  Defendants are able to unilaterally charge its customers renewal fees without their consent, as Defendants are in possession of their customers' billing information. Thus, Defendants have made the deliberate decision to charge Plaintiffs and other similarly situated customers on a monthly or yearly basis, absent their consent under the ARL, relying on consumer confusion and inertia to retain customers, combat consumer churn, and bolster its revenues.

6.      Pursuant to the ARL, online retailers who offer automatically renewing subscriptions to Oregon consumers must: (i) provide the complete automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to the

---

[1] Effective March 13, 2020, "YouTube TV [no longer] accept[s] new signups through in-app subscriptions on the iPhone and iPad[.]"  https://www.macrumors.com/2020/02/13/youtube-tv-app-store-subscriptions-ending/ (citing Defendants' email to all YouTube TV subscribers dated February 13, 2020). Thus, all subscribers who have enrolled in Defendants' YouTube TV subscription program since then must have subscribed to YouTube TV via the YT Website.  However, prior to that point, customers were able to initiate a paid YouTube TV subscription via *either* the YT Website *or the YT Apps*.

purchase, *see* ORS 646A.295(1)(a); *see also* ORS 646A.293(5)(a)-(e) (setting forth definition of "offer terms" as used in ORS 646A.295); (ii) obtain consumers' affirmative consent to the purchase prior to charging their Payment Methods in connection with the subscriptions, *see id.* § 646A.295(1)(b); and (iii) provide an acknowledgment that includes the automatic renewal offer terms and identifies a cost-effective, timely, and easy-to-use mechanism for consumers to cancel their subscriptions, *see id.* §§ 646A.295(1)(c), 646A.295(2).

7.    Those purchasing the YT Subscriptions do so either by choosing a free trial that automatically renews with a paid subscription at the end of the trial period, or a paid monthly or annual subscription (at either the full standard recurring rate that Defendants ordinarily charge or at a promotional or discounted rate that remains static for a limited period of time and then automatically renews to the full standard rate).  As will be discussed below, the enrollment process for a YT Subscription on the YT Website and Apps uniformly violates each of the core requirements of the ARL.  Defendants also make it exceedingly difficult and unnecessarily confusing for consumers to cancel their YT Subscriptions.

8.    Specifically, Defendants systematically violate the ARL by: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement is fulfilled, in direct violation of Section 646A.295(1)(a) of the UTPA; (ii) charging consumers' Payment Method without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in direct violation of Section 646A.295(1)(b) of the UTPA; and (iii) failing to provide an acknowledgment that includes the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in direct violation of Sections 646A.295(1)(c) and 646A.295(2) of the

UTPA.  *See also* ORS 646A.293(5)(a)-(e) (defining "offer terms" as used in ORS 646A.295).

As a result, all goods, wares, merchandise, or products sent to Plaintiffs and the Class under the

automatic renewal of continuous service agreements are deemed to be "unconditional gifts"

under the ARL.  ORS 646A.295(5).

9.      For the foregoing reasons, Plaintiffs bring this action individually and on behalf

of all Oregon purchasers of any of Defendants' YT Subscriptions from the YT Platform who,

within the applicable statute of limitations period up to and including the date of judgment in this

action, incurred unauthorized fees for the renewal of their YT Subscriptions.  Based on

Defendants' unlawful conduct, Plaintiffs seek damages, restitution, declaratory relief, injunctive

relief, and reasonable attorneys' fees and costs, for violation of Oregon's Unlawful Trade

Practices Act (the "UTPA"), ORS 646.608(1)(ttt).

## THE PARTIES

10.     Plaintiff Victor Walkingeagle is a citizen of Oregon, residing in Portland, Oregon.

In or about December 2021, Mr. Walkingeagle signed up for a free trial of Defendants' monthly

YouTube Music subscription from Defendants' website while in Oregon.  During the enrollment

process but before finally consenting to Defendants' subscription offering, thereby completing

the checkout process, Mr. Walkingeagle provided his debit card information directly to

Defendants.  At the time Mr. Walkingeagle enrolled in his YT Subscription program, Defendants

did not disclose to Mr. Walkingeagle all required automatic renewal offer terms associated with

the subscription program or obtain Mr. Walkingeagle's affirmative consent to those terms.  For

instance, at the time of enrollment, Mr. Walkingeagle was not aware that, upon the expiration of

Mr. Walkingeagle's free trial subscription, Defendants would automatically convert his free trial

into a paid, automatically renewing subscription.  Nor did Defendants adequately disclose the

length of Mr. Walkingeagle's free trial or when the first charge would occur.  Further, after Mr.

Walkingeagle completed his initial order, Defendants sent Mr. Walkingeagle an email

confirmation and receipt for his purchase of and enrollment in a YT Subscription (the

"Acknowledgment Email").  However, the Acknowledgment Email, too, failed to provide Mr.

Walkingeagle with the complete automatic renewal terms that applied to Defendants' offer, a

description of Defendants' full cancellation policy, or information regarding how to cancel Mr.

Walkingeagle's YT Subscription in a manner capable of being retained by him.  Mr.

Walkingeagle did not receive any other acknowledgement that contained the required

information.  As a result, Mr. Walkingeagle was not placed on notice of several material terms

associated with his YT Subscription.  In particular, Mr. Walkingeagle was not made aware of the

fact that his YT Subscription would automatically renew after the initial free trial period, of the

length of the free trial period, or of when the first charge would occur, and nor was he apprised

of the complete cancellation policy associated with his YT Subscription, the most crucial aspects

of which were missing from the Checkout Page and Acknowledgment Email.  In any case,

approximately three months after Mr. Walkingeagle first signed up for his YT Subscription in or

around February 2022, Defendants automatically renewed Mr. Walkingeagle's YT Subscription

and charged Mr. Walkingeagle's Payment Method approximately $9.99, the full monthly

standard membership fee then associated with Defendants' paid monthly YouTube Music

subscription.  Further, Mr. Walkingeagle has been unable to cancel his YT Subscription due to

Defendants' confusing cancellation policy, the most crucial aspects of which were missing from

the Checkout Page and the Acknowledgment Email.  As a result, Mr. Walkingeagle is still

enrolled in, and continues to receive monthly renewal charges for, his YT Subscription to this

day, despite the fact that he does not want to remain subscribed or pay any further renewal fees.

Defendants' missing and/or incomplete disclosures on the Checkout Page and in the Acknowledgment Email, their failure to obtain Mr. Walkingeagle's affirmative consent before charging his Payment Method on a recurring basis, and their subsequent failure to issue a refund of those unauthorized charges, are contrary to the ARL, which deems products provided in violation of the statute to be a gift to consumers. *See* ORS 646A.295. Had Defendants complied with the ARL, Mr. Walkingeagle would have been able to read and review the auto renewal terms prior to purchase, and he would have not subscribed to YouTube Music or he would have cancelled his YT Subscription earlier, *i.e.*, prior to the expiration of the initial subscription period and/or any subsequent renewal term. As a direct result of Defendants' violations of the ARL, Mr. Walkingeagle suffered economic injury.

11.     Plaintiff Nathan Briggs is a citizen of Oregon, residing in Klamath Falls, Oregon. In or about April 2021, Mr. Briggs signed up for Defendants' monthly YouTube Music subscription from Defendants' website while in Oregon. However, as discussed below, Mr. Briggs did not actually learn that his YT Subscription was an automatic renewal until late May 2022 or early June 2022. During the enrollment process but before finally consenting to Defendants' subscription offering, thereby completing the checkout process, Mr. Briggs provided his debit card information directly to Defendants. At the time Mr. Briggs enrolled in his YT Subscription program, Defendants did not disclose to Mr. Briggs all required automatic renewal offer terms associated with the subscription program or obtain Mr. Briggs affirmative consent to those terms. Further, after Mr. Briggs completed his initial order, Defendants sent Mr. Briggs an Acknowledgment Email that, too, failed to provide Mr. Briggs with the complete automatic renewal terms that applied to Defendants' offer, a description of Defendants' full cancellation policy, or information regarding how to cancel Mr. Briggs's YT Subscription in a

manner capable of being retained by him.  Mr. Briggs did not receive any other

acknowledgement that contained the required information.  As a result, Mr. Briggs was not

placed on notice of several material terms associated with his YT Subscription.  Approximately

one month after enrollment, in or around May 2021, Defendants automatically renewed Mr.

Briggs's YT Subscription and charged Mr. Briggs's Payment Method approximately $9.99, the

full monthly standard membership fee then associated with Defendants' paid monthly YouTube

Music subscription.

       12.     Immediately after seeing Defendants' charge to his Payment Method in late May

or early June (upon review of his bank statement for May) – and, as a result of which, learning

for the first time that his YT Subscription was an automatic renewal for which he would receive

recurring monthly charges – Mr. Briggs promptly attempted to cancel his YT Subscription,

which he struggled to do due to Defendants' obscured, confusing, and time consuming

cancellation policy.  However, finding no useful guidance in the vague and incomplete terms that

were presented to him on the Checkout Page at the point of sale and later in the

Acknowledgement Email, Mr. Briggs struggled immensely with the cancellation process.

Ultimately, Mr. Briggs was only able to affect cancellation, and thereby stop Defendants from

automatically charging his Payment Method on a recurring basis, by altogether cancelling his

debit card through his bank.  Defendants' missing and/or incomplete disclosures on the Checkout

Page and in the Acknowledgment Email, their failure to obtain Mr. Briggs's affirmative consent

before charging his Payment Method on a recurring basis, and their subsequent failure to issue a

refund of those unauthorized charges, are contrary to the ARL, which deems products provided

in violation of the statute to be a gift to consumers.  *See* ORS 646A.295.  Had Defendants

complied with the ARL, Mr. Briggs would have been able to read and review the auto renewal

terms prior to purchase, and he would have not subscribed to YouTube Music or he would have cancelled his YT Subscription earlier, *i.e.*, prior to the expiration of the initial subscription period and/or any subsequent renewal term.  As a direct result of Defendants' violations of the ARL, Mr. Briggs suffered economic injury

13.     Defendant Google LLC ("Google") is a Delaware limited liability company with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google has done business throughout Oregon and throughout the United States at all times during the Class Period.  At all relevant times, acting alone or in concert with others, Google has advertised, marketed, sold, and distributed the YT Subscriptions and all products and services pertaining thereto, to consumers in Oregon and throughout the United States.  At all relevant times, acting alone or in concert with Defendant YouTube, LLC, Google formulated, directed, controlled, had the authority to control, and/or participated in the acts and practices set forth in this Complaint.

14.     Defendant YouTube, LLC ("YouTube") is a Delaware limited liability company with its principal place of business at 901 Cherry Avenue, San Bruno, California 94066. YouTube is a wholly owned subsidiary of Google, and it has done business throughout Oregon and throughout the United States at all times during the Class Period.  At all relevant times, acting alone or in concert with Defendant Google, YouTube advertised, marketed, sold, and distributed the YT Subscriptions and all products and services pertaining thereto, to consumers in Oregon and throughout the United States.  At all relevant times, acting alone or in concert with Defendant Google, YouTube formulated, directed, controlled, had the authority to control, and/or participated in the acts and practices set forth herein.

15.     Defendants Google and YouTube (collectively, "YouTube" or "Defendants") own

and operate the YouTube Platform, which contains, among other things, videos and music created by individuals and entities that have registered with YouTube, created a "channel," and uploaded their content to that channel for public consumption.  In fact, YouTube is "the dominant provider of online video in the United States[,]" and has been for more than a decade.[2] Defendants also offer access to certain exclusive YouTube content, products, and/or services on a contract or fee basis to customers who enroll in a YT Subscription.  Defendants wholly own and operate the YT Subscriptions, which include YouTube TV, YouTube Music, and YouTube Premium.  Defendants are also responsible for the promotion, advertisement, marketing, and/or sale of the YT Subscription programs, and they own and operate the YT Website and Apps, where they market and sell their YT Subscriptions.  Defendants sell their YT Subscriptions in Oregon and have transacted in and throughout Oregon and throughout the United States at all times during the Class Period.  In connection with the YT Subscriptions, Defendants made automatic renewal offers to consumers in Oregon and throughout the United States via the YT Website and YT Apps during the Class Period.

16.    Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class

---

[2] *Comscore Releases May 2010 U.S. Online Video Rankings*, Comscore (Jun. 24, 2010), https://www.comscore.com/Insights/Press-Releases/2010/6/comScore-Releases-May-2010-US-Online-Video-Rankings?cs_edgescape_cc=US.

action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiffs, as well as most members of the proposed class, are citizens of a state different from Defendants.

18.     This Court has personal jurisdiction over the parties because Plaintiffs reside in Oregon and submit to the jurisdiction of the Court, and because Defendants have, at all times relevant hereto, systematically and continually conducted business in Oregon, including within this District, and/or intentionally availed itself of the benefits and privileges of the Oregon consumer market through the promotion, marketing, and sale of its products and/or services to residents within this District and throughout Oregon.  Additionally, Plaintiffs purchased their YT Subscriptions from Defendants while in Oregon.

19.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Also, Plaintiffs reside in this District and purchased Defendants' YT Subscription in this District.  Moreover, Defendants systematically conduct business in this District and throughout the State of Oregon, and they distributed, advertised, and sold the YT Subscriptions to Plaintiffs and Class Members in this State and District.  The Portland Division is the appropriate venue because, as explained below, a substantial part of the events giving rise to the claims occurred in this division.

