**Peter D. Hawkes** (OSB No. 071986)
peter@angelilaw.com
**Edward A. Piper** (OSB No. 141609)
ed@angelilaw.com
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Tel:  503.954.3783/ Fax:  503-227-0880

**Victor Jih** (CA SBN 186515)
vjih@wsgr.com
WILSON SONSINI GOODRICH &
ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2027
Tel:  323.210.2900/Fax:  866.974.7329

**Amit Q. Gressel** (CA SBN 307663)
agressel@wsgr.com
**Jordan A. Nelson** (CA SBN 327915)
jordan.nelson@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Street, Spear Tower, Suite 1550
San Francisco, CA 94105-1126
Tel:  415.947.2000/Fax:  415.947.2099

**Vivek Tata** (NY SBN 5480470)
vtata@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Tel:  212.999.5800/Fax:  212.999.5899

Attorneys for Defendants GOOGLE LLC, d/b/a YOUTUBE,
and YOUTUBE, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| VICTOR WALKINGEAGLE and NATHAN BRIGGS, on behalf of themselves and all other similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC, d/b/a YOUTUBE, a Delaware limited liability company, and YOUTUBE, LLC, a Delaware limited liability company,<br><br>    Defendants. | Case No.: 3:22-cv-00763-MO<br><br>**DEFENDANTS GOOGLE LLC, d/b/a YOUTUBE and YOUTUBE, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>**Oral Argument Requested** |

# TABLE OF CONTENTS

LOCAL RULE 7.1(a) COMPLIANCE .................................................................................. 5

MOTION ............................................................................................................................... 5

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 5

I.    INTRODUCTION ...................................................................................................... 5

II.   FACTUAL BACKGROUND ..................................................................................... 6

      A.    YouTube Music and YouTube Premium ...................................................... 6

      B.    Plaintiffs and The Present Action ............................................................... 10

III.  YOUTUBE'S DISCLOSURES COMPLY WITH THE ARL ........................................ 11

      A.    YouTube Discloses The Key Offer Terms .................................................. 12

      B.    YouTube's Disclosures are Clear and Conspicuous ................................... 16

      C.    YouTube Conspicuously Discloses The Price In Visual Proximity ............ 18

      D.    YouTube Obtains Affirmative Consent ...................................................... 20

      E.    YouTube's Receipt Fulfills The Acknowledgment Requirement ................ 22

IV.   CONCLUSION ........................................................................................................ 25

CERTIFICATE OF COMPLIANCE .................................................................................. 26

# TABLE OF AUTHORITIES

## CASES

*Dohrmann v. Intuit, Inc.*,
    823 F. App'x 482 (9th Cir. 2020) ................................................................... 19, 20, 22

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ............................................................................ 8, 11, 14

*Hall v. Time, Inc.*,
    No. SACV 19-01153-CJC, 2020 WL 230388 (C.D. Cal. Mar. 13, 2020), *aff'd*,
    857 Fed. App'x ........................................................................................................ 13, 15

*Hall*, *v. Time, Inc.*,
    857 F. App'x 385 (9th Cir. 2021) ...................................................................*passim*

*J.K.J. v. City of San Diego*,
    No. 20-55622, 2021 WL 9194183 (9th Cir. Aug. 2, 2022) (as amended) ........................ 11, 16, 24

*Lee v. Ticketmaster L.L.C.*,
    817 F. App'x 393 (9th Cir. June 12, 2020) ..................................................................... 22

*Lundbom v. Schwan's Home Serv.*,
    No. 3:18-cv-02187-IM, 2020 WL 2736419 (D. Or. May 26, 2020)............................................. 19

*Mendoza v. Lithia Motors*,
    No. 6:16-CV-01264-AA, 2019 WL 1440260 (D. Or. Mar. 30, 2019),
    *aff'd*, 818 F. App'x 715 (9th Cir. 2020)........................................................................ 14

*Rutter v. Apple Inc.*,
    No. 21-cv-04077-HSG, 2022 WL 1443336 (N.D. Cal. May 6, 2022)........................................ 13

*Taylor v. Nike, Inc.*,
    No. 3:16-CV-00661-MO, 2017 WL 663056 (D. Or. Feb. 17, 2017).............................. 6, 8, 11, 14

