**Peter D. Hawkes** (OSB No. 071986)
peter@angelilaw.com
**Edward A. Piper** (OSB No. 141609)
ed@angelilaw.com
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Tel:  503.954.3783/Fax:  503-227-0880

**Victor Jih** (CA SBN 186515)
vjih@wsgr.com
WILSON SONSINI GOODRICH &
ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2027
Tel:  323.210.2900/Fax:  866.974.7329

**Amit Q. Gressel** (CA SBN 307663)
agressel@wsgr.com
**Jordan A. Nelson** (CA SBN 327915)
jordan.nelson@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Street, Spear Tower, Suite 1550
San Francisco, CA 94105-1126
Tel:  415.947.2000/Fax:  415.947.2099

**Vivek Tata** (NY SBN 5480470)
vtata@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Tel:  212.999.5800/Fax:  212.999.5899

Attorneys for Defendants GOOGLE LLC, d/b/a YOUTUBE,
and YOUTUBE, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| VICTOR WALKINGEAGLE and NATHAN BRIGGS, on behalf of themselves and all other similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC, d/b/a YOUTUBE, a Delaware limited liability company, and YOUTUBE, LLC, a Delaware limited liability company,<br><br>        Defendants. | Case No.: 3:22-cv-00763-MO<br><br>**DEFENDANTS GOOGLE LLC, d/b/a YOUTUBE and YOUTUBE, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**Oral Argument Requested** |

# TABLE OF CONTENTS

**Page**

LOCAL RULE 7.1(a) COMPLIANCE ...................................................................... 5

MOTION................................................................................................................... 5

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 5

INTRODUCTION ..................................................................................................... 5

FACTUAL BACKGROUND.................................................................................... 6

    A.    YouTube Music and YouTube Premium ............................................... 6

    B.    Plaintiffs and The Present Action ......................................................... 9

ARGUMENT ........................................................................................................... 11

I.    YOUTUBE'S DISCLOSURES COMPLY WITH THE ARL ........................ 11

    A.    YouTube Discloses The Key Offer Terms .......................................... 12

    B.    YouTube's Disclosures are Clear and Conspicuous............................ 16

    C.    YouTube Conspicuously Discloses The Price In Visual Proximity .................... 18

    D.    YouTube Obtains Affirmative Consent ............................................... 20

    E.    YouTube's Receipt Fulfills The Acknowledgment Requirement ........................ 22

II.    YOUTUBE'S DISCLOSURES COMPLY WITH THE FOL ......................... 25

    A.    YouTube Discloses The Information Regarding The Terms of The Free Offer .. 25

    B.    YouTube Obtains Affirmative Consent ............................................... 33

    C.    YouTube Cancels Free Trials When Consumers Make Reasonable Efforts to Cancel Using Cancellation Mechanism Provided.................................. 34

CONCLUSION........................................................................................................ 34

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................27

*Boyack v. Regis Corp.*,
812 F. App'x 428 (9th Cir. 2020) ...........................................................................27

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) .....................................................19, 20, 21, 33

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ..........................................................................8, 10, 14

*Hall v. Time, Inc.*,
2020 WL 2303088 (C.D. Cal. Mar. 13, 2020),
*aff'd* 857 F. App'x 385 (9th Cir. 2021)........................................................ *passim*

*J.K.J. v. City of San Diego*,
42 F.4th 990 (9th Cir. 2022) ...........................................................................11, 16, 24

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. June 12, 2020)......................................................22

*Lundbom v. Schwan's Home Serv.*,
No. 3:18-cv-02187-IM, 2020 WL 2736419 (D. Or. May 26, 2020)................19

*Mendoza v. Lithia Motors*,
No. 6:16-CV-01264-AA, 2019 WL 1440260 (D. Or. Mar. 30, 2019),
*aff'd*, 818 F. App'x 715 (9th Cir. 2020)..............................................................14

*Rutter v. Apple Inc.*,
No. 21-cv-04077-HSG, 2022 WL 1443336 (N.D. Cal. May 6, 2022) ...........13

*Taylor v. Nike, Inc.*,
No. 3:16-CV-00661-MO, 2017 WL 663056 (D. Or. Feb. 17, 2017)..........6, 8, 10, 14

*Tritz v. U.S. Postal Serv.*,
721 F.3d 1133 (9th Cir. 2013) .............................................................................11

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021) ......................................................................11, 24

## STATUTES

9 V.S.A. § 2454a(a)(2).................................................................................................21

815 ILCS 601/1 § 10(b-5)........................................................................................24, 30

Cal. Bus. & Prof. Code § 17602 ...........................................................................20, 24, 30

ORS 646.608 ...........................................................................................................11, 35

ORS 646.638 ...................................................................................................10, 11, 16

ORS 646.644 ............................................................................................................ *passim*

ORS 646A.293 .......................................................................................................... *passim*

ORS 646A.295 .......................................................................................................... *passim*

ORS 646A.710 ........................................................................................................14, 19

ORS 646A.735 ........................................................................................................14, 19

## RULES

Fed. R. Civ. P. 12(b)(6) ......................................................................................................5

L. R. 7.1(a) .........................................................................................................................5

OAR 137- 020-0020(2)(j) ................................................................................................19

## LOCAL RULE 7.1(a) COMPLIANCE

Pursuant to Local Rule 7.1(a), counsel for Defendants GOOGLE LLC, d/b/a YOUTUBE, and YOUTUBE, LLC ("Defendants") conferred in good faith via telephone with counsel for Plaintiffs VICTOR WALKINGEAGLE and NATHAN BRIGGS ("Plaintiffs") regarding this motion. The parties were unable to resolve their dispute.

## MOTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants hereby move to dismiss Plaintiffs' Amended Complaint ("Amended Complaint" or "Am. Compl.") on the ground that it fails to state a claim upon which relief may be granted. This Motion is supported by the Memorandum of Law below.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs' Amended Complaint relies on disclosure requirements found nowhere in Oregon's Automatic Renewal Law ("ARL"), ORS 646A.295, or Free Offer Law ("FOL"), ORS 646.644. Plaintiffs resort to invented requirements and conclusory allegations because they cannot show a violation of the actual provisions of these statutes.