## **FACTUAL BACKGROUND**

### **A.     Background On The Subscription e-Commerce Industry**

20.     The e-commerce subscription model is a business model in which retailers

provide ongoing goods or services "in exchange for regular payments from the customer."[3] Subscription e-commerce services target a wide range of customers and cater to a variety of specific interests. According to an October 2020 report by Juniper Research[4], "multiservice subscriptions, that provide several services for a single cost, … will be led by offerings from tech conglomerates," such as YouTube.[5] Given the prevalence of online and e-commerce retailers, subscription e-commerce has grown rapidly in popularity in recent years. Indeed, the "subscription economy has grown more than 400% over the last 8.5 years as consumers have demonstrated a growing preference for access to subscription services[.]"[6] Analysts at UBS predict that the subscription economy will expand into a $1.5 trillion market by 2025, up from $650 billion in 2020.[7] That constitutes an average annual growth rate of 18%, which makes the

---

[3] Core DNA, *How to Run an eCommerce Subscription Service: The Ultimate Guide* (May 19, 2020), https://www.coredna.com/blogs/ecommerce-subscription-services.

[4] Juniper Research, one of the leading analyst firms in the mobile and digital tech sector, specializes in identifying and appraising new high growth market sectors within the digital ecosystem and provides research and analytical services to the global hi-tech communications sector, as well as consultancy, analyst reports, and industry commentary. *See* https://www.juniperresearch.com/about-us.

[5] Juniper Research, *Subscriptions for Physical Goods to Overtake Digital Subscriptions by 2025; Growing to Over $263Bn Globally* (Oct. 12, 2020), https://www.juniperresearch.com/press/subscriptions-for-physical-goods-to-overtake.

[6] Business Insider, *Taco Bell's taco subscription is rolling out nationwide — here's how to get it* (Jan. 6, 2022), https://www.businessinsider.com/taco-bell-subscription-launching-across-the-country-2022-1 (internal quotation marks omitted).

[7] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html ("[A]t close to USD 650 billion in 2020, we expect the subscription economy to expand into a USD 1.5 trillion market by 2025, implying an average annual growth rate of 18%.").

    *See also* Subscribed, *UBS Declares: It's Worth Investing in the Subscription Economy* (Apr. 17, 2021), https://www.subscribed.com/read/news-and-editorial/ubs-declares-its-worth-investing-in-the-subscription-economy; Business 2 Community, *The Subscription Economy Is Booming Right Now. But Are You Reaping the Full Benefits?* (Oct. 7, 2021), https://www.business2community.com/ecommerce/the-subscription-economy-is-booming-right-now-but-are-you-reaping-the-full-benefits-02434851.

subscription economy "one of the fastest-growing industries globally."[8]  And, by all accounts, Defendants played a major role in spurning this rapid growth.

21.     Defendants launched YouTube Red (now YouTube Premium[9]), in or around October 2015.  Through YouTube Premium, Defendants provide subscribers with access to, among other things, ad-free all content on the YouTube Platform, YouTube's premium original series, and films produced by YouTube personalities, as well as background playback of content on mobile devices.  Additionally, in or around February 2017, Defendants launched YouTube TV, another subscription-based service offering, among other things, live streams of programming from major broadcast television networks and channels.[10]  Finally, in May 2018, Defendants announced the launch of YouTube Music, a third subscription-based service oriented towards streaming and discovering music content hosted on the YouTube Platform.[11]

22.     As noted above, the production, sale, and distribution of subscription-based products and services is a booming industry that has exploded in popularity over the past few years.  According to *Forbes*, "[t]he subscription e-commerce market has grown by more than

---

[8] UBS, *Investing in digital subscriptions* (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html ("[Growth] was seen across many areas, including e-commerce, video streaming, gaming, cloud-based applications, etc."); *see also* Juniper Research, *Subscriptions For Physical Goods To Overtake Digital Subscriptions By 2025; Growing To Over $263bn Globally* (Oct. 12, 2020), https://www.juniperresearch.com/press/subscriptions-for-physical-goods-to-overtake (acknowledging "the significant lead the digital sector has had in th[e] area[ of digital service subscriptions]").

[9] Defendants announced the re-branding of YouTube Red as YouTube Premium in May 2018.  *See YouTube to launch new music streaming service*, The Guardian (May 17, 2018), https://www.theguardian.com/music/2018/may/17/youtube-music-new-streaming-service-launch ("YouTube Red – the ad-free, paid-for version of YouTube – will be renamed YouTube Premium and include access to YouTube Music. Existing subscribers will continue to pay $9.99 a month, while new subscribers will pay $11.99.").

[10] *See YouTube is Officially in the Live TV Game Now*, Gizmodo (Apr. 2017), https://gizmodo.com/youtube-is-officially-in-the-live-tv-game-now-1794049030.

[11] *See Google announces YouTube Music and YouTube Premium*, The Verge (May 17, 2018), https://www.theverge.com/2018/5/17/17364056/youtube-music-premium-google-launch.

100% percent a year over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in 2011."[12]  Following 2016, market growth within the industry increased exponentially, reaching $650 billion in 2020.[13]  "As such, the financials of companies with subscription business models[] … improved dramatically in 2020 thanks to limited revenue volatility and strong cash flow generation."[14]  Thus, "[t]he share prices of most subscription companies have performed well in recent years."[15]

  23. The expansion of the subscription e-commerce market shows no signs of slowing. "We're now in the subscriptions era, and the pandemic is accelerating its takeover.  During the COVID-19 lockdowns, many digital-based subscription business models fared well due to their promise of convenience and strong business continuity."[16]  According to *The Washington Post*, "[s]ubscriptions boomed during the coronavirus pandemic as Americans largely stuck in shutdown mode flocked to digital entertainment[.] … The subscription economy was on the rise before the pandemic, but its wider and deeper reach in nearly every industry is expected to last, even after the pandemic subsides in the United States."[17]

  24. However, as *The Washington Post* has noted, there are downsides associated with

---

[12] Forbes, *The State Of The Subscription Economy, 2018* (Mar. 4, 2018), *available at* https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/#6ad8251a53ef.

[13] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), *available at* https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html.

[14] *Id.*

[15] *Id.*

[16] UBS, *Investing in digital subscriptions* (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html.

[17] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ (noting that "e-commerce and entertainment subscriptions to sites such as Netflix, Hulu and Disney Plus made headlines during the pandemic for soaring growth").

the subscription-based business model.[18]  While the subscription e-commerce market has low

barriers and is thus easy to enter, it is considerably more difficult for retailers to dominate the

market due to the "highly competitive prices and broad similarities among the leading players."[19]

In particular, retailers struggle with the fact that "[c]hurn rates are high, [] and consumers

quickly cancel services that don't deliver superior end-to-end experiences."[20]  Yet, retailers have

also recognized that, where the recurring nature of the service, billing practices, or cancellation

process is unclear or complicated, "consumers may lose interest but be too harried to take the

extra step of canceling their membership[s]."[21]  As these companies have realized, "[t]he real

money is in the inertia."[22]  As a result, "[m]any e-commerce sites work with third-party vendors

to implement more manipulative designs."[23]  That is, to facilitate consumer inertia, a number of

subscription e-commerce companies, including Defendants, "are now taking advantage of

subscriptions in order to trick users into signing up for expensive and recurring plans.  They do

this by intentionally confusing users with their app's design and flow, by making promises of

---

[18] The Washington Post *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), *available at* https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[19] McKinsey & Company, *Thinking inside the subscription box: New research on e-commerce consumers* (Feb. 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking-inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

[20] *Id.*

[21] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), *available at* https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[22] *Id.*

[23] Business Insider, *A new study from Princeton reveals how shopping websites use 'dark patterns' to trick you into buying things you didn't actually want* (Jun. 25, 2019), https://www.businessinsider.com/dark-patterns-online-shopping-princeton-2019-6.

Page 15 - COMPLAINT

'free trials' that convert after only a matter of days, and other misleading tactics."[24]

25.     To make matters worse, once enrolled in the subscription, "[o]ne of the biggest complaints consumers have about brand/retailers is that it's often difficult to discontinue a subscription marketing plan."[25]  Moreover, "the rapid growth of subscriptions has created a host of challenges for the economy, far outpacing the government's ability to scrutinize aggressive marketing practices and ensure that consumers are being treated fairly, consumer advocates say."[26]  Thus, although "Federal Trade Commission regulators are looking at ways to make it harder for companies to trap consumers into monthly subscriptions that drain their bank accounts[ and] attempting to respond to a proliferation of abuses by some companies over the past few years[,]"[27] widespread utilization of these misleading dark patterns and deliberate omissions persist.

26.     Defendants have successfully implemented these tactics.  As of January 2022, Defendants' YouTube Platform had over 2 billion monthly active users and thus "accounts for 25% of total global mobile traffic[,]" making it the "the world's second-most visited website[,]" as well as "the world's second-most used social platform" and "the second largest search engine in the world."[28]  As a result, "YouTube is synonymous with today's internet experience and

---

[24] TechCrunch, *Sneaky subscriptions are plaguing the App Store* (Oct. 15, 2018), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

[25] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ ("'Subscription services are a sneaky wallet drain,' said Angela Myers, 29, of Pittsburgh. 'You keep signing up for things and they make it really hard to cancel.'"); *see also* New Media and Marketing, *The problem with subscription marketing* (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/.

[26] *Id.*

[27] *Id.*

[28] Omnicore Agency, *YouTube by the Numbers: Stats, Demographics & Fun Facts* (Mar. 14, 2022), https://www.omnicoreagency.com/youtube-statistics/; *see also* Statista, *Global social networks ranked by*

accounts for a truly massive amount of web traffic."[29]

27.    By 2019, YouTube already had "the highest reach and viewing hours among ad-supported streaming services in the US[.]"[30]  Significantly, Google CEO Sundar Pichai confirmed in an earnings conference call for Alphabet Inc. (Google's parent company), held on February 3, 2020, that the fourth quarter of Fiscal Year 2019 was "a seasonally strong quarter for … [Defendants'] newer paid YouTube music and premium subscription services, as well as YouTube TV," and that he was "really pleased" with the growth of YouTube's paid subscriber base.[31]  In particular, Pichai emphasized that, at that time, YouTube "ha[d] over 20 million music and premium paid subscribers and over 2 million YouTube TV paid subscribers, ending 2019 at a $3 billion annual run rate in YouTube subscriptions and other non-advertising revenues."[32]  By the following year, the paid subscriber count for YouTube Music and Premium increased by about 3.6 million, for a total of approximately 23.6 million paid subscribers. [33]  And "[b]y the

---

*number of users 2022* (Mar. 8, 2022), https://www.statista.com/statistics/272014/global-social-networks-ranked-by-number-of-users/.

[29] PC Mag, *YouTube Premium vs. YouTube TV: What's the Difference?* (Aug. 5, 2021), https://www.pcmag.com/how-to/youtube-premium-vs-youtube-tv-whats-the-difference.

[30] YouTube Advertising, "YouTube Select," https://www.youtube.com/ads/how-it-works/set-up-a-campaign/youtube-select/ (footnote omitted) (citing ComScore OTT Intelligence, Oct 2019, US).

[31] *Alphabet Inc. (GOOG) CEO Sundar Pichai on Q4 2019 Results - Earnings Call Transcript*, Seeking Alpha (Feb. 3, 2020), https://seekingalpha.com/article/4321094-alphabet-inc-goog-ceo-sundar-pichai-on-q4-2019-results-earnings-call-transcript.

[32] *Id.*  But note that Defendants "didn't break out how many users converted to paid customers to access the music subscription offering."  *YouTube Music adds a transfer option ahead of Google Play Music's shutdown this year*, Tech Crunch (May 12, 2020), https://techcrunch.com/2020/05/12/youtube-music-adds-a-transfer-option-ahead-of-google-play-musics-shutdown-this-year/.

*See also* Statista, *Number of YouTube Premium subscribers worldwide from 2020 to 2024* (Sep 10, 2021), https://www.statista.com/statistics/1261865/youtube-premium-subscribers/ ("In 2020, the popular social video platform YouTube counted roughly 20 million paying users subscribing to its premium services.").

[33] *See* Omnicore Agency, *YouTube by the Numbers: Stats, Demographics & Fun Facts* (Mar. 14, 2022), https://www.omnicoreagency.com/youtube-statistics/.

end of 2024, th[e] number [of paid YouTube Music and Premium subscribers] is forecasted to increase by almost eight million users [more than in 2020], reaching 27.9 million paying subscribers."[34]  Additionally, as of 2021, YouTube TV's paid subscriber count had already increased to "about 4 million subscribers, pushing it ahead of Hulu + Live TV as the biggest virtual MVPD in the U.S."[35]

28.     Indeed, Defendants enjoyed rapid growth to their YouTube user-base in 2021 in light of the fact that "[o]verall time spent streaming has more than doubled since March[ 2020], when the U.S. and other countries largely shut down due to COVID-19."[36]  In fact, while Hulu, Netflix, and Amazon viewing has grown significantly during the pandemic period, "[t]he big winner[] … was YouTube, which increased 134% and also upped its share of the streaming market to 20% from 18% in the same span in 2019."[37]

**B.     Defendants' Dark Patterns And Online Consumer Complaints About The YT Subscriptions**

29.     Defendants' recent growth in revenues and subscriber count with respect to their YT Subscriptions coincides with a sharp decline in subscriber satisfaction as the YT Subscriptions and the platforms from which they operate have become riddled with "dark patterns."  A dark pattern is "a user interface carefully crafted to trick users into doing things

---

[34] Statista, *Number of YouTube Premium subscribers worldwide from 2020 to 2024* (Sep 10, 2021), https://www.statista.com/statistics/1261865/youtube-premium-subscribers/.