*Tritz v. U.S. Postal Serv.*,
    721 F.3d 1133 (9th Cir. 2013) ......................................................................................... 11

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ................................................................................. 11, 24

## STATUTES

9 V.S.A. § 2454a(a)(2).................................................................................................... 21

Cal. Bus. & Prof. Code § 17602, et seq. ................................................................... 20, 24

ORS 646A.293 ........................................................................................................*passim*

ORS 646A.295 ........................................................................................................*passim*

ORS 646.608 ................................................................................................................. 5, 11, 25

ORS 646.638 ............................................................................................................. 10, 11, 16

ORS 646A.710 ................................................................................................................ 14, 19

ORS 646A.735 ................................................................................................................ 14, 19

ORS 646A.803 ..................................................................................................................... 19

## RULES

Local Rule 7.1(a) ..................................................................................................................... 6

OAR 137-020-0020(2)(j) ....................................................................................................... 20

## LOCAL RULE 7.1(a) COMPLIANCE

Pursuant to Local Rule 7.1(a), counsel for Defendants GOOGLE LLC, d/b/a YOUTUBE, and YOUTUBE, LLC ("Defendants") conferred in good faith via telephone with counsel for Plaintiffs VICTOR WALKINGEAGLE and NATHAN BRIGGS ("Plaintiffs") regarding this motion. The parties were unable to resolve their dispute.

## MOTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants hereby move to dismiss Plaintiffs' Complaint on the ground that it fails to state a claim upon which relief may be granted. This Motion is supported by the Memorandum of Law below.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' Complaint relies on disclosure requirements found nowhere in Oregon's Automatic Renewal Law ("ARL"), ORS 646A.295. They resort to invented requirements because they cannot show a violation of the actual provisions of the ARL. Because Plaintiffs' claim for violation of Oregon's Unfair Trade Practices Act ("UTPA"), ORS 646.608(1)(ttt), rests on a violation of the ARL, the claim fails as a matter of law and must be dismissed.

The ARL's requirements are straightforward—and YouTube complied with them. YouTube clearly and conspicuously discloses ***how much*** members will be charged, ***how often*** they will be charged, ***when recurring billing starts,*** and that they can ***cancel at any time***. This information is presented in easy to understand, simple terms, and all of it is prominently visible on the page before a consumer enters payment information and "clicks" to confirm their membership. The same information is contained in an email along with a link to cancel.

Unable to allege any violation of the ARL's actual requirements, Plaintiffs argue that the purchase flow must contain unspecified "magic language" to be compliant, there must be a

separate checkbox for the renewal terms, all disclosures must appear "immediately above" the request for consent, and the disclosures must include "complete" cancellation instructions and refund policies. The ARL does not require any of this. If Plaintiffs had their way, disclosures would be cramped and confusing instead of clear and conspicuous.

Plaintiffs cannot state a claim. As such, neither Plaintiff can represent a class. *See Taylor v. Nike, Inc.*, No. 3:16-CV-00661-MO, 2017 WL 663056, at *1 (D. Or. Feb. 17, 2017) (dismissing class complaint where plaintiff had no claim, because "[e]ven named plaintiffs who represent a class must allege and show that they personally have been injured." (citation omitted)) (Mosman, J.).

## II.    FACTUAL BACKGROUND

### A.    YouTube Music and YouTube Premium

YouTube, and its parent company Google, offer a variety of applications and services across platforms. These applications—such as YouTube Music and YouTube Premium—can be accessed and viewed via a website or through a mobile application installed on a user's phone, tablet, or other mobile device. Compl. ¶¶ 2-3.

YouTube Music is a streaming music service similar to Spotify and Apple Music. YouTube Music offers both free and paid subscriptions. The free YouTube Music service offers access to a catalog of millions of songs, and users who upgrade to a paid subscription get ad-free access. *See* Comp. ¶ 3. YouTube Premium is a paid service that offers access to the ad-free YouTube Music streaming service and ad-free access to YouTube videos. *Id.* Together, YouTube Music and YouTube Premium have over 25 million subscribers. Compl. ¶ 27.