The ARL and FOL are complementary and straightforward—and YouTube complied with both statutes. YouTube clearly and conspicuously discloses the membership program consumers are signing up for, the cost of that membership, when recurring billing starts, and that they can cancel online at any time. This information is presented in easy to understand, simple terms, in contrasting sizes and type, and all of it is close to the button a consumer "clicks" to confirm their membership. The same information is contained in an email along with a link to cancel.

Unable to allege any violation of the actual statutory requirements, Plaintiffs argue that the purchase flow must contain unspecified "magic language" to be compliant, there must be a separate checkbox for the renewal terms, all disclosures must appear "immediately above" the request for consent, and the disclosures must include "full" cancellation and refund policies. The ARL does not require any of this, and neither does the FOL. If Plaintiffs had their way, disclosures would be cramped and confusing instead of clear and conspicuous.

Because Plaintiffs cannot state a claim, they cannot represent a class. *See Taylor v. Nike, Inc.*, No. 3:16-CV-00661-MO, 2017 WL 663056, at *1 (D. Or. Feb. 17, 2017) (dismissing class complaint where plaintiff had no claim, because "[e]ven named plaintiffs who represent a class must allege and show that they personally have been injured." (citation omitted)) (Mosman, J.).

## FACTUAL BACKGROUND

### A.    YouTube Music and YouTube Premium

YouTube, and its parent company Google, offer a variety of applications and services across platforms. These applications—such as YouTube Music and YouTube Premium—can be accessed and viewed via a website or through a mobile application installed on a user's phone, tablet, or other mobile device. Am. Compl. ¶¶ 2-3, 58.

YouTube Music is a streaming music service similar to Spotify and Apple Music. YouTube Music offers both free and paid subscriptions. The free YouTube Music service offers access to a catalog of millions of songs, and users who upgrade to a paid subscription get ad-free access. *See id*. YouTube Premium is a paid service that offers access to the ad-free YouTube Music streaming service and ad-free access to YouTube videos. *Id.* Together, YouTube Music and YouTube Premium have approximately 25 million subscribers. Am. Compl. ¶ 25.

To sign up for either the paid YouTube Music or YouTube Premium services, consumers are taken through a standard purchase flow and presented with a final purchase screen that is the same for both services (the "YouTube Music/Premium Buycart") shown below:



*See* Am. Compl. ¶ 55. As seen above, YouTube informs users ***how much*** members will be charged (here, $11.99/mo), ***how often*** they will be charged (monthly), ***when recurring billing starts*** (in this example August 20, 2022), and that they can ***cancel at any time***. Once this sign-up process is complete, YouTube immediately sends an acknowledgment email (the "YouTube Music/Premium receipt") confirming the details of the membership. The YouTube Music/Premium receipt repeats all of the previously disclosed offer terms from the YouTube Music/Premium Buycart, including

the subscription price, that the charges will be monthly, and the date that billing will start. Am. Compl. ¶ 71.[1]

The YouTube Music/Premium receipt also includes a section titled "**Cancellations**," which advises members that they can "cancel your Music Premium membership any time. If you cancel, you'll still have access to Music Premium Benefits until the end of your billing period." *Id*. The "Cancellations" section includes a hyperlink, set off in blue, to the cancellation page in the member's account settings, enabling them to cancel in just a few clicks.

---

[1] Plaintiffs purport to represent a class including members of YouTube TV. Am. Compl. ¶ 132. YouTube TV also provides consumers with an ARL-compliant Buycart and Acknowledgement email. *See id*. ¶¶ 56, 72. However, neither plaintiff ever alleges that they purchased a YouTube TV membership. If neither Plaintiff can state a claim for the products he did purchase, the putative class Complaint must be dismissed. *See Taylor*, 2017 WL 663056, at *1; *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016) (affirming dismissal of putative class complaint for failure to state a claim). Accordingly, this brief shows why Plaintiffs cannot state a claim about the products they did purchase, YouTube Music and YouTube Premium, and does not address Plaintiffs' assertions about YouTube TV.



*See* Am. Compl. ¶ 71.

**B.    Plaintiffs and The Present Action**

Plaintiff Walkingeagle ("Walkingeagle") subscribed to YouTube Music in December 2021 through a free trial offer. Am. Compl. ¶ 9. His YouTube Music subscription was renewed for $9.99 in February 2022. *Id.* Walkingeagle does not dispute that he saw the YouTube Music Buycart and received the YouTube Music acknowledgment email, but asserts that he was "not made aware of the fact that his [YouTube] Subscription would automatically renew after the initial free trial period, of the length of the free trial period, or of when the first charge would occur[.]" *Id.*

Walkingeagle alleges that he spent "an excessive amount of time searching through the YT Website for a cancellation button or other similar online mechanism for cancellation," but was unable to cancel. *Id.* ¶ 99. He asserts that he has been "unable to successfully cancel his [YouTube] Subscription" and continues to be enrolled in the product against his desires. *Id.* ¶ 100.

Plaintiff Briggs ("Briggs") signed up for YouTube Music in April 2021. Am. Compl. ¶¶ 10, 113. Like Walkingeagle, Briggs asserts that he was "not placed on notice of several material terms associated with" his YouTube Music subscription. *Id.* ¶ 10. His subscription renewed in May 2021, and he asserts that he "promptly" attempted to cancel but "struggled" to do so, finally canceling his debit card.[2] *Id.*

On May 25, 2022, Plaintiffs brought a putative class action Complaint alleging that YouTube allegedly failed to comply with the Oregon Automatic Renewal Law.[3] YouTube moved to dismiss on August 22, 2022, Dkt. 15, and Plaintiffs filed the Amended Complaint on September 6, 2022, Dkt. 19. The Amended Complaint makes the same allegations as the Complaint regarding the Oregon ARL, but also alleges that YouTube violated the FOL.