[35] Fierce Video, *YouTube TV hits 4M subscribers, surpasses Hulu as biggest vMVPD: analyst* (Sep. 28, 2021), https://www.fiercevideo.com/video/youtube-tv-hits-4m-subscribers-surpasses-hulu-as-biggest-vmvpd-analyst.

[36] *Ad-Free Subscription Growth Outpaces Ad-Supported Fare During COVID-19*, Deadline (May 29, 2020), https://deadline.com/2020/05/subscription-streaming-growth-outpaces-free-ad-supported-during-covid-19-1202946438/.

[37] *Id*.

they might not otherwise do, such as … signing up for recurring bills."[38]  Indeed, as one SEO

Sydney blogger has suggested, YouTube is among the "[m]any websites with large user bases

[that have] used or currently use dark patterns."[39]  Specifically, Defendants have been using

various types of dark patterns, including but not limited to "roach motel,"[40] "misdirection,"[41] and

"forced continuity,"[42] in order to prevent user unsubscription from the YT Subscriptions by

adopting complex cancellation procedures to increase the friction in the subscription cancellation

process.[43]  Defendants' utilization of these dark patterns – especially in conjunction with their

failure to fully disclose the terms of their automatic-renewal programs (discussed further below)

– has led to a reduction in churn rates by making it next to impossible for subscribers to cancel

their YT Subscriptions.  It has further led to an increase in accidental or unintentional sign-ups

by consumers for paid YT Subscriptions plans, in effect increasing subscriber count and, thus,

Defendants' overall revenues from renewal fees.

      30.    Defendants' conduct has drawn the attention and ire of customers across the

---

[38] *Dark patterns in UX: how designers should be responsible for their actions* (Apr. 15, 2018), https://uxdesign.cc/dark-patterns-in-ux-design-7009a83b233c (quoting UX designer Harry Brignull (PhD Cognitive Science), who coined the term "Dark Patters" in August 2010).

[39] *How Dark Patterns Damage Your Index Ranking*, SEO Sydney (Aug. 2019), https://seosydney.com/seo-optimisation/how-dark-patterns-damage-your-search-index-ranking/.

[40] "Roach motel" refers to a "design [that] makes it very easy for [consumers] to get into a certain situation, but then makes it hard for [consumers] to get out of it (e.g. a subscription)." https://www.darkpatterns.org/types-of-dark-pattern/roach-motel.

[41] "Misdirection" is a type of dark pattern where a website's "design purposefully focuses [customers'] attention on one thing in order to distract [them] attention from another."  In many cases, "[w]hat's deceptive is the way [the website] presents [purchase] options: it uses misdirection to hide what is actually happening[.]"  https://www.darkpatterns.org/types-of-dark-pattern/misdirection.

[42] One example of "forced continuity," another type of dark pattern, is where customers' sign up for a "free trial with a service[ that] comes to an end and [their] credit card silently starts getting charged without any warning.  [The subscriber is] are then not given an easy way to cancel the automatic renewal."  https://www.darkpatterns.org/types-of-dark-pattern/forced-continuity.

[43] *See* Review Geek, *YouTube Premium Won't Let You Cancel If You Get Suspended* (Feb. 28, 2022), https://www.reviewgeek.com/111016/youtube-premium-wont-let-you-cancel-if-you-get-suspended/.

country, with countless angry customers taking to the Internet to voice their discontent over Defendants' broken promises. For instance, numerous subscribers have left scathing reviews on the Trust Pilot webpage for YouTube Music, complaining of the unclear billing practices and confusing cancellation policy associated with the YT Subscriptions, especially with respect to Defendants' "free trial" offers:[44]





31.    Consumers also left numerous scathing reviews concerning the YT Subscriptions on the Complaints Board website, complaining of their hidden or undisclosed material offer terms, their inability to cancel, and related issues:[45]



---

[45] https://www.complaintsboard.com/youtube-b119642 (last accessed May 20, 2022).



**Dorothy Berdine** of Apache, US
Mar 26, 2022 | 3:03 pm

### YouTube - Youtube tv

I signed up for youtubetv and received an introductory price of 54.99 for three months.

I looked at my bank account and saw I was being charged 54.99 and 66.44 each month.

I called a customer rep and he reimbursed me for the added charge. I also cancelled the account with my bank.

I then had a popup on my tv stating I needed to sign in from my home, and it listed Yuma, AZ, where I have never visited, let alone lived.

I changed the zip and was then informed I can only do that once a year.

I did a chat to try and explain the situation, and the rep said to cancel my subscription and sign up again, but failed to mention I would be paying $69.08 today.

I explained my payment wasn't due until 4.8.22 and was told that's too bad!

Therefore I am losing almost two weeks of service that I already paid for. I hope this is clear enough. If not, please contact me and I'll explain it again.



**Jpmufflerman@gmail.com** of US
Mar 04, 2022 | 2:49 pm

### YouTube - Streaming service

I signed up for a free trial on you tube tv in october 2021. They require a credit card to get the free trial. I canceled the subscription prior to end of free trial. I assumed they would follow up on their end. On nov. 20 2021 I was billed for 53.18. On dec 20 2021 I was billed for 69.18 and the same in jan. That is when I caught up with the mistake. After contacting you /google. They refused to give me any credit. To those who use the free trials watch your credit cards for extra charges. I did not even get to use the service. So buyer beware! There is empathy from you tube.



K

**Kudlan** of houston, US
Jan 06, 2022 | 8:16 pm

**YouTube - Over charging/Over charging**

YouTube
Duplicate charges, charged even after cancellation

Sir, I live in the US, went to India Feb 2020 for two months, was stuck there over 13 months. On March 14, 2020, I took membership in India youtube. The first few months you charged me $ 1.78, correct mount.

On Sept you charged me twice $ 1.78 and $ 2.02 on 9/30. The double charge continued till 5/30/2021.

I returned to US in June, 2021 and cancelled my account. Still you were charging me $ 2.55 till November /2021. You owe me $ 22.6

Please send me a check for $ 22.6.

K

**Karen Leader** of Livingston, Texas, US
Jan 04, 2022 | 12:25 pm

**YouTube - Premium music subscription**

This is my Tube Premium recurring charge. I just want someone to CALL ME. I have spent over 20 hrs on this complaint. I am more than, IM DONE. Ok don't want to be as angry as I am but the longer this goes on - the madder I get.? I have spent 2 1/2 months trying to get this done. I have gone and done everything the instructions told me to do and it's still not fixed. Their customer. Support sucks. PLEASE, PLEASE, PLEASE HELP ME. My phone number is 433-0115. I do not want to text anymore. I'm 70 years old and have severe arthritis and every letter I type hurts like the dickens.? I'm waiting for your call.

**Desired outcome:** Refund for the time I couldnt cancel

W

**Walter in Indiana** of US
Dec 29, 2021 | 12:18 pm

**YouTube - YouTube Music Premium**

I received an email titled
"You're now a YouTube Music Premium member" and have wasted about an hour trying to find out if this was actually the case, as I don't recall ever accepting a trial. Searching indicated that I could "cancel at any time by ..." so I went that path, it is never an option. This is shameless belligerence on the part of Google/YouTube, I see many other have the same issue happening since Dec 1, 2021. If I am charged for YouTube Premium Music at the end of the timeframe indicated, I would like to start a class action against Google/YouTube. What a bunch of creeps.

32.    Other subscribers to the YT Subscriptions left similar complaints on the Better

Business Bureau website:[46]



**John T**
⭐☆☆☆☆                                                              03/31/2022

For the last several months, You Tube TV has BEEN DOUBLE CHARGING me $69.70/month for TV service! My bank says they can do nothing, and it is my responsibility to contact You Tube TV. Impossible to do by phone...TRY IT! I Finally I got on their website and canceled them today, March 31st. However, I was one day too late, as I was double charged AGAIN! My wish is to get refunded all the unfair money charged to me. Thank you for your time and consideration, and I will look forward to hearing from you soon. I hope that one small single voice can still make a difference. Sincerely, **** D. ******



**Pamela M**
⭐☆☆☆☆                                                              04/13/2022

Very poor customer service. Very difficult if not impossible to contact them for issues with subscription payments.



**Sarah K**
⭐☆☆☆☆                                                              03/12/2022

This company provides terrible customer service. They are a billion dollar business but shut down their customer service phone number. They refuse to give refunds even if customers are not provided with what they purchased. This company is a bully just like Putin.



**Tisha A**
⭐☆☆☆☆                                                              02/26/2022

YOUTUBE took $69.70 out of my personal checking account that was not authorized by me. I did not sign up for this service. The email address used was an old email address for me. It was on Google. I want a full refund asap. I have read many complaints filed against the YouTube Mountain View CAUS making unauthorized from personal checking accounts multiple times.

---

[46] https://www.bbb.org/us/ca/mountain-view/profile/internet-service/google-llc-1216-214105/customer-reviews (last accessed May 20, 2022).

Page 24 - COMPLAINT



**Paul P**
⭐☆☆☆☆

12/18/2021

To say YouTubetv (Google) has poor customer service is being most charitable. Actually, their customer service is non-existent. It is impossible to reach anyone for help. Following their online directions are all dead ends. The published phone numbers are not answered. There is no way to get a representative to "chat" with you. They do not respond to any feedback you send. After spending a detailed explanation of the problem I am having, I pressed the send buttonnothing happened, it did not send. It is such a shame they have such a good product with absolutely NO CUSTOMER SERVICE. I urge anyone thinking about signing up to think twice (make that multiple times). For their customer service I give them one star, only because zero stars are not an option.



**Hed**
⭐☆☆☆☆

12/14/2021

was charged for a product ( I didn't order ) when requested a refund of my money they refused because they didn't find a fraudulent action. This is getting too much annoying pain in the neck. I didn't realize that Google has all my bank account and or financial information with the pretext to create a better flow in my browsing internet, but what I didn't know was this act of good faith and trust on my part, could be used against me.



**Katherine T**
⭐☆☆☆☆

12/06/2021

I signed up for a free two wee trial on 11/27 for youtube TV. I was instructed to get it on my phone first and then to the TV. I was never able to get it on the tv even with the help of a friend who had it working on his. I tried getting help on line but nothing wored. I tried calling the number I found about 50 times but never got through. I was trying to cancel but could not. I am not charged for the first month my trial ran out but I never got it and I never could get help so I don' think I should pay. BUT the most important thing is now I still want to cancel so I do not get charged again. Can you help?? Thank you, *********



**Thomas B**
⭐☆☆☆☆

12/04/2021

Do not, I mean so Not do business with YouTube TV, they rip you off, I had service till December 26th, I have email saying welcome to YouTube TV your next charge will be on December 26th, I added on AMC+ to my account and they went and charged a whole month of service to my credit card for another month of service and the next charge will be Jan 4th, they did refund my money but now they also ended my subscription that was to be good to the 26th, tried to explain to them and sent the email they sent me that the next charge will not be to the 26th, no we are sorry, we will just refund the charge we did today and end your subscription right away even though I am paid to the 26th. STAY AWAY



Justin M

★☆☆☆☆                                                                11/28/2021

I have been trying to get ahold of their customer service for the past 10 days. I ordered a nest wire base for my broken nest thermostat, it was supposed to be delivered 10 days ago. The delivery tracking says "delayed", but the last known location of the package is about 20 minutes from my house. It's said it's delayed and in transit for 10 days now, which sounds like the package was lost. At first I was trying to be reasonable and I was asking Google customer service if they can look into it. I expressed that it was important for the package to be delivered in a timely manner because my house was getting pretty cold without a working thermostat. They said I should hear a response from their "specialist team" within a day. Well two days later I didn't hear anything to I contacted them again and they said the same thing "we have escalated this to a higher priority and our specialist team is looking into it. Please allow 24-48 hours for us to get back to you." I waited another 24-48 hours and guess what I haven't heard anything from them. I asked multiple times while chatting with them if I can just have a refund or if they can send me a new one, but they kept saying they couldn't help me and that their "specialist team" was looking into it. I asked if I could speak to their "specialist team" and they kept telling me I could not and that I needed to wait. I have contacted their customer service 6 times now and this is the same response I get over and over again. I do not feel like they care about the customers needs, nor do they listen to the customers concerns. Their customer service is an abomination. If I could give them zero stars I would.



Tabitha H

★☆☆☆☆                                                                11/08/2021

I cancelled my google youtube tv account in December 2020 as of September 2021 my card was still being charged. I have had to disputed this with my bank for the past 10 months. We cancelled my debit card several times which is an inconvenience. There is no way go contact Google to speak with a live person. When you call the # it provides it directs you to go to the website. This charge is $69.54 each month. I am no longer working due to COVID-19 that is why I cancelled in the first place. The bank has reversed the temporary credits that was given. Now I am struggling to bring my account current. This should not be acceptable by any means. So it was brought to my attention once you authorize google youtube tv they can continue to update your payment information even if you do not have that service anymore. I have not had access to youtube tv but was still being charged. Now I have an account that is in the negative with no debit card. $69.54 x 10= $695.40.