To sign-up for either the paid YouTube Music or YouTube Premium services, consumers are taken through a standard purchase flow and presented with a final purchase screen that is the same for both services (the "YouTube Music/Premium Buycart") shown below:



*See* Compl. ¶ 48. As seen above, YouTube informs users **how much** members will be charged (here, $11.99/mo), **how often** they will be charged (monthly), **when recurring billing starts** (in this example August 20, 2022), and that they can **cancel at any time**. Once this sign-up process is complete, YouTube immediately sends an acknowledgment email (the "YouTube Music/Premium receipt") confirming the details of the membership. The YouTube Music/Premium receipt repeats all of the previously disclosed offer terms from the YouTube Music/Premium Buycart, including

the subscription price, that the charges will be monthly, and the date that billing will start. Compl. ¶ 58.[1]

The YouTube Music/Premium receipt also includes a section titled "**Cancellations**," which advises members that they can "cancel your Music Premium membership at any time. If you cancel, you'll still have access to Music Premium Benefits until the end of your billing period." Compl. ¶ 58. The "Cancellations" section includes a hyperlink, set off in blue, to the cancellation page in the member's account settings, enabling them to cancel in just a few clicks.

---

[1] Plaintiffs purport to represent a class including members of YouTube TV. Compl. ¶ 105. YouTube TV also provides consumers with an ARL-compliant Buycart and Acknowledgement email. *See* Compl. ¶¶ 49, 59. However, neither plaintiff ever alleges that they purchased a YouTube TV membership. If neither Plaintiff can state a claim for the products he did purchase, the putative class Complaint must be dismissed. *See Taylor*, 2017 WL 663056, at *1; *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016) (affirming dismissal of putative class complaint for failure to state a claim). Accordingly, this brief shows why Plaintiffs cannot state a claim about the products they did purchase, YouTube Music and YouTube Premium, and does not address Plaintiffs' assertions about YouTube TV.



*See* Compl. ¶ 58.

**B.     Plaintiffs and The Present Action**

Plaintiff Walkingeagle ("Walkingeagle") subscribed to YouTube Music in December 2021 through a free trial offer. Compl. ¶ 10. His YouTube Music subscription was renewed for $9.99 in February 2022. *Id.* Walkingeagle does not dispute that he saw the YouTube Music Buycart and received the YouTube Music acknowledgment email, but asserts that he was "not made aware of the fact that his [YouTube] Subscription would automatically renew after the initial free trial period, of the length of the free trial period, or of when the first charge would occur[.]" *Id.* He asserts that he has been "unable to cancel his [YouTube] Subscription" and continues to be enrolled in the product against his desires. *Id.*

Plaintiff Briggs ("Briggs") signed up for YouTube Music in April 2021. Compl. ¶ 11. Like Walkingeagle, Briggs asserts that he was "not placed on notice of several material terms associated with" his YouTube Music subscription. *Id.* His subscription renewed in May 2021, and he asserts that he "promptly" attempted to cancel but "struggled" to do so, finally canceling his bank account.[2] Compl. ¶ 12.

On May 25, 2022, Plaintiffs brought this putative class action alleging that YouTube violated Oregon's Unlawful Trade Practices Act for allegedly failing to comply with the Oregon Automatic Renewal Law.[3]

---

[2] Plaintiffs' Complaint alleges that Briggs "did not actually learn that his [YouTube] Subscription was an automatic renewal until late May 2022 or early June 2022." Compl. ¶ 11. These dates appear to be errors, as the Complaint itself was filed on May 25, 2022, and Plaintiffs elsewhere assert that Briggs acted "promptly" when his subscription renewed in May 2021. Compl. ¶ 12. In light of the UTPA's one-year statute of limitations, ORS 646.638(6), Plaintiff Briggs' claim may be time-barred. If this case proceeds, Defendant reserves the right to assert that Plaintiff Briggs' claims are time-barred.

[3] As set forth above, neither plaintiff ever alleges that they purchased a YouTube TV membership. Accordingly, this brief shows why Plaintiffs cannot state a claim about the products they did purchase (YouTube Music and YouTube Premium) and why the class Complaint must

### III.    YOUTUBE'S DISCLOSURES COMPLY WITH THE ARL

The Complaint alleges that YouTube violates the ARL in five ways: by (1) failing to present the automatic renewal offer terms, Compl. ¶ 52; (2) failing to do so "in a clear and conspicuous manner," *id.*; (3) failing to present those terms "in visual proximity to the request for consent," (*id.*, citing ORS 646A.295(1)(a)); (4) charging members without first obtaining affirmative consent (*id.*, citing ORS 646A.295(1)(b)); and (5) failing to provide an acknowledgement with the terms, cancellation policy, and cancellation instructions (*id.*, citing ORS 646A.295(1)(c) and ORS 646A.295(2)).