The ARL and FOL have no private right of action, so Plaintiffs have sued under the UTPA, which allows "a person that suffers an ascertainable loss of money or property" to sue for "willful"

---

[2] Plaintiffs' Complaint alleges that Briggs "did not actually learn that his [YouTube] Subscription was an automatic renewal until late May 2022 or early June 2022." Am. Compl. ¶ 10. These dates appear to be errors, as the Complaint itself was filed on May 25, 2022, and Plaintiffs elsewhere assert that Briggs acted "promptly" when his subscription renewed in May 2021. Am. Compl. ¶ 10. In light of the UTPA's one-year statute of limitations, ORS 646.638(6), Plaintiff Briggs' claim may be time-barred. If this case proceeds, Defendant reserves the right to assert that Plaintiff Briggs' claims are time-barred.

[3] As set forth above, neither plaintiff ever alleges that they purchased a YouTube TV membership. Accordingly, this brief shows why Plaintiffs cannot state a claim about the products they did purchase (YouTube Music and YouTube Premium) and why the class Complaint must be dismissed, and does not address Plaintiffs' assertions about YouTube TV. *Cf. Taylor*, 2017 WL 663056, at *1; *Ebner*, 838 F.3d at 961-962.

violations of unlawful practices, such as violations of the ARL or FOL. ORS 646.608(1)(sss); 646.608(1)(ttt); 646.638(1). The Amended Complaint asserts these claims on behalf of a putative class of members of YouTube Premium, YouTube Music, and YouTube TV, and on behalf of a putative subclass of individuals who subscribed to a free trial offer for those paid services.

## ARGUMENT

To survive a motion to dismiss, Plaintiffs must allege "well-pleaded facts, not legal conclusions, that plausibly give rise to an entitlement to relief." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176–77 (9th Cir. 2021) (cleaned up). The Court need not accept as true "conclusory allegations that are contradicted by documents referred to [or incorporated] in the complaint"—in this case, screenshots of the YouTube Buycarts and Acknowledgment Emails. *J.K.J. v. City of San Diego*, 42 F.4th 990, 997 (9th Cir. 2022) (as amended) (quoting *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1135 n.1 (9th Cir. 2013)). Plaintiffs fail to state a claim because YouTube's disclosures comply with the ARL and the FOL.

## I.    YOUTUBE'S DISCLOSURES COMPLY WITH THE ARL

The Complaint alleges that YouTube violates the ARL in five ways: by (1) failing to present the automatic renewal offer terms, Am. Compl. ¶ 59; (2) failing to do so "in a clear and conspicuous manner," *id.*; (3) failing to present those terms "in visual proximity to the request for consent," (*id.*, citing ORS 646A.295(1)(a)); (4) charging members without first obtaining affirmative consent (*id.*, citing ORS 646A.295(1)(b)); and (5) failing to provide an acknowledgement with the terms, cancellation policy, and cancellation instructions (*id.*, citing ORS 646A.295(1)(c) and ORS 646A.295(2)).

A.        **YouTube Discloses The Key Offer Terms**

Oregon's  ARL  requires  disclosure  of  the  "automatic  renewal  offer  terms."

ORS 646A.295(1)(a). The "automatic renewal offer terms" that must be disclosed are:

> (a) that the subscription or purchasing agreement will continue until the consumer cancels;
> (b) the description of the cancellation policy that applies …; (c) the recurring charges that
> will be charged to the consumer's credit or debit card … and, if the amount of the charge
> will change, the amount to which the charge will change, if known; (d) the length of the
> automatic renewal term or that the service is continuous…

ORS 646A.293(5)(a)-(d).

The YouTube Music/Premium Buycart contains all of the required disclosures.



*First*, YouTube discloses that subscribers pay a "**Monthly charge**," which tells users the

"length of the automatic renewal term," as required by the ARL. *See* ORS 646A.293(5)(d). The

monthly recurring nature is reinforced by other disclosures on the page, including that the price is per month ("/mo."), is for a "membership," and "will renew automatically every month."

*Second*, immediately to the right of "Monthly charge," YouTube discloses the amount of "the recurring charges that will be charged." *See* ORS 646A.293(5)(c).

*Third*, YouTube discloses that "**Billing starts on [date] … and will renew automatically every month**," which makes clear that the subscription "will continue … until the consumer cancels," ORS 646A.293(5)(a). Not only does this disclosure mirror the statutory text of the ARL by referring expressly to "automatic[] renew[al]," but it tells users that "[b]illing starts" on a given day but "renew[s] automatically" after that, underscoring the recurrence.

*Fourth*, YouTube informs users that they can "Cancel anytime in Settings," which is a "description of the cancellation policy that applies" to YouTube's subscription products. ORS 646A.293(5)(b). A disclosure that users can "Cancel anytime" adequately describes YouTube's cancellation policy. *See, e.g.*, *Hall v. Time, Inc.*, 2020 WL 2303088, at *1, *4 (C.D. Cal. Mar. 13, 2020) (disclosure that users could "cancel[] at any time" adequately stated the cancellation policy under similar California ARL), *aff'd* 857 F. App'x 385 (9th Cir. 2021); *Rutter v. Apple Inc.*, No. 21-cv-04077-HSG, 2022 WL 1443336, at *6 (N.D. Cal. May 6, 2022) (disclosure that customers can "stop using the service at any time" and cancel "by contacting Customer Support" is compliant with California's ARL). While not required, YouTube also discloses its refund policy, stating that "[p]ayments won't be refunded for partial billing periods." Am. Compl. ¶ 55.

Plaintiffs eschew specifics and instead rely on conclusory and self-serving allegations. Instead of addressing what YouTube's Buycarts disclose, they vaguely allege that because of YouTube's "missing and otherwise deficient" disclosures, they were "unaware that [they had been] enrolled [] in an 'automatic renewal' programs under which their YT Subscription would renew

each month and results in continuous monthly automatic renewal charges." *Id*. ¶ 67. They also allege that they both believed that the subscription would "automatically terminate," Am. Compl. ¶¶ 90 (Walkingeagle), 119 (Briggs), which conflicts with the plain text of the disclosures. These allegations do not show a violation of the ARL's requirements, and nowhere in their 184-paragraph complaint do Plaintiffs describe specific disclosures that were actually "missing" or provided in a "deficient" manner, or any that implied that the subscription might "automatically terminate." Instead, the Complaint relies on absurd assertions and invented requirements to conjure violations of the ARL for YouTube Premium and YouTube Music.[4]

Plaintiffs ultimately seem to be arguing that because YouTube did not use the precise wording from the ARL, the disclosures are non-compliant. But unlike some other consumer statutes, the ARL statute does not mandate any "magic words" for compliant disclosures. *Compare, e.g.*, ORS 646A.735 (mandating a specific disclosure in equity conveyancing) *and* ORS 646A.710 (same, for foreclosure consulting agreements) *with* ORS 646A.295.