Jeanne S

★☆☆☆☆                                                                10/16/2021

In late July of this year I decided to cancel my cable and try streaming. This decisions made to save money as my cable bills had got so high. I decided to try You Tube TV. I am a 76 year old woman and have no experience in setting up these kind of things. So I hired the Geek Squad to do it. I was charged $100 for this service. The technician set it up with all sorts of codes and act. numbers and also my Discover Credit card number. Right off the bat there were problems it kept kicking me off and I couldn't get back on and wanting me to add different acts. I did not know how to navigate the system and was lost. After a month I decided to cancel the service. I looked up the instructions and went to my account and cancelled it. They billed me the next month and I disputed the charges with Discover. You Tube TV said I authorized this payment. I have never authorized any payments. My credit card is in their system but I do not get anything asking to approve these payments. I had to pay that one. The next month the same thing happened. I tried to contact them and you cannot get through to a person. If you go on their help place you cannot take to anyone to explain. I did file a claim with You Tube TV and told them I cancelled my service and not to charge anything else on my credit card. They answered the claim saying it was not fraud. I have had all the equipment removed from my TV and cannot access You Tube TV. This experience has been exasperating and I am at my wits end. You Tube TV is part of Google and I am surprised that they treat their customers like this. I was charged $69.21 twice when I had cancelled. I would like to get my money back but I am doubtful this will happen. I just want to be rid of them. Thank you for any help you can offer.



Sharon A

★☆☆☆☆                                    10/07/2021

I had subscribed to T Moblie tv, but a couple months later, You Tube Tv took it over. I canceled the service, but just 4 days ago, you tube tv took $59.44 out of bank account. I tried to contact them, which is very difficult, but they can't find my account, yet they managed to take my money. They can't resolve it because I don't appear to have an account. So, no I have to go to the back, file a fraud charge against them & have my debit card reissued, since they somehow got my debit card number.



Judith W

★☆☆☆☆                                    09/28/2021

no way to contact them by phone. Online contact is very confusing and complicated.



Aaron K



★★★★★                                    02/25/2020

I don't have a YouTube TV account yet they've been charging me for four months at 49.99$ each charge. I've been emailing them and they all of a sudden stopped once I sent screen shots of my CC statements showing they were charging me. Before that they were stating they couldn't find any transactions with my CC number associated with it. Once I showed them the evidence I stopped receiving emails and of course you can't get ahold of a real person through the customer lines. STAY away from google and YouTube tv !!! You've been warned



John C



★★★★★                                    02/18/2020

For some reason Google signed me up for YouTube TV. I did not know about until it showed up on my account. No one in my family used it. They canceled it for me but also took the money and ran. Basically told me I could not prove I did not let someone use my info to sign up. I do not trust the company (canceled all subscriptions so I could remove payment methods). Be careful dealing with Google.



William J



★★★★★                                    02/18/2020

I am trying without success to cancel a Subscription to youtube tv. cannot tell you how many hours I have spent on my computer. I am not computer illiterate and can only warn everyone to not subscribe to youtube tv unless you never intend to cancel. It now appears that I **** have to go to my bank tomorrow and see if I can block automatic monthly payment withdrawals. If that fails then I **** withdraw my balance and cancel my account. Total online deception and misdirection. Very frustrating. Only took minutes to sign me up and debit my account, no problem there, This appears to be no glitch, no accident. it appears to me to be deliberate.

33.      Yet more unhappy subscribers have complained about the YT Subscription programs on the "YouTube Help" page of Defendant Google's own website:[47]



[47] *See* https://support.google.com/youtube/thread/79556594?hl=en-GB;
https://support.google.com/youtube/thread/133635974?hl=en;
https://support.google.com/youtube/thread/79222683?hl=en (last accessed May 20, 2022).

 **Michael Thonpson**                                    Jul 2, 2021    ⋮

I don't want YouTube TV and was charged for it and they won't return my money. I consider that theft.

 **Robert Reichmann**                                    Jun 9, 2021    ⋮

Youtube is a total scam. They make it totally impossible to cancel. Never a ph number to call to actually talk to someone, BUT, they will direct you to a page where you pay $1 and have to give your credit card information and then they will supposedly direct you to cancelation. Benn trying to cancel for 2 months and still no luck and still getting charged.

 **User 2215777238870192834**                            May 10, 2021    ⋮

I have followed these steps but when I get to the pause or cancel page I cannot scroll down from pause to cancel. I have been trying for months to cancel this service that I don't even use. There is a better way to keep folks from canceling than hiding it or making it impossible. Earn my business instead of stealing it.

 **Terri Gonzales**                                      May 11, 2021    ⋮

I never even authorized a payment for any of your memberships so I do need a refund from past charges unauthorized

 **Eric Martinson**                                      May 17, 2021    ⋮

Being charged for YouTube premium subscription for months and months. Can not access it. It does not exist in my account. I'd be happy to accept an active subscription for the months I've been charged for but there is no way to contact anyone to discuss. I've had a lot of faith in Google for years, but the inability to talk to or chat with or email anyone is maddening at the very least.  While $12.00 a month is not a ton of money, if they pull this crap om a 100000 people it gets large quickly. Really rotten business practices. Shame on you....

 **Jena Thacker**                                        May 21, 2021    ⋮

YouTube has been charging our bank account unauthorized for about 4 months now. Screen shot of cancellation is in my possession. There is no way to effectively contact YouTube support team. Legal action will be now be taken. YouTube is worthless! And snarky "I will post cancellation instructions yet again..." comments are rude and unprofessional. How about, "I'm sorry the company I work for is incompetent and knowingly continues to fraudulently charge accounts." STOP IT!!!

 **Karen E.**                                            Oct 30, 2020    ⋮

I canceled but got charged anyway. When cancelling I recommend taking a screenshot of confirmation .

 Kadeem Bhola  Original Poster                                    Nov 2, 2021  ⋮

# How to cancel a Youtube Premium Subscription on a Suspended Account?

Honestly I've searched up a bunch of threads on this and no one seems to know what to do to fix it. I've heard of people being charged for months and still not fixing the issue. I really thought that YouTube would cancel all subscriptions if your account would be terminated/suspended but I guess not.

I contacted them hoping for a response, however if anyone has any useful information besides that; that could help, it would be greatly appreciated. I would rather not pay for a subscription on a YouTube account I can't access YouTube on.

**Details**
Purchases and subscriptions (Premium, Originals, Shows), Web, Creator

---

 Jennifer Koerner  Original Poster                              Oct 26, 2020  ⋮

# Cancel. Free trial I don't want it there's no where to cancel it. should have unsubscribe button

I have followed the on site directions   I have watched videos and tried different  devices I did not sign up for this an don't want to be charged there is nowhere to unsubscribe and it's very shy you Don't simply have an unsubscribe button I set up a new tablet and have not accepted the free trial but I'm getting emails about it and I don't want the automatic renewal charge.  Make the method to cancel easier. That's not fair.

---

 Robert Scott 7966                                              Nov 15, 2020  ⋮

The same thing happened to me my trial ends tomorrow I've been trying to cancel it but can't figure out how it just doesn't seem fair I hope I'm not charged for something I didn't sign up for

---

 Jennifer Rustum                                                Nov 12, 2020  ⋮

This is ridiculous ! I didn't sign up fir a free trial . Have been trying to cancel fir the last hour. Only had a renew button. All directions lead in a circle.

---

 SUZDECAMP                                                      Nov 10, 2020  ⋮

I'm having same issue...it automatically subscribed me but won't allow a cancel.... only says benefits end Nov 22nd but when I Google free trial it says auto renewal at $9.99 after free trial and I'm trying to stop this before it charges me!!!

---

 Richelle Jordan                                                Oct 30, 2020  ⋮

I'm having the exact same problem. There is no status to tell me anything,  just the renew button. Does this mean we won't be charged when the trial ends? Even so, I'd rather cancel now so I know I won't have charges later.

34.    The above reviews are just a sampling of numerous negative reviews consumers

have left regarding Defendants' YT Subscriptions and the unclear cancellation policy and

confusing billing associated with the Subscriptions.  As discussed below, the above online

consumer complaints reveal a widespread pattern of uniform unlawful conduct by Defendants,

underscoring the artifice devised and employed by Defendants to lure and deceive millions of

consumers into enrolling, and remaining enrolled, in their paid YT Subscription programs.

    **C.**    **Oregon's Automatic Renewal Law**

35.    In 2011, with the passage of Oregon's Senate Bill 487, the Oregon Legislature

enacted the Automatic Renewal Law ("ARL"), ORS 646A.292-646A.295, with the intent to "end

the practice of ongoing charging of consumer credit or debit cards or third party payment

accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing

deliveries of service."  ORS 646A.292 (statement of legislative intent).

36.    The ARL makes it "unlawful for a person that makes an automatic renewal or

continuous service offer to a consumer in this state to do any of the following:"

> (a)  Fail to present the automatic renewal offer terms or continuous
> service offer terms in a clear and conspicuous manner before a
> subscription or purchasing agreement is fulfilled and in visual
> proximity, or in the case of an offer conveyed by voice, in
> temporal proximity, to the request for consent to the offer.
>
> (b)  Charge the consumer's credit or debit card or payment account
> with a third party for an automatic renewal or continuous service
> without first obtaining the consumer's affirmative consent to the
> agreement containing the automatic renewal offer terms or
> continuous service offer terms.
>
> (c)  Fail to provide an acknowledgment that includes the automatic
> renewal offer terms or continuous service offer terms and
> information regarding how to cancel in a manner that is capable of
> being retained by the consumer.  If the offer includes a free trial,
> the person shall also disclose in the acknowledgment how to cancel
> and allow the consumer to cancel before the consumer pays for the

goods or services.

ORS 646A.295(1)(a)-(c). The requirements of 646A.295(1)(a)-(b) "must be met prior to the completion of the initial order for the automatic renewal or continuous service[,]" but the requirements of 646A.295(1)(c) "may be fulfilled after completion of the initial order." 646A.295(4).

37.     Additionally, Section 646A.295(2) of the ARL further provides:

> A person making automatic renewal or continuous service offers shall provide a toll-free telephone number, electronic mail address, a post-office address only when the person directly bills the consumer, or another cost-effective, timely and easy-to-use mechanism for cancellation that must be described in the acknowledgment required by subsection (1)(c) of this section.

ORS 646A.295(2).

38.     The term "Person" as used in ORS 646A.295 means "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity except bodies or officers acting under statutory authority of this state or the United States." ORS 646.605; *see also* ORS 646A.293(4) ("'Person' has the meaning given that term in ORS 646.605[.]"). Defendants are "persons" under this definition.

39.     Section 646A.293(1) of the ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." Section 646A.293(3) similarly defines "Continuous service" as "a plan or arrangement in which a paid subscription or purchasing agreement continues until the consumer cancels the service." The YT Subscriptions constitute "automatic renewal" and/or "continuous service" plans under these definitions.

40.     Pursuant to Section 646A.293(5) of the ARL, "Offer terms" means "the following clear and conspicuous disclosures:  (a) That the subscription or purchasing agreement will

continue until the consumer cancels.  (b) The description of the cancellation policy that applies to the offer.  (c) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal or continuous service plan or arrangement, and, if the amount of the charge will change, the amount to which the charge will change, if known.  (d) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.  (e) The minimum purchase obligation, if any."  ORS 646A.293(5)(a)-(e).

41.    Section 646A.293(2) of the ARL defines the term "Clear and conspicuous," in relevant part, as "in larger type than the surrounding text, or in contrasting type, font or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

42.    Finally, the ARL provides that where "a person sends goods, wares, merchandise or products to a consumer under a continuous service agreement or pursuant to an automatic renewal of a purchase without first obtaining the consumer's affirmative consent as required in [ORS 646A.295(1)], the goods, wares, merchandise or products shall for all purposes be deemed an unconditional gift to the consumer who may use or dispose of them in any manner the consumer sees fit without any obligation to the person including, but not limited to, requiring the consumer to ship, or bear the cost of shipping, any goods, wares, merchandise or products to the person."  ORS 646A.295(5).

43.    As alleged below, Defendants' practices on the YT Platform systematically violate Sections 646A.295(1)(a), 646A.295(1)(b), 646A.295(1)(c), and 646A.295(2) of the ARL.