The ARL has no private right of action, so Plaintiffs have sued under the UTPA, which allows "a person that suffers an ascertainable loss of money or property" to sue for "willful" violations of unlawful practices, such violations of the ARL. ORS 646.608(1)(ttt); 646.638(1).

To survive a motion to dismiss, Plaintiffs must allege "well-pleaded facts, not legal conclusions, that plausibly give rise to an entitlement to relief." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176–77 (9th Cir. 2021) (cleaned up). They do not. Instead, they make "conclusory allegations that are contradicted by documents referred to [or incorporated] in the complaint"—in this case, screenshots of the YouTube Buycarts and Acknowledgment Emails—so the "court may decline to accept such conclusory allegations as true." *J.K.J. v. City of San Diego*, No. 20-55622, 2021 WL 9194183 at *4 (9th Cir. Aug. 2, 2022) (as amended) (quoting *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1135 n.1 (9th Cir. 2013)).

---

be dismissed, and does not address Plaintiffs' assertions about YouTube TV. *Cf. Taylor*, 2017 WL 663056, at *1; *Ebner*, 838 F.3d at 961-962.

A.        **YouTube Discloses The Key Offer Terms**

Oregon's ARL requires disclosure of the "automatic renewal offer terms."

ORS 646A.295(1)(a). The "automatic renewal offer terms" that must be disclosed are:

> (a) that the subscription or purchasing agreement will continue until the consumer
> cancels; (b) the description of the cancellation policy that applies …; (c) the recurring
> charges that will be charged to the consumer's credit or debit card … and, if the amount
> of the charge will change, the amount to which the charge will change, if known; (d) the
> length of the automatic renewal term or that the service is continuous…

ORS 646A.293 (5)(a)-(d).

The YouTube Music/Premium Buycart contains all of the required disclosures.



*First*, YouTube discloses that subscribers pay a "**Monthly charge**," which tells users the
"length of the automatic renewal term," as required by the ARL. *See* ORS 646A.293(5)(d). The

monthly recurring nature is reinforced by other disclosures on the page, including that the subscription price is per month ("/mo."), is for a "membership," and "will renew automatically every month."

*Second*, immediately to the right of "Monthly charge," YouTube discloses the amount of "the recurring charges that will be charged." *See* ORS 646A.293(5)(c).

*Third*, YouTube discloses that "**Billing starts on [date] … and will renew automatically every month**," which makes clear that the subscription "will continue … until the consumer cancels," ORS 646A.293(5)(a). Not only does this disclosure mirror the statutory text of the ARL by referring expressly to "automatic[] renew[al]," but it tells users that "[b]illing starts" on a given day but "renew[s] automatically" after that, underscoring the recurrence.

*Fourth*, YouTube informs users that they can "Cancel anytime in Settings," which is a "description of the cancellation policy that applies" to YouTube's subscription products. ORS 646A.293(5)(b). A disclosure that users can "Cancel anytime" adequately describes YouTube's cancellation policy. *See, e.g.*, *Hall, v. Time, Inc.*, 2020 WL 2303088, at *1, *4 (C.D. Cal. Mar. 13, 2020) (disclosure that users could "cancel[] at any time" adequately stated the cancellation policy under similar California ARL), *aff'd* 857 F. App'x 385 (9th Cir. 2021); *Rutter v. Apple Inc.*, No. 21-cv-04077-HSG, 2022 WL 1443336, at *6 (N.D. Cal. May 6, 2022) (disclosure that customers can "stop using the service at any time" and cancel "by contacting Customer Support" is compliant with California's ARL). While not required, YouTube also discloses its refund policy, stating that "[p]ayments won't be refunded for partial billing periods." Compl. ¶¶ 48-49.