YouTube's disclosures can "easily be understood by the average person." *Cf. Mendoza v. Lithia Motors*, No. 6:16-CV-01264-AA, 2019 WL 1440260, at *5-6 (D. Or. Mar. 30, 2019) (noting that "strict recitation of the statute is not required to meet the clear and conspicuous standard" in motor vehicle sales disclosures), *aff'd*, 818 F. App'x 715 (9th Cir. 2020). They do not use legalese or complicated words (or, just as bad, Plaintiffs' unclear "formal cancellation" phrasing). The disclosure specifically tells members—in almost the same words that Plaintiffs assert are

---

[4] Because Plaintiffs' claims for the services they did purchase cannot survive a motion to dismiss, the Court need not reach their similarly conclusory allegations for YouTube TV, which they did not purchase. *Cf. Taylor*, 2017 WL 663056, at *1; *Ebner*, 838 F.3d at 961-962. In any event, as is evident on the face of the screenshot in Plaintiffs' Complaint, the YouTube TV disclosures are clearly compliant with the ARL: they set the ARL offer terms apart from non offer term text using contrasting type, lines and color blocking, expressly provide that users will be charged "the price above monthly until you cancel," and provide the terms in visual proximity to the request for the user's consent to the ARL terms. *See* Am. Compl. ¶ 56.

missing—that "*Billing* … will *renew automatically* every month." Am. Compl. ¶ 55 (emphasis added). YouTube reiterates elsewhere on the page that these charges are "monthly," leaving no ambiguity that charges will continue "automatically" until canceled, as required by the ARL. Plaintiffs do not point to any part of the disclosure that would cause a user to think that cancellation might *not* be necessary—and they cannot, because YouTube clearly informs users that they can "Cancel anytime," clearly implying service is ongoing until canceled.

Plaintiffs next complain that the Buycart's "description of the cancellation policy" is not "complete," in three ways: it does not include the "full cancellation policy", it "contain[s] no explanation of *how* to cancel," and it fails to provide information about refunds. Am. Compl. ¶ 65. All three are invented requirements. The ARL's requirement is simple: businesses must provide a "<u>description</u> of the cancellation policy" in the Buycart, ORS 646A.293(5)(b) (emphasis added). The statute does not require YouTube include the "full cancellation policy," which would overwhelm the Buycart with small-print and render it cramped and hard to read—exactly the opposite of what the ARL mandates. A "description of the cancellation policy" is also not "information regarding *how* to cancel," which the ARL mandates must be provided in the acknowledgement email, *not* in the Buycart. *Compare* ORS 646A.295(1)(a) with ORS 646A.295(1)(c). Nor does the ARL mandate disclosure of a refund policy in the Buycart. *See* ORS 646A.293(5); *cf. Hall*, 2020 WL 230388, at *1-2, *4 (finding statement "cancel[] at any time" to be compliant even though there was no information about refunds, which was included in the post-sale acknowledgement email), *aff'd*, 857 F. App'x at 385. Even so, the YouTube Buycarts clearly disclose that there are "No refunds for partial months," Am. Compl. at ¶ 55—flatly contradicting Plaintiffs' false allegation that YouTube fails to disclose that refunds are not available once a consumer has "commenced using the relevant [YouTube Subscription]." *Id.* ¶ 65.

Lastly, Plaintiffs allege that YouTube fails to disclose a purported policy that members must cancel their subscriptions "at least 24 hours before the end of the current period." Am. Compl. ¶ 65. The allegations and documents referenced in the Amended Complaint establish that this "24 hour" cancellation policy is doubly irrelevant to Plaintiffs' claims, because it was for a service they did not subscribe to and was not in force during the time period at issue in the Complaint. The provision of the Terms of Service cited in the Complaint show that the 24 hour policy was only applicable to YouTube TV. *Id.*, n. 56 (citing "Additional Terms for YouTube TV," located at https://www.youtube.com/t/terms_paidservice ("Paid TOS")). Plaintiffs did not subscribe to YouTube TV, so these allegations do not state a claim. Also, the terms referenced in the Complaint make clear the so-called "24 hour" provision is limited to subscriptions purchased through the Apple iTunes store.[5] *See* Paid TOS (stating "Your subscription will be billed *to your iTunes account* within 24 hours before the end of the current period…." (emphasis added)). Neither Plaintiff, however, has alleged purchases through the Apple iTunes (or Apple App) store. In fact, as Plaintiffs acknowledge in their Complaint, *see* Am. Compl. ¶ 2 n.2, YouTube stopped accepting signups through Apple devices in March 2020,[6] well before Plaintiffs' claimed injuries and before the one-year statute of limitations under the UTPA. ORS 646.638(6).

**B.    YouTube's Disclosures are Clear and Conspicuous**

The ARL requires the disclosure of "the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner." ORS 646A.295(1)(a). Disclosures are

---

[5] Because Plaintiffs' allegations concerning the purported 24- hour cancellation policy reference and rely on the Paid Terms of Service, *see* Am. Compl. ¶ 65 n.56, they are incorporated into the Amended Complaint and the Court can consider them on a motion to dismiss. *See J.K.J.*, 42 F.4th at 997.

[6] *See* Am. Compl. ¶ 2 n.2 (quoting https://www.macrumors.com/2020/02/13/youtube-tv-app-store-subscriptions-ending/).

"clear and conspicuous" if they are "in contrasting type, font or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." ORS 646A.293(2).



YouTube discloses each of the offer terms required by the ARL in a clear and conspicuous manner, using contrasting type, marks, and white space to "clearly call[] attention to the language," *id.* The renewal term (monthly) and price are bolded, as is the disclosure that billing for the membership renews "automatically every month." The description of the cancellation policy—that members can "[c]ancel anytime" but will not be refunded for partial months—is set off from the line immediately above and below with contrasting type. To set off the disclosures visually, YouTube uses a gray line to separate the charging information at the top of the Buycart from the user's payment information in

the middle. White space is used to emphasize the automatic renewal and cancellation disclosures immediately below the payment information, so that the prospective member's eye is drawn to the text.