**D.    Defendants' Business: The YT Subscription Enrollment Process**

44.    At all relevant times, Defendants offered, via the YT Website and Apps, various

YT Subscriptions for access to exclusive YouTube content, products, and/or services on a contract or fee basis. The YT Subscriptions are offered on a recurring basis for monthly renewal terms, and all plans automatically renew at the end of the defined renewal term unless the subscriber cancels. For example, when customers sign up for YouTube Music on a free trial basis, at the end of the initial one-month trial period, their subscriptions are converted to paid subscriptions and charged the full amount, $9.00, for the next month, and every month thereafter if they do not cancel. Similarly, customers enrolled for the monthly YouTube Premium on a free trial basis are, after the initial one-month term, automatically charged the full standard monthly rate of $11.99 for the subsequent month, and every month thereafter if they do not cancel.[48] After the initial trial period ends, customers enrolled in a free trial subscription of YouTube TV are also automatically charged the full standard monthly rate of $64.99 for the subsequent month, and every month thereafter if they do not cancel.[49] Defendants' YT Subscriptions constitute automatic renewal and/or continuous service plans or arrangements as those terms are defined

---

[48] Currently, "YouTube Music is being offered at [a] $9.99 per month subscription price [and] … includes on-demand streaming, background listening, offline access and an ad-free experience. For $11.99 per month, users can extend that experience to YouTube by way of YouTube Premium." TechCrunch, *YouTube Music adds a transfer option ahead of Google Play Music's shutdown this year* (May 12, 2020), https://techcrunch.com/2020/05/12/youtube-music-adds-a-transfer-option-ahead-of-google-play-musics-shutdown-this-year/. *See also* https://www.youtube.com/musicpremium (last accessed May 20, 2022); https://www.youtube.com/premium (last accessed May 20, 2022).

[49] *See* https://tv.youtube.com/welcome/?_ga=2.232416792.660108625.1653067253-1170121855.1653067253&utm_servlet=prod&zipcode=94591 (last accessed May 20, 2022). But note that Defendants have raised the monthly price of YouTube TV several times since its launch. Most recently, "[a]t the end of [] June[ 2020], YouTube TV raised its monthly price from $50 to $65[.]" Fierce Video, *YouTube TV says no new price hikes in near term* (Aug. 4, 2021), https://www.fiercevideo.com/video/youtube-tv-says-no-new-price-hikes-near-term.

Additionally, consumers may also purchase various "Add-on subscription" packages from Defendants for an additional monthly fee. These Add-on subscriptions provide YouTube TV subscribers who enroll in such add-ons with additional benefits not available to subscribers enrolled in the base YouTube TV package alone. For instance, also in June 2020, YouTube "introduced a $19.99/month add-on [to the base YouTube TV subscription package] that allows subscribers to watch live sports and on-demand content from FX, Discovery Networks and Tastemade in 4K." *Id.* Additionally, in July 2021, "the service introduced a channel package from Cinedigm as an optional $4.99/month add-on." *Id.*

under ORS 646A.293(1) and ORS 646A.293(3).

45.     To sign up for one of Defendants' YT Subscriptions, the consumer must first select a program.  From the YT Website, prospective subscribers can review and compare the features of – and find links to the individual enrollment webpages for – each of Defendants' subscription offerings, including the YT Subscriptions at issue.

46.     Consumers can sign up for one of Defendants' YT Subscription plans through the YT Website or, in some cases, the YT Apps.  Customers who purchase a YT Subscription via the YT Website and/or the YT Apps are automatically enrolled by Defendants in their chosen YT Subscription program going forward, by default.  In addition, customers may sign up for any of the YT Subscriptions on a free-trial basis for a limited time.  Nevertheless, customers that enroll in a free trial, like those that sign up for a paid subscription, must provide Defendants' their payment information at the time of enrollment.  Customers' free trial subscriptions automatically convert to paid monthly subscriptions at the end of the trial period, the duration of which with respect to the YT Subscriptions is set by Defendants and has changed periodically throughout the Class Period depending on the particular terms associated with any promotional offers that may have been in effect.  For each of the YT Subscriptions, upon the end of the trial period users are also automatically enrolled by Defendants in their chosen YT Subscription program, and as such their Payment Methods are automatically charged by Defendants on a recurring, monthly basis in the amount of the full, promotional, or discounted rate associated with that program, continuing indefinitely until the customer takes affirmative steps to cancel.

47.     The enrollment process for each YT Subscription is substantially the same, regardless of the medium used.  For instance, after selecting one of the YT Subscriptions, those navigating the enrollment process on the YT Website are directed to a final webpage (the

"Checkout Page"), where prospective subscribers are prompted to input their payment information and then invited to complete their purchases.[50]  For the purposes of the ARL and this Complaint, the "relevant portion of the Checkout Page" refers to the text of that portion of the Checkout Page that appears "in visual proximity to the request for consent to the offer[,]" which in this case pertains to the text nearby the final blue button that customers must press in order to complete the checkout process.

48.     By way of example, since at least April 2021 to and through at least May 20, 2022, when a consumer signs up for a free trial of YouTube Music or Premium via computer web browser, the "relevant portion of the Checkout Page" refers to the disclosures in the block of text immediately above the "START 1-MONTH TRIAL" button (i.e., the "request for consent"):



---

[50] Although Defendants generally do not require basic users to register or create an account in order to view videos on the YouTube Platform, prospective subscribers to any of the YT Subscriptions must either create a Google account or "sign in" to a preexisting Google account before reaching the Checkout Page.



49.      The layout of the Checkout Page for YouTube TV is, and has been at all relevant times herein, aesthetically and functionally similar to the Checkout Pages for YouTube Music and Premium.  By way of example, as of May 20, 2022, when a consumer signs up for a free trial of YouTube TV via his or her computer web browser, the "relevant portion of the Checkout Page" refers to the disclosures in the blue button that reads either "START TRIAL" (for free trials) or "BUY" (for straight-to-paid YouTube TV subscriptions), *i.e.*, the "request for consent":



50.    In all cases, the relevant portion of the Checkout Page fails to adequately disclose the automatic renewal terms associated with Defendants' YouTube TV subscriptions in the manner required by law.

51.    Regardless of how the consumer subscribes (via the YT Website, on either its

desktop or mobile format, or the YT Apps), and irrespective of which YT Subscription (whether YouTube Music, Premium, or TV) and of which specific plan (whether the paid, free trial-to-paid, family, or the discounted-rate student monthly subscription options) the subscriber selects, Defendants fail to disclose the full terms of their auto-renewal programs either before or after checkout, and they never require the individual consumer to read or affirmatively agree to any terms of service, *i.e.*, by requiring consumers to click a checkbox next to the automatic renewal offer terms before consumers complete the checkout process and submit their orders for their YT Subscriptions.  Consequently, Defendants uniformly fail to obtain any form of consent from – or even provide effective notice to – their subscribers before charging consumers' Payment Methods on a recurring basis.

### E.    Defendants Violate Oregon's Automatic Renewal Law

52.     At all relevant times, Defendants failed to comply with the ARL in three ways: (i) Defendants failed to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement was fulfilled, in violation of ORS 646A.295(1)(a); (ii) Defendants charged Plaintiffs' and Class members' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of ORS 646A.295(1)(b); and (iii) Defendants failed to provide an acknowledgment that included the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of ORS 646A.295(1)(c) and ORS 646A.295(2).

> **i.      Defendants Fail To Clearly And Conspicuously Present The YT Subscription Terms Before The Subscription Agreement Is Fulfilled And In Visual Proximity To The Request For Consent To The Offer.**

53.      First, the relevant portion of the Checkout Page for each of the YT Subscriptions does not present the complete "offer terms[,]" as defined by ORS 646A.293(5), in violation of Section 646A.295(1)(a) of the ARL.  Specifically, although the Checkout Page for free trial subscriptions to YouTube Music and YouTube Premium state that "billing starts on [DATE], the end of your free trial, and will renew automatically every month," a reasonable consumer would find that statement unclear in regard to whether formal cancellation is required in order to stop Defendants from automatically charging renewal fees to customers' Payment Methods on a recurring basis.  And it is similarly unclear based on conspicuous text of the relevant portion of the Checkout Page for enrolling in YouTube TV subscriptions whether customers who enroll in a paid or free trial YouTube TV subscription are agreeing to recurring monthly payments that will continue indefinitely.  As such, with respect to each of the YT Subscriptions, Defendants fail to disclose "[t]hat the subscription or purchasing agreement will continue until the consumer cancels" in the manner required by statute.  ORS 646A.293(5)(a); ORS 646A.295(1)(a).

54.      Additionally, the relevant portion of the Checkout Page for each YT Subscription does not adequately disclose the recurring amount to be charged to the subscriber's Payment Method each billing period.  Although each Checkout Page states the initial amount to be charged to the consumer's Payment Method for the first renewal period of the consumer's YT Subscription, in all cases that price term appears near the top left corner of the Checkout Pages, which is not the portion of the Checkout Page with which the ARL is concerned.  By contrast, the *relevant* portion of each Checkout Page (*i.e.*, the portion in "visual proximity" to the request for consent, *see supra*) is utterly silent as to the recurring amounts to be charged following

enrollment and/or the end of the trial period.  In fact, no price term whatsoever appears in visual

proximity to the blue "final checkout" button near the bottom of the webpage (i.e., the request

for consent featured on any YT Subscription Checkout Page).  Thus, with respect to each of the

YT Subscriptions, Defendants fail to provide notice of "[t]he recurring charges that will be

charged to the consumer's [Payment Method] as part of the automatic renewal or continuous

service plan or arrangement, and, if the amount of the charge will change, the amount to which

the charge will change, if known[,]" *see* ORS 646A.293(5)(c), in violation of Section

646A.295(1)(a) of the ARL.

    55.    Defendants also fail to present a complete "description of the cancellation policy

that applies to the offer[,]" *see* ORS 646A.293(5)(b).  With respect to cancellation, the relevant

portion of the Checkout Page for YouTube Music and YouTube Premium states: "Cancel

anytime in Settings."  Similarly, the relevant portion of the YouTube TV Checkout Page merely

directs subscribers to "[c]ancel anytime in [their] Account."  However, the Checkout Pages for

the YT Subscriptions contain no explanation of *how* to cancel.  For instance, the Checkout Pages

do not mention that, in order to cancel, subscribers must "click[] cancel within the app or

contact[] support," as is set forth elsewhere in the YT Website.[51]  The Checkout Pages also fail

to place subscribers on notice that, in order to receive a refund upon cancellation, the customer

must have "not commenced using the relevant [YT Subscription] ordered and [the customer must

make the] request no later than 7 working days after [his or her] order is completed," or that

where "[a customer's purchase] order includes a free trial [], the 7 day period for requesting a

refund begins at the beginning of the free trial, not when [the customer is] subsequently billed for

---

[51] *YouTube Paid Service Terms of Service* (effective May 18, 2022),
https://www.youtube.com/t/terms_paidservice (last accessed May 2, 2022).

the [YT Subscription]," as is also set forth elsewhere in the YT Website.[52]  Moreover,

Defendants do not specify anywhere on the Checkout Pages that customers must cancel their YT

Subscriptions "at least 24 hours before the end of the current period" in order to avoid being

automatically renewed and billed for the following renewal term, as do terms set forth on other

pages of Defendants' website.[53]  Yet, prior to checkout, Defendants were obligated by law to

place consumers on notice of these aspects of Defendants' cancellation policy in accordance with

the ARL, which requires that companies provide such information "in visual proximity … to the

request for consent to the [automatic renewal] offer."  ORS 646A.295(1)(a).  However,

Defendants failed, and continue to fail, to satisfy that requirement.

### ii.    Defendants Fail To Obtain Consumers' Affirmative Consent To The Automatic Renewal Terms Associated With The YT Subscriptions.

56.    Second, at no point during the checkout process do Defendants require consumers

to read or affirmatively agree to any terms of service associated with their YT Subscriptions, *i.e.*,

by requiring consumers to select or click a "checkbox" next to the automatic renewal offer terms

to complete the checkout process.  Accordingly, when Defendants automatically renew

customers' YT Subscriptions, Defendants charge consumers' Payment Methods without first

obtaining their affirmative consent to the agreement containing the automatic renewal offer

terms, in violation of ORS 646A.295(1)(b).

---

[52] *Id.*; *see also* YouTube Help, *Request a refund for YouTube paid products*, https://support.google.com/youtube/topic/12013284?visit_id=637886777081877169-3942676793&p=refund_policy&rd=2 (last accessed May 20, 2022); YouTube Help, *Troubleshoot refund issues on YouTube*, https://support.google.com/youtube/answer/12015913#zippy=%2Cwhy-was-my-refund-rejected (last accessed May 20, 2022);

[53] *YouTube Paid Service Terms of Service* (effective May 18, 2022), https://www.youtube.com/t/terms_paidservice (last accessed May 2, 2022).

       **iii.**    <u>Defendants Fail To Provide A Post-Checkout</u>
                  <u>Acknowledgment That Clearly And Conspicuously</u>
                  <u>Discloses The Required YT Subscription Offer Terms.</u>

57.      Finally, after Plaintiffs and the members of the Class subscribed to one of

Defendants' YT Subscriptions, Defendants sent to Plaintiffs and the Class email follow-ups

regarding their purchases.

58.      By way of example, as of February 2020, the acknowledgment emails Defendants

sent to YouTube Premium and YouTube Music subscribers are nearly identical.  The subject line

of the YouTube Music acknowledgment email stated: "Welcome to YouTube Music!"

Similarly, the subject line of the YouTube Premium acknowledgment email stated: "Welcome to

YouTube Premium!"  The body of the YouTube Music and YouTube Premium acknowledgment

emails contained, in relevant part, the following text and images:





59.    Likewise, at least as of February 2020, the subject line of the acknowledgment email Defendants sent to YouTube TV subscribers stated: "Getting started with YouTube TV." The body of the YouTube TV acknowledgment email contained, in relevant part, the following text and images:



60.     Although the above shown Acknowledgment Emails are exemplars from approximately February 2020, the Acknowledgment Emails that Defendants have sent to new subscribers to the YT Subscriptions since February 2020, to and through the present day, are substantively and materially identical or substantially the same in terms of layout, organization, and most importantly, text, as the February 2020 version shown above.