Plaintiffs eschew specifics and instead rely on conclusory and self-serving allegations. Instead of addressing what YouTube's Buycarts disclose, they vaguely allege that because of

YouTube's "missing and deficient" disclosures, they were "unaware that [they had been]
enrolled [] in an 'automatic renewal program' under which the subscription would renew each
month and results in continuous monthly automatic renewal charges." *Id.* ¶¶ 71 (Walkingeagle),
91 (Briggs). They also allege that they both believed that the subscription would "automatically
terminate," Compl. ¶¶ 78 (Walkingeagle), 92 (Briggs), which conflicts with the plain text of the
disclosures. These allegations do not show a violation of the ARL's requirements, and nowhere
in their 138-paragraph complaint do Plaintiffs describe specific disclosures that were actually
"missing" or provided in a "deficient" manner, or any that implied that the subscription might
"automatically terminate." Instead, the Complaint relies on absurd assertions and invented
requirements to conjure violations of the ARL for YouTube Premium and YouTube Music.[4]

Plaintiffs ultimately seem to be arguing that because YouTube did not use the precise
wording from the ARL, the disclosures are non-compliant. But unlike some other consumer
statutes, the ARL statute does not mandate any "magic words" for compliant disclosures.
*Compare, e.g.*, ORS 646A.735 (mandating a specific disclosure in equity conveyancing) *and*
ORS 646A.710 (same, for foreclosure consulting agreements) *with* ORS 646A.295.

YouTube's disclosures can "easily be understood by the average person." *Cf. Mendoza v.
Lithia Motors*, No. 6:16-CV-01264-AA, 2019 WL 1440260, at *5-6 (D. Or. Mar. 30, 2019)
(noting that "strict recitation of the statute is not required to meet the clear and conspicuous
standard" in motor vehicle sales disclosures), *aff'd*, 818 F. App'x 715 (9th Cir. 2020). They do

---

[4] Because Plaintiffs' claims for the services they did purchase cannot survive a motion to
dismiss, the Court need not reach their similarly conclusory allegations for YouTube TV, which
they did not purchase. *Cf. Taylor*, 2017 WL 663056, at *1; *Ebner*, 838 F.3d at 961-962. In any
event, as is evident on the face of the screenshot in Plaintiffs' Complaint, the YouTube TV
disclosures are clearly compliant with the ARL: they set the ARL offer terms apart from non-
offer term text using contrasting type, lines and color blocking, expressly provide that users will
be charged "the price above monthly until you cancel," and provide the terms in visual proximity
to the request for the user's consent to the ARL terms. *See* Compl. ¶ 49.

not use legalese or complicated words (or, just as bad, Plaintiffs' unclear "formal cancellation" phrasing). The disclosure specifically tells members—in almost the same words that Plaintiffs assert are missing—that "*Billing* … will *renew automatically* every month." Compl. ¶ 48 (emphasis added). YouTube reiterates elsewhere on the page that these charges are "monthly," leaving no ambiguity that charges will continue "automatically" until canceled, as required by the ARL. Plaintiffs do not point to any part of the disclosure that would cause a user to think that cancellation might *not* be necessary—and they cannot, because YouTube clearly informs users that they can "Cancel anytime," clearly implying service is ongoing until canceled.

Plaintiffs next complain that the Buycart's "description of the cancellation policy" is not "complete," in two ways: it "contain[s] no explanation of *how* to cancel," and fails to provide information about the availability of refunds. Compl. ¶ 55 (emphasis in original). Both are invented requirements: the ARL requires businesses to provide a "<u>description</u> of the cancellation policy" in the Buycart, ORS 646A.293(5)(b) (emphasis added); in contrast, "information regarding how to cancel" is required to be provided in the acknowledgement email. *Compare* ORS 646A.295(1)(a) with *id.* § 646A.295(1)(c). Nor does the ARL mandate disclosure of a refund policy. *See* ORS 646A.293(5); *cf. Hall*, 2020 WL 230388 at *1-2, *4 (finding statement "cancel[] at any time" to be compliant even though there was no information about refunds, which was included in the post-sale acknowledgement email), *aff'd*, 857 F. App'x at 385. Even so, the YouTube Buycarts clearly disclose that there are "No refunds for partial months," Compl. at ¶¶ 48-49—flatly contradicting Plaintiffs' false allegation that YouTube does not disclose that

refunds are not available once a consumer has "commenced using the relevant [YouTube Subscription]." *Id.* ¶ 55.