**C.     YouTube Conspicuously Discloses The Price In Visual Proximity**

The ARL also requires that the "automatic renewal offer terms" be "in visual proximity… to the request for consent to the offer." ORS 646A.295(1)(a).

YouTube's disclosures are clearly in visual proximity to the "request for consent," which in the case of the Buycarts is the "Start [] Trial" button at the bottom of the Buycart screen.



Disclosures about the automatically renewing nature of the subscription, the monthly term, and the cancellation policy are made in a block of text above the button, separated by only three

lines of text. On the same screen, and separated by only four more lines of text, YouTube clearly

discloses the price of the monthly subscription, set off from other text by white space. No scrolling

is required, including on smaller phone screens. The words that separate the price from the button

are themselves part of the terms of the recurring offer, including the disclosures required by the

ARL. There is no "clutter" or distraction that might draw the consumer's eye away from the

disclosures. *Cf., e.g.*, *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020)

("[R]elatively uncluttered" registration page sufficiently clear to put user on notice of terms and

conditions); *Lundbom v. Schwan's Home Serv.*, No. 3:18-cv-02187-IM, 2020 WL 2736419, at *7

(D. Or. May 26, 2020) (User's agreement enforceable because the offer page was "not buried in

distracting content" and the "registration page is not cluttered.").

Plaintiffs argue that the location of the price term is not proximate, implicitly conceding

that the remainder of YouTube's disclosures are all within "visual proximity." Am. Compl. ¶ 59.

Plaintiffs state that because the price is in the upper corner, it is not in the "relevant" portion of

page "with which the ARL is concerned." *Id.* ¶ 62. Plaintiffs assert that the disclosure must appear

in "the block of text immediately above the 'START 1-MONTH TRIAL' button." *Id*. ¶ 55.

Plaintiffs confuse "visual proximity" with "immediate" adjacency, and invent the so-called

"relevant portion" of the page. The ARL does not mention, and does not require, that disclosures

be made in a particular part of a page. Had the legislature intended to require that ARL disclosures

be in "immediate proximity" to the checkout button, it knew how to—Oregon law requires such

disclosures in other contexts. *See, e.g.*, ORS 646A.735(1)(f) (requiring a disclosure in "immediate

proximity" to the signature in equity conveyancing); ORS 646A.710 (requiring disclosure in

"immediate proximity" to signature in foreclosure consulting agreements); *cf.* OAR 137- 020-

0020(2)(j) (requiring "direct proximity" for certain disclosures in auto sales). But the Legislature

did not choose to use "immediate" proximity for disclosures in the ARL context, for good reason: the result would be cramped and confusing, undermining the very purpose of the statute. By requiring "visual proximity," it allowed companies to design their automatic renewal offers in a way that would make disclosures clearly visible to a user on a single page, without requiring the user to navigate small print or dense lines of text. That is precisely what YouTube has done here.

Plaintiffs' attempt to rewrite the ARL's "visual proximity" requirement has been tried before, and rejected. In *Hall v. Time*, the plaintiff alleged that a magazine subscription offer was not compliant with the ARL because disclosures required by the ARL were separated from the order button by a promotion for another magazine. The district court dismissed the complaint, and the Ninth Circuit affirmed, holding that the statute required "visual *proximity*," not immediate *adjacency*, between the "automatic renewal offer terms" and "the request for consent." *Hall*, 857 F. App'x at 385-86 (citing Cal. Bus. and Prof. Code § 17602(a)(1)). Plaintiffs' alleged violation is indistinguishable from the one in *Hall*, and the Court should reach the same result here.

### D.    YouTube Obtains Affirmative Consent

The ARL requires that businesses obtain a "consumer's affirmative consent to the agreement containing the automatic renewal offer terms" before charging the consumer. ORS 646A.295(1)(b). Courts have upheld online agreements where, as here, users "affirmatively acknowledge" the agreement (as here, by clicking a sign-up button), and the website contained "explicit textual notice" that doing so would "act as a manifestation of the user's intent to be bound." *Dohrmann*, 823 F. App'x at 484.

As the Buycarts in the Complaint show, YouTube obtains a consumer's consent by having them click a blue button that says "START 3-MONTH TRIAL," which follows the required disclosures in the Buycart. *See* Am. Compl. ¶ 55:



All terms are presented on the same page as the button that consumers must click. Further, immediately above the "START 3-MONTH TRIAL" button, YouTube tells the consumer "***By clicking Start 3-month Trial*** you're verifying that you're at least 18 years old, [and] ***buying a paid membership***…." (emphasis added). Consumers are clearly on notice that, by clicking the button, they are "buying a paid membership" subject to the ARL terms on the page.

Plaintiffs, however, argues that YouTube must include a separate checkbox for consent to the ARL terms. But there is no such requirement. The only state that requires a separate "opt-in" for the automatic renewal provisions is Vermont. *See* 9 V.S.A. § 2454a(a)(2) (requiring that "in addition to accepting the contract, the consumer [must] take[] an affirmative action to opt in to the automatic renewal provision."). Oregon could have taken the same approach as Vermont. The fact that it did not establish that no additional, separate consent is required.

This too was attempted and rejected in *Hall*. Like Plaintiffs here, the plaintiff in *Hall* argued that the defendants in that case failed to secure consent to the automatic renewal offer terms. The Ninth Circuit explicitly rejected this extra-statutory requirement, because:

had the legislature intended to require a consumer's affirmative consent to the automatic renewal terms specifically, it could have omitted the words 'the agreement containing' from the provision … we decline to rewrite the statute and impose a requirement that is absent from the text.

*Hall*, 857 F. App'x at 387; *cf. Dohrmann*, 823 F. App'x at 482 (user manifested assent to Terms of Use in registration flow); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 395 (9th Cir. June 12, 2020) (same).