61.     As with the Checkout Pages, the acknowledgment emails for the YT Subscriptions failed to provide Plaintiffs and members of the Class with the complete automatic renewal or continuous service terms that applied to the offer, a description of the full cancellation policy, or any specific information regarding how to cancel.

62.     Namely, the acknowledgment emails suffer the same deficiencies as those pre-checkout disclosures featured on the relevant portion of the YT Subscription Checkout Pages of the YT Website, discussed above.  For instance, although the purchase confirmations contain language regarding cancellation like that on the YT Website, the Acknowledgment Emails, like the Checkout Pages, do not specify that cancellation must be affected at least twenty-four hours prior to the end of the subscriber's current billing cycle.  Nor do the Acknowledgment Emails provide a toll-free telephone number, electronic mail address, or a post-office address, or disclose a cost-effective, timely and easy-to-use mechanism for cancellation.  As such, the acknowledgment emails fail to provide a description of Defendants' complete cancellation policy, in violation of both Sections 646A.295(1)(c) and 646A.295(2) of the ARL.

63.     At all relevant times, Defendants have been well aware that their YT Subscriptions fail to comply with Oregon's ARL.  Indeed, Defendants are currently defending a substantially similar putative class action lawsuit filed on June 5, 2020, which was brought

pursuant to California's Automatic Renewal Law, Cal. Bus. Prof. Code §§ 17600, *et seq*. *See generally*, *Dutcher v. Google LLC d/b/a YouTube, et al.*, No. 20CV366905 (Cal. Super. Ct.) (the *Dutcher* Action). Notably, the California Automatic Renewal Law was enacted in 2010, one year prior to the enactment of Oregon's ARL in 2011, and features the identical language as Oregon's ARL with respect to legislative intent. *Compare* ORS 646A.292 *with* Cal. Bus. & Prof. Code § 17600 (statement of legislative intent). Additionally, Oregon's five-part statutory definition of "offer terms" under ORS 646A.293(5)(a)-(e) mirrors California's definition of "Automatic renewal offer terms" under Cal. Bus. & Prof. Code § 17601(b)(1)-(5). *Compare also* ORS 646A.293(2) *with* Cal. Bus. & Prof. Code § 17601(c) (definition of "clear and conspicuous"). And, most importantly, the requirements and prohibitions of the operative provisions of Oregon's ARL are substantively the same as the California version. *Compare* ORS 646A.295(1)(a)-(c) *with* Cal. Bus. & Prof. Code § 17602(a)(1)-(3). *Compare also* ORS 646A.295(2) *with* Cal. Bus. & Prof. Code § 17602(b) (requiring a "cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment"); *compare* ORS 646A.295(5) *with* Cal. Bus. & Prof. Code § 17603 (unconditional gift provision). Thus, by virtue of the *Dutcher* Action, Defendants knew or should have known that their conduct constitutes violations of Oregon's ARL.

64.    By and through these actions, Defendants have charged Plaintiffs' and Class members' Payment Methods in direct violation of the ARL. As a result, all goods, wares, merchandise, and/or products sent to Plaintiffs and the Class upon the automatic renewal of their continuous service agreements are deemed to be "unconditional gifts" pursuant to ORS 646A.295(5).

65.    Plaintiffs bring this action individually and on behalf of similarly situated

individuals against Defendants for violations of Section 646.608(1) of Oregon's Unlawful Trade

Practices Act ("UTPA").  As set forth in detail below, Plaintiffs' UTPA claims – which are based

on, *inter alia*, Defendants' failure to adequately provide the requisite disclosures and

authorizations required to be made to Oregon consumers under ORS 646A.295 – arise under

ORS 646.608(1)(ttt).

**PLAINTIFFS' INDIVIDUAL ALLEGATIONS**

    A.    **Plaintiff Victor Walkingeagle**

66.    Plaintiff Victor Walkingeagle is an individual consumer who signed up for a

YouTube Music subscription on a free trial basis from Defendants' YT Website while in Oregon

at some point in approximately December 2021.  However, as discussed below, Mr.

Walkingeagle did not actually learn that his YT Subscription was an automatic renewal until

approximately February 2022.

67.    At the time Mr. Walkingeagle signed up for his YT Subscription, he provided the

billing information associated with his personal debit card directly to Defendants.

68.    Before Mr. Walkingeagle enrolled in his free trial YT Subscription, Defendants

did not disclose to Mr. Walkingeagle all required automatic renewal offer terms associated with

the subscription program.  Additionally, although the Checkout Page from which Mr.

Walkingeagle made his purchase included some relevant information regarding automatic

renewal, the manner in which this information was presented was insufficient to put Mr.

Walkingeagle on notice of the material offer terms associated with his YT Subscription, which,

pursuant to ORS 646A.295(1)(a), Defendants were required to clearly and conspicuously

disclose on the Checkout Page prior to Mr. Walkingeagle's completion of his initial order for the

YouTube Music subscription.  Specifically, prior to completing his initial YT Subscription order,

the relevant screens and buttons presented to Mr. Walkingeagle did not clearly and

conspicuously state that his YT Subscription would automatically renew every month until he cancelled; they did not state the recurring charges that would be charged to Mr. Walkingeagle's Payment Method as part of the automatic renewal plan, explain that the amount of the charge would change, or disclose the amount to which the charge would change; and they did not describe the full cancellation policy that applied to his purchase.

69.     Moreover, at no point prior to completing his initial purchase did Defendants obtain Mr. Walkingeagle's affirmative consent to an agreement containing the automatic renewal offer terms associated with the YouTube Music subscription.

70.     After Mr. Walkingeagle completed his initial order, Defendants sent Mr. Walkingeagle an acknowledgment email stating that his YT Subscription had been activated. However, that acknowledgement email failed to provide Mr. Walkingeagle with the complete automatic renewal offer terms that applied to Defendants' YouTube Music subscription (including the mere fact that the YT Subscription would automatically renew every month unless and until Mr. Walkingeagle chose to cancel), a description of Defendants' full cancellation policy, or information regarding how to cancel Mr. Walkingeagle's YT Subscription in a manner capable of being retained by him.  Mr. Walkingeagle did not receive any other acknowledgements that contain the required information.

71.     As a result of Defendants' missing and otherwise deficient disclosures, when Mr. Walkingeagle selected and enrolled in his YouTube Music free trial subscription in or around December 2021, he was unaware that Defendants enrolled him in an "automatic renewal" program under which the subscription would renew each month and result in continuous monthly automatic renewal charges to his Payment Method unless and until Mr. Walkingeagle canceled the subscription.  Thus, because Mr. Walkingeagle was not expecting the YT Subscription to

automatically renew, the thought of cancelling his YT Subscription did not occur to Mr. Walkingeagle.  That is, believing the membership plan would automatically terminate following the initial three-month trial period and there was therefore no need for Mr. Walkingeagle to affect cancellation in order to avoid future charges, Mr. Walkingeagle did not attempt to cancel his YT Subscription before incurring charges in connection with the YT Subscription.

72.    Nevertheless, in or around February 2022, approximately three months after Mr. Walkingeagle first signed up for his free trial to YouTube Music, Defendants automatically renewed Mr. Walkingeagle's YT Subscription and charged Mr. Walkingeagle's Payment Method approximately $9.99, the full monthly standard membership fee then associated with the paid monthly YouTube Music subscription, without his knowing or affirmative consent.

73.    Mr. Walkingeagle did not become aware of Defendants' course of unlawful conduct until he incurred this unauthorized charge to his Payment Method in or around February 2022.  Prior to that point, Mr. Walkingeagle was not aware that he would be charged *any* money in connection with his *free* trial, and he certainly did not understand that his YouTube Music free trial in fact was or would automatically become an "automatic renewal" for which he would incur recurring charges on an ongoing, monthly basis.

74.    Yet, thereafter, Defendants continued to automatically renew Mr. Walkingeagle's YT Subscription at the same rate on a monthly basis and charged his Payment Method at least an additional three times, for a total of four unauthorized charges (and counting) to Mr. Walkingeagle's Payment Method without his knowing consent.  As shown by the table below, from February 2022 to May 2022, Defendants charged a total of approximately $39.96 to Mr. Walkingeagle's Payment Method, which came as a surprise to Mr. Walkingeagle.

75.    The monthly fees that Defendant charged to Mr. Walkingeagle's Payment Method

in connection with his YouTube Music subscription came as a surprise to Mr. Walkingeagle because, up until February 2022, he had believed that the membership plan would automatically terminate following the initial three-month trial period.  He was also unsure of how long his free trial would last, and generally believed that YouTube would inform him following the expiration of the free trial period and, at that point, attempt to obtain his affirmative consent to continue monthly charges in connection with YouTube Music if he wished to continue with the paid subscription.  As a result, Mr. Walkingeagle did not expect to incur any charges in connection with the YT Subscription at the time Defendants posted fees to Mr. Walkingeagle's Payment Method in or around February 2022.

76.     Mr. Walkingeagle's confusion and surprise with respect to the monthly renewal fees he incurred since February 2022 – and, more generally, about the applicable offer terms concerning automatic renewal, price, billing date, and cancellation – is the direct result of Defendants' failure to place Mr. Walkingeagle on notice of several material terms associated with his YT Subscription.  In particular, Mr. Walkingeagle was not made aware of the fact that Defendants enrolled him in an "automatic renewal" program under which his YT Subscription would automatically renew each month after the initial three-month trial period, unless Mr. Walkingeagle chose to cancel before the trial period ended.  Nor was Mr. Walkingeagle made aware of Defendants' cancellation policy, the most crucial aspects of which were missing from the Checkout Page and Acknowledgment Email, and Defendants also failed to adequately disclose the length of the free trial period and the recurring amount that would be charged to Mr. Walkingeagle's debit card as part of his YT Subscription.  Because Defendants failed to disclose this material information in the manner required by statute, Mr. Walkingeagle was unable at the point of sale to accept or provide affirmative consent to Defendants' offer or knowingly enter

into to the purchase agreement.  Thus, as a direct result of Defendants' missing, incomplete, and otherwise deficient disclosures on the Checkout Page and in the Acknowledgment Email, Mr. Walkingeagle was induced to sign up for, and unable to terminate, his YT Subscription.

77.    Additionally, during the course of his YT Subscription, Mr. Walkingeagle found Defendants' billing practices confusing and unpredictable.  Indeed, prior to February 2022, Mr. Walkingeagle did not expect to receive *any* of the renewal charges posted to his account following his December 2021 enrollment in the free trial YouTube Music subscription program.

78.    In sum, because Mr. Walkingeagle did not expect that his free trial would automatically convert into a paid YT Subscription in the first place, Mr. Walkingeagle was unaware at the time he initially signed up for a free trial in December 2021 that he would incur any renewal charges whatsoever in connection with YouTube Music, and he remained unaware of the automatic renewal feature associated with Defendants' free trial offer until March 2022, when, upon review of his bank statement, Mr. Walkingeagle learned that his free trial had in fact been automatically converted to a paid YT Subscription and that, as a result, in February 2022 he had been charged renewal fees by Defendants in connection with the same, and that those fees would continue thereafter on a monthly basis.  Further, once Mr. Walkingeagle learned that his YT Subscription did automatically renew and would continue to do so without his intervention, Mr. Walkingeagle had no idea how to cancel his YT Subscription and did not expect that it would be as difficult and confusing a process as it turned out to be.  Thus, Mr. Walkingeagle has been unable to successfully cancel his YT Subscription.  As a result, Mr. Walkingeagle is still enrolled in, and continues to receive monthly renewal charges for, his YT Subscription to this day, despite the fact that he does not want to remain subscribed or pay further renewal fees.

79.    Notably, neither the Checkout Page nor the Acknowledgment Email contain

Defendants' full cancellation policy, and nor do they provide any explanation whatsoever regarding how to cancel the YT Subscription.  As a result, based on the pre- and post-check out disclosures featured on the Checkout Page and in the Acknowledgment Email, Mr. Walkingeagle did not know anything about how to cancel his YT Subscription (*e.g.*, in terms of who to contact, when, and by what method), or about Defendants' 7-day cancellation policy or associated refund policy with respect to cancellations, as are set forth on other pages of Defendants' website.

80.    Mr. Walkingeagle was not previously aware of the above aspects of Defendants' cancellation policy.  At no point during the lift of his YT Subscription was Mr. Walkingeagle required or even prompted to navigate to or otherwise examine any of the terms disclosed on the on any other page of the YT Platform, aside from the Checkout Page.  Defendants neglected to disclose this information to Mr. Walkingeagle either at the point of purchase on the Checkout Page or in the acknowledgment email that Defendants sent to Mr. Walkingeagle after he completed the checkout process.  Accordingly, Defendants failed to place Mr. Walkingeagle on notice of its cancellation policy or provide Mr. Walkingeagle information regarding how to cancel YouTube Music in a manner that is capable of being retained by him, in violation of ORS 646A.295(1)(a)-(c).