Lastly, Plaintiffs allege that YouTube fails to disclose a purported policy that members must cancel their subscriptions "at least 24 hours before the end of the current period." Compl. ¶ 55. The Complaint references certain "Additional Terms for YouTube TV." *Id.* (citing https://www.youtube.com/t/terms_paidservice ("Paid TOS")). But Plaintiffs did not subscribe to YouTube TV, so these allegations do not state a claim. Moreover, the terms referenced in the Complaint make clear the so-called "24 hour" provision is limited to subscriptions purchased through the Apple iTunes store.[5] *See* Paid TOS (stating "Your subscription will be billed *to your iTunes account* within 24 hours before the end of the current period…." (emphasis added)). Neither Plaintiff, however, has alleged purchases through the Apple iTunes (or Apple App) store. In fact, as Plaintiffs acknowledge in their Complaint, *see* Compl. ¶ 3 n.1, YouTube stopped accepting signups through Apple devices in March 2020,[6] well before Plaintiffs' claimed injuries and before the one-year statute of limitations under the UTPA. ORS 646.638(6).

### B.    YouTube's Disclosures are Clear and Conspicuous

The ARL requires the disclosure of "the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner." ORS 646A.295(1)(a). Disclosures are "clear and conspicuous" if they are "in contrasting type, font or color to the surrounding text of

---

[5] Because Plaintiffs' allegations concerning the purported 24- hour cancellation policy reference and rely on the Paid Terms of Service, *see* Compl. ¶ 55 n.51, they are incorporated into the Complaint and the Court can consider them on a motion to dismiss. *See J.K.J.*, 2021 WL 9194183 at 4.

[6] The Complaint cites an article that states "starting March 13, 2020, YouTube TV will no longer accept payment through Apple in-app purchases." *See* Compl. ¶ 55 n.51 (citing https://www.macrumors.com/2020/02/13/youtube-tv-app-store-subscriptions-ending/).

the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." ORS 646A.293(2).



YouTube discloses each of the offer terms required by the ARL in a clear and conspicuous manner, using contrasting type, marks, and white space to "clearly call[] attention to the language," *id.* The renewal term (monthly) and price are bolded, as is the disclosure that billing for the membership renews "automatically every month." The description of the cancellation policy—that members can "[c]ancel anytime" but will not be refunded for partial months—is set off from the line immediately above and below with contrasting type. To set off the disclosures visually, YouTube uses a gray line to separate the charging information at the top of the Buycart from the user's payment information in the middle. White space is used to

emphasize the automatic renewal and cancellation disclosures immediately below the payment information, so that the prospective member's eye is drawn to the text.

**C.    YouTube Conspicuously Discloses The Price In Visual Proximity**

The ARL also requires that the "automatic renewal offer terms" be "in visual proximity… to the request for consent to the offer." ORS 646A.295 (1)(a).

YouTube's disclosures are clearly in visual proximity to the "request for consent," which in the case of the Buycarts is the "Start [] Trial" button at the bottom of the Buycart screen.



Disclosures about the automatically renewing nature of the subscription, the monthly term, and the cancellation policy are made in a block of text above the button, separated by only three lines

of text. On the same screen, and separated by only four more lines of text, YouTube clearly discloses the price of the monthly subscription, set off from other text by white space. No scrolling is required, including on smaller phone screens. The words that separate the price from the button are themselves part of the terms of the recurring offer, including the disclosures required by the ARL. There is no "clutter" or distraction that might draw the consumer's eye away from the disclosures. *Cf., e.g.*, *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) ("[R]elatively uncluttered" registration page sufficiently clear to put user on notice of terms and conditions); *Lundbom v. Schwan's Home Serv.*, No. 3:18-cv-02187-IM, 2020 WL 2736419, at *7 (D. Or. May 26, 2020) (User's agreement enforceable because the offer page was "not buried in distracting content" and the "registration page is not cluttered.").

Plaintiffs argue that the location of the price term is not proximate, implicitly conceding that the remainder of YouTube's disclosures are all within "visual proximity." Compl. ¶ 52. Plaintiffs state that because the price is in the upper corner, it is not in the "relevant" portion of page "with which the ARL is concerned." *Id.* ¶ 54. Plaintiffs assert that the disclosure must appear in "the block of text immediately above the 'START 1-MONTH TRIAL' button." *Id*. ¶¶ 48-49.