### E.    YouTube's Receipt Fulfills The Acknowledgment Requirement

Finally, the ARL requires YouTube to send an acknowledgement that:

includes the automatic renewal offer terms or continuous service offer terms and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the person shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

ORS 646A.295(1)(c). Acceptable cancellation methods for services that directly bill their customers include "a toll-free telephone number, electronic mail address, a post-office address only when the person directly bills the consumer, or another cost-effective, timely and easy-to-use mechanism for cancellation." ORS 646A.295(2).

YouTube's Acknowledgement Emails include all required information.



Am. Compl. ¶ 71. The emails describe the length of the applicable trial, inform users that they will be "charged monthly," provide a specific date on which charges will begin and the amount of those charges, and include "information regarding how to cancel in a manner that is capable of being retained by the consumer." ORS 646A.295(1)(c).

The only specific assertions Plaintiffs make with respect to the Acknowledgement Email[7] is that the emails fail to comply with the ARL because they do not "provide a toll-free telephone number, electronic mail address, or a post-office address, or disclose a cost-effective, timely and easy-to-use mechanism for cancellation." Am. Compl. ¶ 76.[8]

This argument is meritless. YouTube Music and Premium Acknowledgement Emails include a bolded header for "**Cancellations**," which state that "You can cancel your YouTube [] Membership any time." This section includes hyperlinks to cancel and to the Refund policy. Am Compl. ¶ 71. Users who click on the link can cancel through the website, which is clearly a cost effective, timely and easy-to-use mechanism for cancellation. This method of cancellation is not only permitted under the ARL—it is far simpler than cumbersome alternatives allowed under the ARL, which include requiring a consumer to call or send postal mail. ORS 646A.295(1)(2). In fact, other states now *mandate* that online services provide a cancellation method that is "exclusively online," if possible by link. Cal. Bus. & Prof. Code § 17602(c) (recently revised California ARL); 815 ILCS 601/1 § 10(b-5) (Illinois) ("A consumer who accepts an automatic renewal or continuous service offer online must be allowed to terminate the automatic renewal or continuous service exclusively online").

Plaintiffs never allege that they kept the Acknowledgment Email, opened it, clicked the link in the email to cancel, or visited their user settings page where they could have canceled in a

---

[7] The Court should disregard Plaintiffs' repetitive and conclusory allegation that the Acknowledgement Emails fail to include "the complete automatic renewal or continuous service terms that applied to the offer, a description of the full cancellation policy, or any specific information regarding how to cancel," Am. Compl. ¶¶ 74-76. *See, e.g.*, *J.K.J.*, 42 F.4th at 997 (court can disregard conclusory allegations), *Whitaker*, 985 F.3d at 1176–77 (same). These arguments fail for the same reasons as they fail with respect to the Buycarts.

[8] Plaintiffs also repeat their failed argument about the supposed 24-hour cancellation policy, which is inapplicable to Plaintiffs' claims for the reasons described in Section I.A.

few simple steps. The Complaint dramatically alleges that Plaintiff Walkingeagle was unable to cancel and that Plaintiff Briggs had to cancel his debit card to stop recurring charges, Am. Compl. ¶¶ 9-10,[9] but it fails to allege that they did the bare minimum: use the cancellation method required by the statute. Plaintiffs' injury, if any, was not caused by any deficiency in YouTube's ARL disclosures or its cancellation policy, and so cannot give rise to a claim under the UTPA.

## II.    YOUTUBE'S DISCLOSURES COMPLY WITH THE FOL

The Amended Complaint alleges that YouTube violates the FOL in three ways: by (1) failing to present the free offer terms in a "clear and conspicuous manner"; (2) failing to obtain affirmative consent to subsequent financial obligations; and (3) by failing to allow customers to cancel their subscriptions after making reasonable efforts.

### A.    YouTube Discloses The Information Regarding The Terms of The Free Offer

Plaintiffs allege that YouTube failed to disclose the following "terms of the free offer" in a "clear and conspicuous manner": (i) the "enrollments in a membership, subscription or service" that consumers sign up for as a result of accepting the free offer, ORS 646.644(2)(a); (ii) the "cost" or "obligation" incurred by the consumer if they accept the free trial offer, ORS 646.644(2)(b); (iii) a "statement … that by accepting the free offer, the consumer will become obligated for . . . enrollment" in a paid YouTube subscription "unless the consumer takes affirmative action to cancel the free offer" or the subscription, ORS 646.644(2)(d); (iv) "the consumer's right to cancel the free offer using procedures specifically identified for that purpose," in a manner that is "substantially similar to that by which the consumer accepted the free offer," ORS 646.644(2)(e); (v) "[t]he time period during which the consumer must cancel in order to avoid incurring a financial obligation as a result of accepting the free offer[,]"ORS 646.644(2)(f); and (vi) "the consumer's

---

[9] Confusingly, the Amended Complaint elsewhere alleges that Briggs canceled his subscription by "instituting a block on his bank account." Am. Compl. ¶ 122.

right to receive a credit on goods or services received as a result of accepting the free offer," ORS 646.644(2)(g).

As with disclosures required under the ARL, each of these disclosures under the FOL must be made using "clear and conspicuous information." The FOL's clear and conspicuous requirement for visual disclosures is nearly identical to that of the ARL, requiring the disclosures to be presented in an appropriate size, color, and location so they are "readily noticed and understood." ORS 646.644(1)(c). But, unlike the ARL (which sets separate proximity requirements for visual and audio disclosures), the FOL's definition of "clear and conspicuous" merely specifies that regardless of medium, the disclosure should be in "close proximity" to the request for consent. *Compare* ORS 646.644(1)(c) (FOL) *with* ORS 646A.295(1)(a) (ARL).

*First*, YouTube "identif[ies]" the membership program in which a user is enrolling by accepting the free trial offer, ORS 646.644(2)(a), in multiple ways. YouTube notifies users at the top of the page that they are "Complet[ing] a purchase," so there is no ambiguity that they are incurring a financial obligation in addition to the free offer. YouTube notifies users that they are signing up for the "YouTube Premium Membership" at the top of the screen; with an equally clear and bolded notice that there will be a "Monthly charge." YouTube notifies users that "By clicking Start 3-month Trial, you're verifying that you're at least 18 years old, buying a paid membership, and agreeing to these terms." These disclosures clearly inform the user that they are signing up for a paid membership to YouTube Premium.