81.    Moreover, even if the Acknowledgment Email had contained Defendants' complete cancellation policy (it did not), for the reasons stated above the "mechanism for cancellation" that exists is not one Mr. Walkingeagle and other reasonable consumers would consider "timely" or "easy-to-use."  Defendants therefore failed to provide Mr. Walkingeagle with an "timely and easy-to-use mechanism for cancellation" or describe any such mechanism in an Acknowledgment Email, in violation of ORS 646A.295(2).

82.    Defendants' pre- and post-purchase disclosures fail to comply with the ARL,

which deems products provided in violation of the statute to be unconditional gifts to consumers. *See* ORS 646A.295(5).

83.    As a direct result of Defendants' unlawful conduct described above, Mr. Walkingeagle suffered economic injury.  Specifically, Defendants' ARL violations caused Mr. Walkingeagle to lose money because Mr. Walkingeagle reasonably relied on Defendants' clear and conspicuous disclosures of the Checkout Page and the Acknowledgment Email (and, as a natural corollary, the omissions, lack of clarity, and/or inconspicuousness of the disclosures contained therein) in deciding whether to purchase his YT Subscription in the first place and whether to continue paying for it after that (*i.e.*, by not cancelling the auto-renewal).

84.    Had Defendants complied with the ARL by adequately disclosing – and obtaining Mr. Walkingeagle's affirmative consent to – the requisite YT Subscription offer terms on the Checkout Page prior to Mr. Walkingeagle's completion of his initial purchase in December 2021, Mr. Walkingeagle would have been able to read and review the auto renewal terms prior to purchase and he would have not subscribed to YouTube Music in the first place or would have subscribed on materially different terms, thereby avoiding financial injury of any kind as a result of Defendants' ARL violations.  Similarly, had Defendants complied with the ARL by adequately disclosing the terms associated with Mr. Walkingeagle's YT Subscription in the post-checkout Acknowledgment Email (*i.e.*, after his initial enrollment in YouTube Music, but before any automatic renewal charge of Mr. Walkingeagle's Payment Method), Mr. Walkingeagle would have been able to read and review the auto renewal terms prior to another automatic renewal for the subsequent billing period, and he would have cancelled his YT Subscription prior to the expiration of the subscription period in which he learned such information, thereby avoiding all or part of the aggregate automatic renewal charges that Mr. Walkingeagle ultimately

incurred in connection with YouTube Music from the time of enrollment in late 2021, to and

through the present.  But Defendants did not adequately disclose the required automatic renewal

terms in either the Checkout Page or the Acknowledgment Email, depriving Mr. Walkingeagle

of the opportunity to make informed decisions as to the recurring transactions.

85.     The facts giving rise to Mr. Walkingeagle's claims are materially the same as the

Class he seeks to represent.

**B.     Plaintiff Nathan Briggs**

86.     Plaintiff Nathan Briggs is an individual consumer who signed up for a YouTube

Music subscription from Defendants' YT Website while in Oregon at some point in

approximately April 2021.  However, as discussed below, Mr. Briggs did not actually learn that

his YT Subscription was an automatic renewal or that he would incur monthly charges in

connection with YouTube Music until late May 2021 or early June 2021, upon review of his

bank statement for May.

87.     At the time Mr. Briggs signed up for his YT Subscription in or around April 2021,

he provided the billing information associated with his personal debit card directly to

Defendants.

88.     Before Mr. Briggs enrolled in his YT Subscription, Defendants did not disclose to

Mr. Briggs all required automatic renewal offer terms associated with the subscription program.

Additionally, although the Checkout Page from which Mr. Briggs made his purchase included

some relevant information regarding automatic renewal, the manner in which this information

was presented was insufficient to put Mr. Briggs on notice of the material offer terms associated

with his YT Subscription, which, pursuant to ORS 646A.295(1)(a), Defendants were required to

clearly and conspicuously disclose on the Checkout Page prior to Mr. Briggs's completion of his

initial order for the YouTube Music subscription.  Specifically, prior to completing his initial YT

Page 55 - COMPLAINT

Subscription order, the relevant screens and buttons presented to Mr. Briggs did not clearly and conspicuously state that his YT Subscription would automatically renew every month until he cancelled; they did not state the recurring charges that would be charged to Mr. Briggs's Payment Method as part of the automatic renewal plan, explain that the amount of the charge would change, or disclose the amount to which the charge would change; and they did not describe the full cancellation policy that applied to his purchase.

89.     Moreover, at no point prior to completing his initial purchase did Defendants obtain Mr. Briggs's affirmative consent to an agreement containing the automatic renewal offer terms associated with the YouTube Music subscription.

90.     After Mr. Briggs completed his initial order, Defendants sent Mr. Briggs an acknowledgment email stating that his YT Subscription had been activated.  However, that acknowledgement email failed to provide Mr. Briggs with the complete automatic renewal offer terms that applied to Defendants' YouTube Music subscription (including the mere fact that the YT Subscription would automatically renew every month unless and until Mr. Briggs chose to cancel), a description of Defendants' full cancellation policy, or information regarding how to cancel Mr. Briggs's YT Subscription in a manner capable of being retained by him.  Mr. Briggs did not receive any other acknowledgements that contain the required information.

91.     As a result of Defendants' missing and otherwise deficient disclosures, when Mr. Briggs selected and enrolled in his YouTube Music subscription in or around March 2021, he was unaware that Defendants had enrolled him in an "automatic renewal" program under which the subscription would renew each month and result in continuous monthly automatic renewal charges to his Payment Method, unless and until Mr. Briggs canceled the subscription.

92.     Thus, because Mr. Briggs was not expecting the YT Subscription to automatically

renew, the thought of cancelling his YT Subscription before renewal did not occur to Mr. Briggs. That is, believing the membership plan would automatically terminate, along with his access to the benefits associated with YouTube Music, following the initial one-month period and there was therefore no need for Mr. Briggs to affect cancellation in order to avoid incurring additional future charges in connection with YouTube Music, Mr. Briggs did not attempt to cancel his YT Subscription before it automatically renewed following April 2021.

93.    Nevertheless, the following month, in or around May 2021, Defendants automatically renewed Mr. Briggs's YT Subscription and charged Mr. Briggs's Payment Method approximately $9.99, the full monthly standard membership fee then associated with the paid monthly YouTube Music subscription, without his knowing or affirmative consent.  Thereafter, Defendants continued to automatically renew Mr. Briggs's YT Subscription and charge his Payment Method on a monthly basis.

94.    Mr. Briggs was also unaware of the recurring price that would be charged in connection with his YT Subscription until late May or early June of 2021, when, upon review of the account bank statement history associated with his Payment Method, he saw the monthly charge to his Payment Method in May 2021.

95.    Immediately after learning that his YT Subscription did, indeed, automatically renew in late May or early June of 2021, and that it would continue to do so without his intervention, Mr. Briggs promptly attempted to cancel his YT Subscription.  However, finding no useful guidance in the vague and incomplete terms that were presented to him on the Checkout Page at the point of sale and later in the acknowledgement email, Mr. Briggs struggled immensely with the cancellation process.  Indeed, Mr. Briggs had no idea how to cancel his YT Subscription and did not expect that it would be as difficult and confusing a process as it turned

out to be.  Ultimately, Mr. Briggs decided to circumvent Defendants and attempted to cancel his YT Subscription through his financial institution, by instituting a block on his bank account.

96.    Mr. Briggs's confusion and surprise about with respect to the monthly renewal fee(s) he incurred – and, more generally, about the offer terms concerning automatic renewal, recurring price, billing date, and cancellation of YouTube Music – is the direct result of Defendants' failure to place Mr. Briggs on notice of several material terms associated with his YT Subscription.  In particular, Mr. Briggs was not made aware of the fact that Defendants enrolled him in an "automatic renewal" program under which his YT Subscription would automatically renew each month, unless Mr. Briggs chose to cancel before the current billing period ended and the next billing period began.  Nor was Mr. Briggs made aware of Defendants' cancellation policy, the most crucial aspects of which were missing from the Checkout Page and Acknowledgment Email, and Defendants also failed to adequately disclose the recurring amount that would be charged to Mr. Briggs's debit card as part of his YT Subscription.  That is, while certain material offer terms were altogether missing from the Checkout Page, to the extent the Checkout Page contained relevant text bearing on certain other required disclosures, such terms were presented in such a way that the terms could be – and, by Mr. Briggs, was – easily overlooked, and are therefore not "clear and conspicuous" as defined by Section 646A.293(2) of the ARL.

97.    Because Defendants failed to disclose this material information in the manner required by statute, Mr. Briggs was unable at the point of sale to accept or provide affirmative consent to Defendants' offer or knowingly enter into to the purchase agreement.  Thus, as a direct result of Defendants' missing, incomplete, and otherwise deficient disclosures on the Checkout Page and in the Acknowledgment Email, Mr. Briggs was induced to sign up for, and

unable to terminate, his YT Subscription.

98.    Notably, neither the Checkout Page nor the Acknowledgment Email contain Defendants' full cancellation policy, and nor do they provide any explanation whatsoever regarding how to cancel the YT Subscription.  As a result, based on the pre- and post-check out disclosures featured on the Checkout Page and in the Acknowledgment Email, Mr. Briggs did not know anything about how to cancel his YT Subscription (*e.g.*, in terms of who to contact, when, and by what method), or about Defendants' 7-day cancellation policy or associated refund policy with respect to cancellations, as are set forth on other pages of Defendants' website.

99.    Mr. Briggs was not previously aware of the above aspects of Defendants' cancellation policy.  At no point during the lift of his YT Subscription was Mr. Briggs required or even prompted to navigate to or otherwise examine any of the terms disclosed on the on any other page of the YT Platform, aside from the Checkout Page.  Defendants neglected to disclose this information to Mr. Briggs either at the point of purchase on the Checkout Page or in the acknowledgment email that Defendants sent to Mr. Briggs after he completed the checkout process.  Accordingly, Defendants failed to place Mr. Briggs on notice of its cancellation policy or provide Mr. Briggs information regarding how to cancel YouTube Music in a manner that is capable of being retained by him, in violation of ORS 646A.295(1)(a)-(c).

100.    Moreover, even if the Acknowledgment Email had contained Defendants' complete cancellation policy (it did not), for the reasons stated above the "mechanism for cancellation" that exists is not one Mr. Briggs and other reasonable consumers would consider "timely" or "easy-to-use."  Defendants therefore failed to provide Mr. Briggs with an "timely and easy-to-use mechanism for cancellation" or describe any such mechanism in an Acknowledgment Email, in violation of ORS 646A.295(2).

101.    Defendants' pre- and post-purchase disclosures fail to comply with the ARL, which deems products provided in violation of the statute to be unconditional gifts to consumers. *See* ORS 646A.295(5).

102.    As a direct result of Defendants' unlawful conduct described above, Mr. Briggs suffered economic injury.  Specifically, Defendants' ARL violations caused Mr. Briggs to lose money because Mr. Briggs reasonably relied on Defendants' clear and conspicuous disclosures of the Checkout Page and the Acknowledgment Email (and, as a natural corollary, the omissions, lack of clarity, and/or inconspicuousness of the disclosures contained therein) in deciding whether to purchase his YT Subscription in the first place and whether to continue paying for it after that (*i.e.*, by not cancelling the auto-renewal).

103.    Had Defendants complied with the ARL by adequately disclosing – and obtaining Mr. Briggs's affirmative consent to – the requisite YT Subscription offer terms on the Checkout Page prior to Mr. Briggs's completion of his initial purchase in December 2021, Mr. Briggs would have been able to read and review the auto renewal terms prior to purchase and he would have not subscribed to YouTube Music in the first place or would have subscribed on materially different terms, thereby avoiding financial injury of any kind as a result of Defendants' ARL violations.  Similarly, had Defendants complied with the ARL by adequately disclosing the terms associated with Mr. Briggs's YT Subscription in the post-checkout Acknowledgment Email (*i.e.*, after his initial enrollment in YouTube Music, but before any automatic renewal charge of Mr. Briggs's Payment Method), Mr. Briggs would have been able to read and review the auto renewal terms prior to another automatic renewal for the subsequent billing period, and he would have cancelled his YT Subscription prior to the expiration of the subscription period in which he learned such information, thereby avoiding all or part of the aggregate automatic renewal charges

that Mr. Briggs ultimately incurred in connection with YouTube Music from the time of

enrollment in late 2021, to and through the present.  But Defendants did not adequately disclose

the required automatic renewal terms in either the Checkout Page or the Acknowledgment Email,

depriving Mr. Briggs of the opportunity to make informed decisions as to the recurring

transactions.

104.    The facts giving rise to Mr. Briggs's claims are materially the same as the Class

he seeks to represent.

## CLASS ACTION ALLEGATIONS

105.    *Class Definition*: Plaintiffs bring this action on behalf of themselves and all

others similarly situated, as a class action pursuant to Federal Rule of Civil Procedure 23.  The

classes Plaintiffs seek to represent are defined as follows (the "Class"):

> All persons in Oregon who, within the applicable statute of
> limitations period, up to and including the date of final judgment in
> this action, incurred fee(s) in connection with Defendants'
> YouTube TV, YouTube Music, and YouTube Premium
> subscription offerings.