Plaintiffs confuse "visual proximity" with "immediate" adjacency, and invent the so-called "relevant portion" of the page. The ARL does not mention, and does not require, that disclosures be made in a particular part of a page. Had the legislature intended to require that ARL disclosures be in "immediate proximity", "close proximity", or "direct proximity" to the checkout button, it knew how to—Oregon law requires such disclosures in other contexts. *See, e.g.*, ORS 646A.735(1)(f) (requiring a disclosure in "immediate proximity" to the signature in equity conveyancing); ORS 646A.710 (requiring disclosure in "immediate proximity" to signature in foreclosure consulting agreements); ORS 646A.803(1)(c) (for disclosures in sweepstakes and

contests, "clearly and conspicuously" is defined to include, in part, "close proximity"); OAR 137-020-0020(2)(j) (requiring "direct proximity" for certain disclosures in auto sales).

But the Legislature did not choose to use "immediate," "close," or "direct" proximity for disclosures in the ARL context, for good reason: the result would be cramped and confusing, undermining the very purpose of the statute. By requiring "visual proximity," it allowed companies to design their automatic renewal offers in a way that would make disclosures clearly visible to a user on a single page, without requiring the user to navigate small print or dense lines of text. That is precisely what YouTube has done here.

Plaintiffs' attempt to rewrite the ARL's "visual proximity" requirement has been tried before, and rejected. In *Hall v. Time*, the plaintiff alleged that a magazine subscription offer was not compliant with the ARL because disclosures required by the ARL were separated from the order button by a promotion for another magazine. The district court dismissed the complaint, and the Ninth Circuit affirmed, holding that the statute required "visual *proximity*," not immediate *adjacency*, between the "automatic renewal offer terms" and "the request for consent." *Hall*, 857 F. App'x at 385-86 (citing Cal. Bus. and Prof. Code § 17602(a)(1)). Plaintiffs' alleged violation is indistinguishable from the one in *Hall*, and the Court should reach the same result here.

### D.    YouTube Obtains Affirmative Consent

The ARL requires that businesses obtain a "consumer's affirmative consent to the agreement containing the automatic renewal offer terms" before charging the consumer. ORS 646A.295(1)(b). Courts have upheld online agreements where, as here, users "affirmatively acknowledge" the agreement (as here, by clicking a sign-up button), and the website contained "explicit textual notice" that doing so would "act as a manifestation of the user's intent to be bound." *Dohrmann*, 823 F. App'x at 484.

As the Buycarts in the Complaint show, YouTube obtains a consumer's consent by having them click a blue button that says "START 3-MONTH TRIAL," which follows the required disclosures in the Buycart. *See* Compl. ¶¶ 48-49:



All terms are presented on the same page as the button that consumers must click. Further, immediately above the "START 3-MONTH TRIAL" button, YouTube tells the consumer "***By clicking Start 3-month Trial*** you're verifying that you're at least 18 years old, [and] ***buying a paid membership***…." (emphasis added). Consumers are clearly on notice that, by clicking the button, they are "buying a paid membership" subject to the ARL terms on the page.

Plaintiff, however, argues that YouTube must include a separate checkbox for consent to the ARL terms. But there is no such requirement. The only state that requires a separate opt-in for the automatic renewal provisions is Vermont. *See* 9 V.S.A. § 2454a(a)(2) (requiring that "in addition to accepting the contract, the consumer [must] take[] an affirmative action to opt in to the automatic renewal provision."). Oregon could have taken the same approach as Vermont. The fact that it did not establishes that no additional, separate consent is required.

This too was attempted and rejected in *Hall*. Like Plaintiffs here, the plaintiff in *Hall* argued that the defendants in that case failed to secure consent to the automatic renewal offer terms. The Ninth Circuit explicitly rejected this extra-statutory requirement, because

had the legislature intended to require a consumer's affirmative consent to the automatic renewal terms specifically, it could have omitted the words 'the agreement containing' from the provision … we decline to rewrite the statute and impose a requirement that is absent from the text.

*Hall*, 857 F. App'x at 387; *cf. Dohrmann*, 823 F. App'x at 482 (user manifested assent to Terms of Use in registration flow); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 395 (9th Cir. June 12, 2020) (same).