These disclosures are "clear and conspicuous" because they are presented in simple, straightforward language in different sizes and contrasting type. The dark text is visible against the white background, and as described in Section I.B, *supra*, there are no distractions. The disclosures are in close proximity to the button through which users indicate their consent to the

offer, with the disclosure that consumers are "buying a paid membership" directly above the button and the other disclosures only a few lines of text above.



Plaintiffs do not include any specific allegations that would show that YT fails to clearly and conspicuously "identif[y]" the membership program to which users are subscribing, and instead merely recite the statutory requirements. Am. Compl. ¶ 63. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Boyack v. Regis Corp.*, 812 F. App'x 428, 431 (9th Cir. 2020) (Allegations were insufficient where "each claim provides only conclusory allegations reciting the statutory elements.").

*Second*, YouTube discloses "the cost to the consumer of any financial obligation the consumer will incur if the consumer accepts the free offer." ORS 646.644(2)(b). As set forth in

Section I.A, *supra*, which addresses a similar provision in the ARL, the Buycart discloses the cost of membership in several ways: it makes clear that users are "[c]omplet[ing] a *purchase*," that there is no cost ($0.00) for the free trial but a $11.99 "Monthly charge" afterwards, it lists the payment information that will be used, and notifies users of the specific date billing will start and that it renews monthly. Again, these disclosures are clear and conspicuous because they are in contrasting size and type and are clearly visible against the white background. They are only a few lines of text away from the "Start 3-month trial" button, with no scrolling required.



Plaintiffs' conclusory allegations that Defendants do not disclose the cost of membership therefore fails. Am. Compl. ¶ 64. To the extent Plaintiff is relying on its allegation that YouTube fails to disclose information required by the ARL in a so-called "relevant portion" of the page, that invented requirement has nothing to do with any disclosure requirements under the FOL and fails

for the same reason it does for the ARL. *See* Section I.A, *supra*. FOL section 2(b) merely requires that YouTube tell a prospective member the cost of membership. YouTube does that.

*Third*, YouTube discloses to consumers that by starting the free trial, the consumer "will become obligated for … enrollment in a membership, … unless the consumer takes affirmative action to cancel the free offer or otherwise reject … enrollment in a membership." ORS 646.644(2)(d). As discussed in Section I.B, *supra*, with respect to the ARL, YouTube clearly discloses to users that, once billing starts at the end of the free trial, it renews automatically until the user takes action to cancel, which they can do "anytime in Settings". These disclosures are clear and conspicuous, because they are shown just lines of text above the "Start 3-Month Trial" button, immediately above, and are shown in contrasting type to make each disclosure stand out. Plaintiffs again merely parrot the language of the statute, Am. Compl. ¶ 63, and do not state why these disclosures fail to comply with the ARL.

**Billing starts on Aug 20, 2022, the end of your free trial, and will renew automatically every month.** Payments won't be refunded for partial billing periods. Cancel anytime in Settings. Learn more.

By clicking **Start 3-month Trial**, you're verifying that you're at least 18 years old, buying a paid membership, and agreeing to these terms.

**Total today**                                                                                              **$0.00**

**START 3-MONTH TRIAL**

*Fourth*, YouTube discloses to users that they have a "right to cancel the free offer using procedures specifically identified for that purpose that, at a minimum, enable the consumer … to cancel in a manner substantially similar to that by which the consumer accepted the free offer." ORS 646.644(2)(e). YouTube's Buycart plainly does what the statute requires: it tells users that

that they have a "right to cancel … in a manner substantially similar to the way" that they will accept the free offer," by telling them that they have the right to "Cancel anytime" in their "Settings" page. To avoid any doubt, YouTube provides users a link to "Learn more." These disclosures are directly above the "Start 3-Month Trial" button, in contrasting type to the text above and below it, and set off against the white space and the blue hyperlink to "Learn more" about accessing their account and cancellation.



**Billing starts on Aug 20, 2022, the end of your free trial, and will renew automatically every month.** Payments won't be refunded for partial billing periods. Cancel anytime in Settings. Learn more.

By clicking **Start 3-month Trial**, you're verifying that you're at least 18 years old, buying a paid membership, and agreeing to these terms.

**Total today**                                                                $0.00

[ START 3-MONTH TRIAL ]

This method of cancellation is "substantially similar" to the method consumers use to sign up for YouTube's paid products. Users sign up online, and "agree[]" to the free offer on a specific page via a controlled purchase flow—the Buycart. And they can likewise cancel online, by so indicating on a specific page via a controlled process flow—the Settings page. A link to that page is provided in the Acknowledgement email discussed in Section I, *supra*. YouTube's cancellation process is therefore compliant with Oregon law, which, as discussed *supra* in Section I.A, is similar to other states which require online cancellation methods for online subscriptions. *See* Cal. Bus. and Prof. Code § 17602(d)(A) (California); 815 ILCS 601/1 § 10(b-5) (Illinois).

Plaintiffs do not explain why allowing users to cancel in their "Settings" page is not "substantially similar" to the method for agreeing to the free offer terms. They simply allege that Walkingeagle tried to cancel "through the click of a button on the YT Website," but could not find

one. Am. Compl. ¶ 99. But the statute does not require that YouTube include a cancellation button on every page of the YouTube website, because a user cannot "agree[]" to the free offer on any page of the site. By providing a link to cancel in the Settings page, YouTube complies.

*Fifth*, YouTube discloses "[t]he time period during which the consumer must cancel in order to avoid incurring a financial obligation as a result of accepting the free offer," ORS 646.644(2)(f), by disclosing that "Billing starts on [DATE], the end of your free trial, and will renew automatically every month. … Cancel anytime in Settings."



Again, these disclosures are clear and conspicuous because they are only three lines above the "Start 3-Month Trial" button, and are shown in contrasting type to stand out.

To gin up a violation of this provision, Plaintiffs rehash their allegations about the 24-hour policy, discussed in Section I.A, *supra*; Am. Compl. ¶ 65 n.56. But for the reasons discussed above, it is clear from the Complaint itself that the 24-hour cancellation policy could never have applied to Plaintiffs. Am. Compl. ¶ 2, n.2.