106.    Specifically excluded from the Class are Defendants and any entities in which

Defendants have a controlling interest, Defendants' agents and employees, the judge to whom

this action is assigned, members of the judge's staff, and the judge's immediate family.

107.    Plaintiffs reserve the right to amend the definition of the Class if discovery or

further investigation reveals that the Class should be expanded or otherwise modified.

108.    *Numerosity*.  Members of the Class are so numerous that their individual joinder

herein is impracticable.  On information and belief, the Class comprises at least hundreds of

thousands or millions of consumers throughout Oregon.  The precise number of Class members

and their identities are unknown to Plaintiffs at this time but may be determined through

discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

109.    ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (i) whether Defendants' YT Subscriptions constitute "Automatic renewal[s]" and/or "Continuous service[s]" within the meaning of ORS 646A.293(1) and (4); (ii) whether Defendants failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation of ORS 646A.295(1)(a); (iii) whether Defendants charged Plaintiffs' and Class members' Payment Method for an automatic renewal or continuous service without first obtaining their affirmative consent to the automatic renewal offer terms or continuous service offer terms in violation of ORS 646A.295(1)(b); (iv) whether Defendants failed to provide an acknowledgment that included the automatic renewal or continuous service offer terms and information on how to cancel in a manner that is capable of being retained by Plaintiffs and the Class, in violation of ORS 646A.295(1)(c); (v) whether the goods and services provided by Defendants are deemed "unconditional gifts" in accordance with ORS 646A.295(5); (vi) whether Defendants' conduct alleged herein violated the UTPA's prohibitions of engaging in unlawful practices in the course of its business, vocation, or occupation under ORS 646.608(1); (vii) whether Plaintiffs and the Class are entitled to damages and/or restitution; (viii) whether Defendants should be enjoined from further engaging in the misconduct alleged herein; (ix) whether Defendants' use or employment of the unlawful practice(s) alleged herein was willful and/or reckless or knowing; (x) whether Plaintiffs and the Class suffered ascertainable loss of

money or property as a result of Defendants' conduct; (xi) whether Plaintiffs and the Class members are entitled to recover statutory damages of $200 per violation pursuant to ORS 646.638(1) and ORS 646.638(8); and (xii) whether Plaintiffs and Class members are entitled to recover punitive damages and/or equitable relief under ORS 646.638(1); and (xiii) whether Plaintiffs and the Class are entitled to attorneys' fees and costs under ORS 646.638(3).

110.    *Typicality*.  The claims of Plaintiffs are typical of the claims of the Class in that Plaintiffs and members of the proposed Class sustained damages as a result of Defendants' uniform wrongful conduct, based upon, *inter alia*, Defendants' failure to: adequately disclose the automatic renewal offer terms or continuous service offer terms associated with the YT Subscriptions; obtain Plaintiffs' and Class members' affirmative consent to such offer terms before charging their Payment Methods in connection with the YT Subscriptions; and provide an acknowledgment that includes the automatic renewal offer terms and information regarding how to cancel in a manner that is capable of being retained by Plaintiffs and the Class.

111.    *Adequacy*.  Plaintiffs will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests, and Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

112.    *Superiority*.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

113.    Defendants have acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

114.    Without a class action, Defendants will continue a course of action that will result in further damages to Plaintiffs and Class members, and will likely retain the benefits of its wrongdoing.

115.    Based on the foregoing allegations, Plaintiffs' claims for relief include those set forth below.

<u>**COUNT I**</u>

**Violations of Oregon's Unlawful Trade Practices Act ("UTPA"),**
**ORS §§ 646.608(1)(ttt)**

116.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

117.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

118.    The Oregon Unlawful Trade Practices Act ("UTPA"), which was enacted in 1971 and is codified at ORS 646.605-646.656, is remedial statutory scheme enacted as a comprehensive statute for the protection of consumers from unlawful trade practices.  The UTPA prohibits unlawful practices in the course of the person's business, vocation, or occupation with respect to both general and specific conduct.  Specifically proscribed conduct is set forth under Section 646.608(1), which has 79 subsections and many of which refer to other provisions of the Oregon Revised Statutes.  *See* O.R.S. 646.608(1)(a)–(aaaa).

119.    The UTPA authorizes private civil actions.  Pursuant to Section 646.638(8)(a) of the UTPA, "a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared

unlawful under ORS 646.608 … may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater." ORS 646.638(1); *see also* ORS 646.638(8). In a class action, plaintiffs may recover statutory damages only if they suffered an ascertainable loss "as a result of a reckless or knowing use or employment" of an unlawful trade practice. ORS 646.638(8)(a).

120.    Defendants are each a "Person" as defined in ORS 646.605(4).

121.    The YT Subscriptions are goods as defined by ORS 646.605(6)(a), because the constitute products that may be obtained primarily for personal, family, or household uses.

122.    "The UTPA prohibits businesses from charging customers other types of fees when they are not disclosed in the particular way that the law requires." *Stewart v. Albertson's, Inc.*, 308 Or. App. 464, 492 n.17, *review denied*, 368 Or. 138 (2021); *Scharfstein v. BP West Coast Products, LLC*, 292 Or. App. 69, 89, *review denied*, 363 Or. 815 (2018) (same). As explained below, at all relevant times, Defendants violated, and continue to violate, the UTPA's proscription against engaging in unlawful conduct by charging customers certain types of fees when they are not disclosed in the particular way that the law requires.

123.    Specifically, Defendants' actions are "unlawful" within the meaning of the UTPA because they violated the Oregon's Automatic Renewal Law ("ARL"), ORS §§ 646A.292-646A.295, in direct violation of Section 646.608(1)(ttt) of the UTPA. In particular, following consumers' (including Plaintiffs' and Class members') initial enrollments in the YT Subscriptions, Defendants automatically charge subscription fees to consumers' Payment Methods notwithstanding Defendants' uniform and systematic failure to provide legally required information at the point of purchase. As is explained in the above paragraphs of this complaint, which are incorporated herein by reference, by doing so, Defendants violate multiple provisions

of Oregon's ARL.  *See supra* (alleging violations of specific provisions of ORS 646A.295).

124.    Defendants' noncompliance with the ARL is a direct violation of UTPA.  *See*
ORS 646.608(1)(ttt) ("(1) A person engages in an unlawful practice if in the course of the
person's business, vocation or occupation the person does any of the following: … (ttt) Violates
a provision of ORS 646A.295 (Prohibited actions).").

125.    Specifically, Defendants violate the ARL because, at all relevant times, they
failed, and continue to fail, to:  (a) provide the auto-renewal terms associated with the YT
Subscriptions in a clear and conspicuous manner before the subscription or purchasing
agreement is fulfilled and in visual proximity to the request for consent to the offer, in violation
of ORS 646A.295(1)(a); (b) obtain the affirmative consent of Plaintiffs and the Class to those
terms before charging their Payment Methods, in violation of ORS 646A.295(1)(b); and (c)
provide an acknowledgment that includes the automatic renewal or continuous service offer
terms, cancellation policy, and information regarding how to cancel in a manner that is capable
of being retained by the consumer, in violation of ORS 646A.295(1)(c).  Defendants also make it
exceedingly difficult and unnecessarily confusing for consumers to cancel their YT
Subscriptions, in violation of ORS 646A.295(2).

126.    Each of these acts and practices constitutes an independent violation of the ARL,
and thus an independent violation of the Section 646.608(1) of the UTPA.

127.    Defendants were prohibited from making the automatic renewal charges to
Plaintiffs' and Class members' Payment Methods as discussed above, thereby taking Plaintiffs'
and Class members' money without the required affirmative consent.  *See* ORS 646A.295(1)(b),
(5).  Yet, Defendants nevertheless did so in violation of the ARL.

128.    Thus, Defendants "failed to disclose the legally required information and assessed

a . . . fee in violation of the UTPA." *Scharfstein v. BP W. Coast Prod., LLC*, 292 Or. App. 69, 90

(2018). "In doing so, [Defendants] illegally charged [their] customers [recurring subscription

fees], thereby causing the ascertainable loss." *Id.*; *see also Rollins v. Wink Labs, Inc.*, 2021 WL

1976082, at *5 (D. Or. Feb. 22, 2021); *Stewart v. Albertson's, Inc.*, 308 Or. App. 464, 492 n.17,

*review denied*, 368 Or. 138 (2021); *Solano v. Kroger Co.*, 2020 WL 7028473, at *3–4 (D. Or.

Nov. 30, 2020); *Miller v. WinCo Foods, LLC*, 2020 WL 6693149, at *6–7 (D. Or. Sept. 3, 2020),

*report and recommendation adopted*, 2020 WL 6685697 (D. Or. Nov. 12, 2020); *Russell v. Ray

Klein, Inc.*, 2019 WL 6137455, at *4 (D. Or. Nov. 19, 2019).

129.    Moreover, pursuant to the ARL, all products received from Defendants in

violation of the ARL constitute "unconditional gifts." *See* ORS 646A.295(5). In other words,

once Defendants tendered, and Plaintiffs and Class members were provided access to, the

"goods, wares, merchandise or products" of the YT Subscriptions (*i.e.*, their benefits) vis-à-vis

their activation, Plaintiffs and Class members assumed title and ownership over such goods as

their property, and when Plaintiffs and Class members with the right to "use or dispose of them

in any manner the consumer sees fit without any obligation to the person[.]" *Id*.

130.    Further, by ultimately revoking Plaintiff Briggs's and other similarly situated

Class members' access to such goods once recurring payments were eventually stopped (in

Plaintiff Briggs's case, through his financial institution's implementation of a block on his

Payment Method on continued unauthorized charges by Defendants), Defendants deprived

Plaintiff Briggs and other Class members in the same position of their property.

131.    Thus, Plaintiffs have sustained an ascertainable loss of money *and* property as a

result of Defendants' use or employment of methods, acts, or practices declared unlawful by

ORS 646.608(ttt) (*i.e.*, Defendants' conduct in violation of Oregon's ARL, ORS 646A.295).

132.     Because Defendants illegally charged Plaintiffs and the Class unlawful fees in connection with the YT Subscriptions, Plaintiffs and Class members are entitled to recover statutory damages of $200 per UTPA violation.  *See* ORS 646.638(1) and (8)(a) (class members can recover "actual damages or statutory damages of $200, whichever is greater").

133.     Moreover, Defendants' unlawful conduct as described above caused Plaintiffs' and Class members' ascertainable loss because Defendants' acts and practices were intended to deceive Plaintiffs and the Class, and – as a result of Plaintiffs' and Class members' reasonable reliance on Defendants' omissions of material offer terms required to be disclosed by the ARL – have resulted, and will result, in damages to Plaintiffs and the Class in the form of loss on money and property.

134.     As a direct and proximate result of Defendants' unlawful practices described herein, Defendants have received, and continue to hold, unlawfully obtained property and money belonging to Plaintiffs and the Class in the form of payments made by Plaintiffs and Class members in connection with their YT Subscriptions.  Defendants have profited from their unlawful acts and practices in the amount of those business expenses and interest accrued thereon.  If Defendants had complied with the ARL, Defendants would not have made the unlawful charges, and would not have obtained these monies from Plaintiffs and the Class.

135.     Defendants' violations of the UTPA under ORS 646.608(1)(ttt) as described above were willful, as well as reckless and/or knowing, because, at the time Defendants committed the violations at issue, Defendants knew or should have known that their actions violated the Oregon UTPA.

136.     Accordingly, Plaintiffs, individually and on behalf of similarly situated Oregon consumers, seek all monetary and non-monetary relief permitted by law under ORS 646.605 *et*

*seq*., including ORS 646.636 and ORS 646.638(1) and (8), including equitable relief, actual damages or statutory damages of $200 per violation (whichever is greater), and pre- and-post judgment interest, along with any other appropriate equitable relief deemed necessary or proper.

137.    Further, Plaintiffs and the Class seek recovery of punitive damages from Defendants because Defendants' conduct was reprehensible.  Defendants inflicted economic injury upon Plaintiffs and the proposed Class in an intentional manner.  Defendants utilized their singular control over the YT Subscriptions to induce Plaintiffs and the Class to purchase the YT Subscriptions over alternative automatic renewal programs for music and television streaming offered by competitors that feature similar benefits and content and are sold at similar and/or lesser price points.

138.    Under ORS 646.638(3), Plaintiffs and Class members are also entitled to recover their reasonable attorney fees from Defendants for Defendants' violations of Oregon law as detailed herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

(a)    For an order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as representatives of the Class, and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

(b)    For an order declaring the Defendants' conduct violates the statutes and common laws referenced herein;

(c)    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d)    For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

Page 69 - COMPLAINT

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: May 25, 2022                 Respectfully submitted,

MARKOWITZ HERBOLD PC

By:     *s/ Stanton R. Gallegos*
Stanton R. Gallegos, OSB #160091
StantonGallegos@MarkowitzHerbold.com
*Of Attorneys for Plaintiff and the
Putative Class*

**BURSOR & FISHER, P.A.**

Neal J. Deckant *
ndeckant@bursor.com
Julia K. Venditti *
jvenditti@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455

Philip L. Fraietta *
pfraietta@bursor.com
Frederick J. Klorczyk III *
fklorczyk@bursor.com
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150

*\* Pro Hac Vice Application Forthcoming
Attorneys for Plaintiff and the Putative Class*

1295088