### E.      YouTube's Receipt Fulfills The Acknowledgment Requirement

Finally, the ARL requires YouTube to send an acknowledgement that

includes the automatic renewal offer terms or continuous service offer terms and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the person shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

ORS 646A.295(1)(c). Acceptable cancellation methods for services that directly bill their customers include "a toll-free telephone number, electronic mail address, a post-office address only when the person directly bills the consumer, or another cost-effective, timely and easy-to-use mechanism for cancellation." ORS 646A.295(2).

YouTube's Acknowledgement Emails include all required information.



Compl. ¶ 58. The emails describe the length of the applicable trial, inform users that they will be "charged monthly," provide a specific date on which charges will begin, and include "information regarding how to cancel in a manner that is capable of being retained by the consumer." ORS 646A.295(1)(c).

The only specific assertions Plaintiffs make with respect to the Acknowledgement Email[7] is that the emails fail to comply with the ARL because they do not "provide a toll-free telephone number, electronic mail address, or a post-office address, or disclose a cost-effective, timely and easy-to-use mechanism for cancellation." *Id.* at 62.[8]

This argument is meritless. YouTube Music and Premium Acknowledgement Emails include a bolded header for "**Cancellations**," which state that "You can cancel your YouTube [] Membership any time." This section includes hyperlinks to cancel and to the Refund policy. Compl. ¶ 58. Users who click on the link can cancel through the website, which is clearly a cost-effective, timely and easy-to-use mechanism for cancellation. This method of cancellation is not only permitted under the ARL—it is far simpler than cumbersome alternatives allowed under the ARL, which include requiring a consumer to call or send postal mail. ORS 646A.295(1)(2); *see also* Cal. Bus. & Prof. Code § 17602(c) (recently revised California ARL *mandating* that online services provide a cancellation method "exclusively online," if possible by link).

Plaintiffs never allege that they kept the Acknowledgment Email, opened it, clicked the link in the email to cancel, or visited their user settings page where they could have canceled in a few simple steps. The Complaint dramatically alleges that Plaintiff Walkingeagle was unable to cancel and that Plaintiff Briggs had to cancel his debit card to stop recurring charges, Compl. ¶¶

---

[7] The Court should disregard Plaintiffs' repetitive and conclusory allegation that the Acknowledgement Emails fail to include "the complete automatic renewal or continuous service terms that applied to the offer, a description of the full cancellation policy, or any specific information regarding how to cancel," Compl. ¶ 61. *See, e.g.*, *J.K.J.*, 2021 WL 9194183 at *4 (court can disregard conclusory allegations), *Whitaker*, 985 F.3d at 1176–77 (same). Except as discussed above, Plaintiffs provide no detail on why the Acknowledgement Email is insufficient and their arguments fail for the same reasons as they fail with respect to the Buycarts.

[8] Plaintiffs also repeat their failed argument about the supposed 24-hour cancellation policy, which is inapplicable to Plaintiffs' claims for the reasons described in Section III.A.

10-12,[9] but it fails to allege that they did the bare minimum: use the cancellation method required

by the statute. Plaintiffs' injury, if any, was not caused by any deficiency in YouTube's ARL

disclosures or its cancellation policy, and so cannot give rise to a claim under the UTPA.

## IV.    CONCLUSION

YouTube complied with the ARL's disclosure, consent, and acknowledgment

requirements. Plaintiffs' sole claim is brought under the UTPA for a violation of the ARL. *See*

ORS 646.608(1)(ttt). Because Plaintiffs fail to show any violation of the ARL, their Complaint,

including their putative class claims, must be dismissed.

DATED: August 22, 2022

By:    *s/Peter D. Hawkes*

Victor Jih (*pro hac vice application pending*)
vjih@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900

Amit Gressel (*pro hac vice application pending*)
agressel@wsgr.com
Jordan Nelson (*pro hac vice application pending*)
jordan.nelson@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000

Vivek Tata (*pro hac vice application pending*)
vtata@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800

Peter D. Hawkes, OSB No. 071986
peter@angelilaw.com
Edward A. Piper, OSB No. 141609
ANGELI LAW GROUP LLC
ed@angelilaw.com
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

---

[9] Confusingly, the Complaint elsewhere alleges that Plaintiff Briggs ceased to pay for his
subscription by implementing a "block" on YouTube charges. Compl. ¶ 95.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under LR 7-2(b), because it contains 4,739 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.