Plaintiffs also allege that YouTube failed to disclose a policy that refunds were only available if a user canceled within 7 days of the start of the free trial, and claim that this violates

the requirements of the FOL. Am. Compl. ¶ 102.[10] This is not a cancellation policy; it is a refund policy—which is not subject to the FOL requirements. As YouTube discloses, users can "cancel anytime." If they cancel before the end of the free trial period, they will never be charged. Similarly, if they cancel after the free trial ends and the paid service commences, they will never be charged after they cancel (and they will continue to have any access they have already paid for before they canceled). Whether they will be refunded any amounts already paid is an entirely different matter. The FOL explicitly recognizes this distinction. Its focus is on what users must do to "<u>avoid</u> incurring a financial obligation." ORS 646.644(2)(f) (emphasis added). It does not extend to what users must do to recover amounts already paid. YouTube's disclosures fully comply because they spell out the steps necessary to avoid being charged.

*Last*, Plaintiffs assert, without explanation, that Defendants fail to disclose "the consumer's right to receive a credit on goods or services received as a result of accepting the free offer when the goods or services are returned or rejected …." Am. Compl. ¶ 66 (emphasis omitted) (citing ORS 646.644(2)(g)). But by its plain terms; this disclosure is only required if it is "applicable" to the offer at issue. ORS 646.644(2)(g). It is not applicable to the YouTube free trial: there is no way to "return[] or reject[]" YouTube premium for a "credit"; the service ends once a user stops using it. As YouTube clearly discloses, there is no charge for the "free trial," billing only starts on a specified date at the "end of your free trial," and users are not refunded for partial billing periods.

---

[10] Plaintiffs cite the current version of the Paid Terms of Service, which became effective on May 18, 2022. *See* Amended Complaint, 47-48 nn. 54, 55 (citing https://www.youtube.com/t/terms_paidservice). The current terms do not include the language quoted in the Amended Complaint. The quoted language appeared in the prior version of the Terms of Service ("2018 Paid TOS"), which was effective from June 18, 2018 through May 18, 2022, and which is linked to the current one and remains available for users to access.

Billing starts on Aug 20, 2022, the end of your free trial, and will renew automatically every month. Payments won't be refunded for partial billing periods. Cancel anytime in Settings. Learn more.

By clicking **Start 3-month Trial**, you're verifying that you're at least 18 years old, buying a paid membership, and agreeing to these terms.

Total today                                                                    $0.00

**START 3-MONTH TRIAL**

### B.      YouTube Obtains Affirmative Consent

Like the ARL, the FOL requires that YouTube secure a consumer's "affirmative consent" to the terms of the free trial offer. But unlike the ARL, the FOL defines the term "affirmative consent," as "a consumer's agreement to incur a financial obligation as a result of accepting a free offer, or to provide the consumer's billing information, given or made in the manner specifically identified for the consumer to indicate the consumer's agreement." ORS 646.644(1)(a).

In other words, the FOL leaves it to the offer provider to "specifically identif[y]" to the consumer the action they must take to affirm their consent to the terms of the free offer. YouTube does that: it notifies users that "By clicking **Start 3-month Trial**"—the bright blue, clearly labeled button immediately below the disclosure—"you're verifying that you're at least 18 years old, buying a paid membership, and agreeing to these terms." It also provides a hyperlink to the full terms. This disclosure satisfies the requirements of the FOL, and is consistent with how other websites require users to manifest assent to agreements. *Cf. Dohrmann*, 823 F. App'x at 482 (user manifested assent to Terms of Use in registration flow); *Lee*, 817 F. App'x at 395 (same).

Plaintiffs merely repeat their failed assertion that YouTube is in violation of FOL because it does not include a checkbox for the user to indicate consent to the terms. Am. Compl. ¶ 69. As

with the ARL, this is an invented requirement with no basis in the statute—and the FOL's statutory definition of "affirmative consent" makes clear that YouTube's disclosure is all that is required.

### C.    YouTube Cancels Free Trials When Consumers Make Reasonable Efforts to Cancel Using Cancellation Mechanism Provided

Plaintiffs also fail to allege that YouTube refused to cancel their subscriptions after they "used, or made reasonable efforts to attempt to use, one of the [cancellation] procedures required by subsection (2)(e)" of the FOL, ORS 646.644(5)—that is, "a manner substantially similar to that by which the consumer accepted the free offer," ORS 646.644(2)(e). In YouTube's case, that is the link to cancel in Plaintiffs' account Settings.

Plaintiffs' only allegations on this point is that Plaintiff Walkingeagle "used an excessive amount of time searching through the YT Website for a cancellation button or other similar online mechanism for cancellation, to no avail." Am. Compl. ¶ 99. Plaintiffs do not (and cannot) allege that Walkingeagle tried to cancel through the Settings page. In any event, as discussed in Section II.A, *supra*, aimlessly "searching through the YT Website for a cancellation button" is not "substantially similar" to the way Walkingeagle "accepted the free offer." Nor is Walkingeagle's self-serving allegation that he "used an excessive amount of time" to try to cancel even relevant. The statute does not base compliance on a user's subjective assessment of whether he spent an "excessive" amount of time trying to cancel. All that it requires is that YouTube disclose and provide a mechanism for cancellation that is "substantially similar" to the mechanism for signing up. YouTube does that by allowing users to cancel in their Settings, and is not liable for Walkingeagle's failure to take advantage of this easy and clearly disclosed cancellation method.

### CONCLUSION

YouTube complied with the ARL and FOL's disclosure, consent, and acknowledgment requirements. Plaintiffs' claims are brought under the UTPA for a violation of the ARL and FOL.

*See* ORS 646.608(1)(sss), (ttt). Because Plaintiffs fail to show any violation of the ARL or FOL, their Complaint, including their putative class claims, must be dismissed.

DATED:  September 27, 2022                         WILSON SONSINI GOODRICH & ROSATI


*s/ Victor Jih*
Victor Jih
vjih@wsgr.com

Attorneys for Defendants GOOGLE LLC, d/b/a YOUTUBE and YOUTUBE, LLC



## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), because it contains 7,453 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.