**Peter D. Hawkes** (OSB No. 071986)
peter@angelilaw.com
**Edward A. Piper** (OSB No. 141609)
ed@angelilaw.com
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Tel: 503.954.3783/Fax: 503.227.0880

**Victor Jih** (CA SBN 186515)
vjih@wsgr.com
WILSON SONSINI GOODRICH &
ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2027
Tel: 323.210.2900/Fax: 866.974.7329

**Amit Q. Gressel** (CA SBN 307663)
agressel@wsgr.com
**Jordan A. Nelson** (CA SBN 327915)
jordan.nelson@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Street, Spear Tower, Suite 1550
San Francisco, CA 94105-1126
Tel: 415.947.2000/Fax: 415.947.2099

Attorneys for Defendants GOOGLE LLC,
d/b/a YOUTUBE, and YOUTUBE, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| VICTOR WALKINGEAGLE, NATHAN BRIGGS, and DONALD MOLINA on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, d/b/a YOUTUBE, a Delaware limited liability company, and YOUTUBE, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: 3:22-cv-00763-MO<br><br>**DEFENDANTS GOOGLE LLC, d/b/a YOUTUBE and YOUTUBE, LLC'S MOTION TO DISMISS PLAINTIFFS' CORRECTED SECOND AMENDED COMPLAINT**<br><br>**Oral Argument Requested** |

# TABLE OF CONTENTS

**Page**

LOCAL RULE 7.1(a) COMPLIANCE ...................................................... 5

MOTION.................................................................................................. 5

MEMORANDUM OF POINTS AND AUTHORITIES ............................ 5

INTRODUCTION ................................................................................... 5

FACTUAL BACKGROUND ................................................................... 6

    A.    YouTube Music and YouTube Premium ................................. 6

    B.    YouTube TV .............................................................................. 9

    C.    The Present Action................................................................... 11

ARGUMENT ......................................................................................... 12

I.    YOUTUBE'S DISCLOSURES COMPLY WITH THE ARL ......... 12

    A.    YouTube Discloses The Key Offer Terms .............................. 13

    B.    YouTube's Disclosures are Clear and Conspicuous .............. 18

    C.    YouTube Conspicuously Discloses The Price In Visual Proximity ................... 21

    D.    YouTube Obtains Affirmative Consent ................................. 24

    E.    YouTube's Receipts Fulfill The Acknowledgment Requirement ........................ 26

II.    YOUTUBE'S DISCLOSURES COMPLY WITH THE FOL ......... 29

    A.    YouTube Discloses The Terms of The Free Offer ............... 29

    B.    YouTube Obtains Affirmative Consent ................................. 37

    C.    YouTube Provides A Cancellation Mechanism That Is Substantially Similar To The Procedures Used To Accept The Offer ...................... 38

CONCLUSION....................................................................................... 39

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................32

*Boyack v. Regis Corp.*,
812 F. App'x 428 (9th Cir. 2020) ......................................................32, 33

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ...............................................19, 25, 38

*Hall v. Time, Inc.*,
857 F. App'x 385 (9th Cir. 2021)............................................15, 24, 25, 26

*Hall v. Time, Inc.*,
No. SACV 19-01153-CJC(ADSx), 2020 WL 2303088
(C.D. Cal. Mar. 13, 2020),
*aff'd* 857 F. App'x 385 (9th Cir. 2021).................................................. *passim*

*J.K.J. v. City of San Diego*,
42 F.4th 990 (9th Cir. 2022) .......................................................12, 17, 28

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. June 12, 2020)...............................................25, 38

*Lundbom v. Schwan's Home Serv.*,
No. 3:18-cv-02187-IM, 2020 WL 2736419 (D. Or. May 26, 2020)...........................19, 20

*Mendoza v. Lithia Motors, Inc.*,
No. 6:16-CV-01264-AA, 2019 WL 1440260 (D. Or. Mar. 30, 2019),
*aff'd*, 818 F. App'x 715 (9th Cir. 2020)..........................................................21

*Paulson v. Or. State Bar*,
No. 13-cv-175-AA, 2013 U.S. Dist. LEXIS 81033 (D. Or. June 4, 2013),
*aff'd*, 609 F. App'x 511 (9th Cir. 2015)...............................................................6

*Rutter v. Apple Inc.*,
No. 21-cv-04077-HSG, 2022 WL 1443336 (N.D. Cal. May 6, 2022) ..............................15

*Taylor v. Nike, Inc.*,
No. 3:16-CV-00661-MO, 2017 WL 663056 (D. Or. Feb. 17, 2017).................................6

*Tritz v. U.S. Postal Serv.*,
721 F.3d 1133 (9th Cir. 2013) ...............................................................12

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021) ...........................................................12, 28

## STATUTES

9 V.S.A. § 2454a(a)(2)............................................................................................25

815 ILCS 601/1 § 10(b-5)...................................................................................29, 35

Cal. Bus. & Prof. Code § 17602, et seq .......................................................25, 28, 35

ORS 646.608.....................................................................................................12, 39

ORS 646.638.................................................................................................11, 12, 18

ORS 646.644 ................................................................................................... *passim*

ORS 646A.293 ................................................................................................ *passim*

ORS 646A.295 ................................................................................................ *passim*

ORS 646A.710.....................................................................................................16, 23

ORS 646A.735.....................................................................................................16, 23

## RULES

Fed. R. Civ. P. 12(b)(6)...............................................................................................5

L. R. 7.1(a)................................................................................................................5

OAR 137-020-0020(2)(j)(B)..................................................................................23, 24

Pursuant to Local Rule 7.1(a), counsel for Defendants GOOGLE LLC, d/b/a YOUTUBE, and YOUTUBE, LLC ("Defendants") conferred in good faith with counsel for Plaintiffs VICTOR WALKINGEAGLE, NATHAN BRIGGS, and DONALD MOLINA ("Plaintiffs") regarding this motion. The parties were unable to resolve their dispute.

## MOTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss Plaintiffs' Corrected Second Amended Complaint ("SAC") on the ground that it fails to state a claim upon which relief may be granted. The Motion is supported by the Memorandum of Law below.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs' Second Amended Complaint relies on disclosure requirements found nowhere in Oregon's Automatic Renewal Law ("ARL"), ORS 646A.295, or Free Offer Law ("FOL"), ORS 646.644. Plaintiffs resort to invented requirements and conclusory allegations because they cannot show a violation of the actual provisions of these statutes.

The ARL and FOL are complementary and straightforward—and YouTube complied with both statutes. YouTube clearly and conspicuously discloses the membership program consumers are signing up for, the cost of that membership, when recurring billing starts, and that they can cancel online at any time. This information is presented in easy to understand, simple terms, with type that clearly contrasts against the background, and all of it is close to the button a consumer "clicks" to confirm their membership. The same information is contained in an email along with a link to cancel.

Unable to allege any violation of the actual statutory requirements, Plaintiffs argue that the purchase flow must contain unspecified "magic language" to be compliant, there must be a separate checkbox for the renewal terms, all disclosures must appear "immediately above" the request for consent, and the disclosures must include "full" cancellation and refund policies. The ARL does not require any of this, and neither does the FOL. If Plaintiffs had their way, disclosures would be cramped and confusing instead of clear and conspicuous.

Because Plaintiffs cannot state a claim, they cannot represent a class. *See Taylor v. Nike, Inc.*, No. 3:16-CV-00661-MO, 2017 WL 663056, at *1 (D. Or. Feb. 17, 2017) (dismissing class complaint where plaintiff had no claim, because "[e]ven named plaintiffs who represent a class must allege and show that they personally have been injured." (citation omitted)) (Mosman, J.); *see also Paulson v. Or. State Bar*, No. 13-cv-175-AA, 2013 U.S. Dist. LEXIS 81033, at *8-9 (D. Or. June 4, 2013) (dismissing class complaint explaining "plaintiff's personal claim for relief is barred . . . therefore any class fails because plaintiff cannot represent the class."), *aff'd*, 609 F. App'x 511 (9th Cir. 2015).

## FACTUAL BACKGROUND

YouTube, and its parent company Google, offer a variety of applications and services across platforms. These applications—such as YouTube Music, YouTube Premium and YouTube TV—can be accessed and viewed via a website or through a mobile application installed on a user's phone, tablet, or other mobile device. SAC ¶¶ 2-3, 54-55. To sign up for YouTube Music, YouTube Premium, or YouTube TV, consumers are taken through a standard purchase flow and presented with a final purchase screen.

### A.     YouTube Music and YouTube Premium

YouTube Music is a streaming music service similar to Spotify and Apple Music. YouTube Music offers both free and paid subscriptions. The free YouTube Music service offers access to a

catalog of millions of songs, and users who upgrade to a paid subscription get ad-free access. *See id*. YouTube Premium is a paid service that offers access to the ad-free YouTube Music streaming service and ad-free access to YouTube videos. *Id.* Together, YouTube Music and YouTube Premium have approximately 25 million subscribers. *See* SAC ¶ 26.

The purchase screen for YouTube Music and Premium is the same ("YouTube Music/Premium Buycart"), and is shown below:



*See* SAC ¶ 56.

As seen above, YouTube informs users ***how much*** members will be charged (here, $11.99/mo), ***how often*** they will be charged (monthly), ***when recurring billing starts*** (in this example August 20, 2022), and that they can ***cancel at any time***.

Once this sign-up process is complete, YouTube immediately sends an acknowledgment email (the "YouTube Music/Premium receipt") confirming the details of the membership.



▶ YouTube

Hi Qin,

Welcome to your 1 month free trial of Music Premium membership! The payment method you provided will be charged monthly starting [go/ytfmt-test go/ytfmt#medium_date 2020-11-09T00:25:48,948Z US/Pacific en].

As a member you can explore, manage, and cancel your membership any time by visiting YouTube account settings.

GET STARTED

Welcome aboard!
The YouTube Team

**Membership details**

| | |
|---|---|
| Music Premium<br>Free Trial | [go/ytfmt-test go/ytfmt#currency (0 USD) en] |
| Music Premium<br>Subscription<br>Monthly, starting [go/ytfmt-test go/ytfmt#medium_date 2020-11-09T00:25:48Z US/Pacific en] | [go/ytfmt-test go/ytfmt#currency (9.99 USD) en] |
| Tax | [go/ytfmt-test go/ytfmt#currency (0 USD) en] |
| **Total today**<br>Paid with | **[go/ytfmt-test go/ytfmt#currency (0 USD) en]** |

**Order Date**
[go/ytfmt-test go/ytfmt#medium_date 2020-10-08T23:26:06,666Z US/Pacific en]

**Order Number**
YTR.RDBK-WXBH-LL4H-T67J

**Cancellations:** You can cancel your Music Premium membership any time. If you cancel, you'll still have access to Music Premium benefits until the end of your billing period. Refund policy

**Need help?** Contact support or go to our Help Center. Please don't reply to this email.

Help Center · Email options

You received this email to provide information and updates around your YouTube product or account.

▶ YouTube

© 2021 Google LLC d/b/a YouTube, 901 Cherry Ave, San Bruno, CA 94066

Paid Service Terms of Service

The YouTube Music/Premium receipt repeats all of the previously disclosed offer terms from the YouTube Music/Premium Buycart, including the subscription price, that the charges will be monthly, and the date that billing will start. SAC ¶ 72.

The YouTube Music/Premium receipt also includes a section titled "**Cancellations**," which advises members that they can "cancel your Music Premium membership any time. If you cancel, you'll still have access to Music Premium benefits until the end of your billing period." *Id*. The "Cancellations" section includes a hyperlink, set off in blue, to the cancellation page in the member's account settings, enabling them to cancel in just a few clicks.

**B.      YouTube TV**

YouTube TV is a service that provides subscribers access to "exclusive YouTube content, premium channels, and film rentals." SAC ¶ 2. As of 2019, YouTube TV had over 2 million paid YouTube TV subscribers. *Id.* at ¶ 26.

The YouTube TV purchase screen ("YouTube TV Buycart") is shown below:



SAC ¶ 57. Like the YouTube Music/Premium Buycart, the YouTube TV Buycart discloses the subscription price (a "promotional monthly charge" of $54.99/mo and then the normal price of $64.99/mo), how frequently users are charged (monthly), when they will be charged (after the free trial, promotional pricing will begin on May 25, 2022, and then regular billing on August 25, 2022), and informs them that they can "cancel anytime" and will be "charged the price above monthly until you cancel." SAC ¶ 57.

YouTube also sends an acknowledgment email to new YouTube TV subscribers (the "YouTube TV receipt"):



SAC ¶ 73. Like the YouTube Music/Premium receipt, the YouTube TV receipt discloses the "Monthly price," when the subscription starts, and instructs subscribers—in two different places on the page—that they can cancel before being charged, providing a blue hyperlink to do so in both places.

### C. The Present Action

Plaintiffs Walkingeagle ("Walkingeagle") and Briggs ("Briggs"), both former subscribers of YouTube Music, filed a putative class action complaint on May 25, 2022, alleging that Google's YouTube Music, Premium, and TV services violated the Oregon ARL. Dkt. 1. They amended their complaint on September 6, 2022, Dkt. 19, adding a claim that all three services violated Oregon's FOL. Plaintiffs filed their SAC on November 2, 2022, joining Plaintiff Molina ("Molina"), a former YouTube TV subscriber, who also alleges that YouTube TV violates the ARL and FOL. Dkt. 31. Plaintiffs corrected their SAC on November 21, 2022. Dkt. 34.

In essentially identical language, all three plaintiffs allege that "Defendants did not disclose to [Plaintiff] all required automatic renewal offer terms" or "obtain [Plaintiffs'] affirmative consent to those terms," that the receipts "fail[ed] to provide [Plaintiffs] with the complete automatic renewal terms that applied to Defendants' offer, a description of Defendants' full cancellation policy, or information regarding how to cancel," and that they had difficulty canceling. SAC ¶ 9 (Walkingeagle), ¶ 10 (Briggs)[1], ¶ 11 (Molina). Plaintiff Walkingeagle and Molina also both allege that YouTube violated the FOL because it provided "missing and/or incomplete disclosures" and

---

[1] Plaintiffs' Second Amended Complaint alleges that Briggs "did not actually learn that his [YouTube] Subscription was an automatic renewal until late May 2022 or early June 2022." SAC ¶ 10. These dates appear to be errors, as the Complaint itself was filed on May 25, 2022, and Plaintiffs elsewhere assert that Briggs acted "promptly" when his subscription renewed in May 2021. *Id*. If this case proceeds, Defendant reserves the right to assert that Plaintiff Briggs' claim is time-barred in light of the UTPA's one-year statute of limitations, ORS 646.638(6).

failed to "obtain [Plaintiffs'] affirmative consent to the free trial offer terms associated with the YT Subscriptions," and because they spent "an excessive amount of time searching through the YT Website for a cancellation button." *Id.* ¶¶ 9, 100 (Walkingeagle); ¶¶ 11, 144 (Molina).

Because the ARL and FOL do not have a private right of action, Plaintiffs have sued under the UTPA, which allows "a person that suffers an ascertainable loss of money or property" to sue for "willful" violations of unlawful practices, such as violations of the ARL or FOL. ORS 646.608(1)(sss); 646.608(1)(ttt); 646.638(1). The SAC asserts these claims on behalf of a putative class of members of YouTube Premium, YouTube Music, and YouTube TV, and on behalf of a putative subclass of individuals who subscribed to a free trial offer for those paid services.

## ARGUMENT

To survive a motion to dismiss, Plaintiffs must allege "well-pleaded facts, not legal conclusions, that plausibly give rise to an entitlement to relief." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176-77 (9th Cir. 2021) (citations and internal quotation marks omitted). The Court need not accept as true "conclusory allegations that are contradicted by documents referred to [or incorporated] in the complaint"—in this case, screenshots of the YouTube Buycarts and receipts. *J.K.J. v. City of San Diego*, 42 F.4th 990, 997 (9th Cir. 2022) (as amended) (quoting *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1135 n.1 (9th Cir. 2013)). Plaintiffs fail to state a claim because YouTube's disclosures comply with the ARL and the FOL.

## I.     YOUTUBE'S DISCLOSURES COMPLY WITH THE ARL

The Complaint alleges that YouTube violates the ARL in five ways: by (1) failing to present the automatic renewal offer terms, SAC ¶ 60; (2) failing to do so "in a clear and conspicuous manner," *id.*; (3) failing to present those terms "in visual proximity to the request for consent," (*id.*, citing ORS 646A.295(1)(a)); (4) charging members without first obtaining affirmative consent (*id.*, citing ORS 646A.295(1)(b)); and (5) failing to provide an

acknowledgement with the terms, cancellation policy, and cancellation instructions (*id.*, citing ORS 646A.295(1)(c) and ORS 646A.295(2)).

### A. YouTube Discloses the Key Offer Terms

Oregon's ARL requires disclosure of the "automatic renewal offer terms." ORS 646A.295(1)(a). The four "automatic renewal offer terms" that must be disclosed are:

> (a) [t]hat the subscription or purchasing agreement will continue until the consumer cancels; (b) [t]he description of the cancellation policy that applies …; (c) [t]he recurring charges that will be charged to the consumer's credit or debit card … and, if the amount of the charge will change, the amount to which the charge will change, if known; (d) [t]he length of the automatic renewal term or that the service is continuous…

ORS 646A.293(5)(a)-(d).

Both the YouTube Music/Premium Buycart and the YouTube TV Buycart appropriately disclose these four automatic renewal offer terms, as shown in the numbered images below:

*YouTube Music/Premium Buycart*



*YouTube TV Buycart*



*First*, YouTube <u>repeatedly</u> discloses the "length of the automatic renewal term," *see* ORS 646A.293(5)(d). The YouTube Music/Premium Buycart discloses the "Monthly charge" at the top of the page, that prices are per month ("/mo.") starting on a specific date (and therefore not one-time), and that "Billing … will renew automatically every month." Similarly, YouTube TV discloses a "monthly charge" at the top of the page, indicates that both the promotional and regular prices are a monthly rate, and states expressly that users "will be charged the price above monthly" until cancellation.

*Second*, in both Buycarts, YouTube discloses the amount of "[t]he recurring charges that will be charged," and, as applicable for YouTube TV, also discloses the amount of the temporary promotional rate. *See* ORS 646A.293(5)(c).

*Third*, YouTube discloses that the subscription "will continue until the consumer cancels," ORS 646A.293(5)(a). YouTube Music/Premium disclose—twice—that "Billing starts on [date]" and alerts users that it is a "paid membership," "will renew automatically every month," which underscores that it is a renewing service and mirrors the statutory text of the ARL by referring expressly to "automatic[] renew[al]." Similarly, YouTube TV's disclosure states expressly that "[b]y clicking 'Start Trial,' you will be charged the price above monthly <u>until you cancel</u>." (Emphasis added).

*Fourth*, YouTube informs users in both Music/Premium and TV Buycarts that they can "Cancel anytime," which is a "description of the cancellation policy that applies" to YouTube's subscription products. ORS 646A.293(5)(b). A disclosure that users can "Cancel anytime" adequately describes YouTube's cancellation policy. *See, e.g.*, *Hall v. Time, Inc.*, No. SACV 19-01153-CJC(ADSx), 2020 WL 2303088, at *1-2, *4 (C.D. Cal. Mar. 13, 2020) (disclosure that users could "cancel[] at any time" adequately stated the cancellation policy under similar California ARL), *aff'd* 857 F. App'x 385 (9th Cir. 2021); *Rutter v. Apple Inc.*, No. 21-cv-04077-HSG, 2022 WL 1443336, at *6 (N.D. Cal. May 6, 2022) (disclosure that customers can "stop using the [s]ervice at any time" and cancel "by contacting Customer Support" is compliant with California's ARL).

Nowhere in their 208-paragraph complaint do Plaintiffs describe specific disclosures that were actually "missing" or provided in a "deficient" manner, or any that implied that the subscription might "automatically terminate." Instead, Plaintiffs resort to inventing a requirement that YouTube use specific phrasing—which Plaintiffs never disclose—to let users know that "formal cancellation[]" is required to cancel the subscription. *E.g.*, SAC ¶ 62 (Asserting that the disclosure that "billing … will renew automatically" was insufficient to put users on notice that

YouTube would automatically charge recurring fees). "Formal cancellation" appears nowhere in the statute, and in any event, unlike some other consumer statutes, the ARL statute does not mandate any "magic words" for compliant disclosures. *Compare, e.g.*, ORS 646A.735 (mandating a specific disclosure in equity conveyancing) *and* ORS 646A.710 (same, for foreclosure consulting agreements) *with* ORS 646A.295.

YouTube's disclosures are in plain English, eschewing legalese or unclear language (like Plaintiffs' proposed "formal cancellation" phrasing). The disclosure specifically tells members that "*Billing* … will *renew automatically* every month" (YouTube Music/Premium), SAC ¶ 56 (emphasis added), or that "you will be charged the price above monthly *until you cancel*," (YouTube TV), *id.* ¶ 57. YouTube reiterates elsewhere on the page that these charges are "monthly," leaving no ambiguity that charges will continue until canceled, as required by the ARL. *Id*. Plaintiffs cannot and do not point to any part of the disclosure that would cause a user to think that cancellation might *not* be necessary.

Plaintiffs next complain that the Buycarts' "description of the cancellation policy" is not "complete," in three ways: it does not include the "full cancellation policy", it "contain[s] no explanation of *how* to cancel," and it fails to provide information about refunds. SAC ¶ 66. All three are invented requirements. The ARL's requirement is simple: businesses must provide a "description of the cancellation policy" in the Buycart. ORS 646A.293(5)(b) (emphasis added). The statute does not require YouTube to include the "full cancellation policy," which would overwhelm the Buycart with small-print and render it cramped and hard to read—exactly the opposite of what the ARL mandates. A "description of the cancellation policy" is also not "information regarding *how* to cancel," which the ARL mandates must be provided in the receipt, *not* in the Buycart. *Compare* ORS 646A.295(1)(a) with ORS 646A.295(1)(c). Nor does the ARL

mandate disclosure of a refund policy in the Buycart. *See* ORS 646A.293(5); *cf. Hall*, 2020 WL 2303088, at *1-2, *4 (finding statement "cancel[] at any time" to be compliant even though there was no information about refunds, which was included in the post-sale receipt). Even so, both the Music/Premium and TV Buycarts clearly disclose that there are "No refunds for partial months," SAC ¶ 56 (YouTube Music/Premium), SAC ¶ 57 (YouTube TV)—flatly contradicting Plaintiffs' false allegation that YouTube fails to disclose that refunds are not available once a consumer has "commenced using the relevant [YouTube Subscription]." *Id.* ¶ 66.

Lastly, Plaintiffs allege that YouTube fails to disclose a purported policy that members must cancel their subscriptions "at least 24 hours before the end of the current period." SAC ¶ 66. The allegations and documents referenced in the Second Amended Complaint establish that this "24 hour" cancellation policy is irrelevant to Plaintiffs' claims, because it was not in force during the time period at issue in the Complaint. The provision of the Terms of Service cited in the Complaint show that the 24-hour policy was only applicable to YouTube TV. *Id.*, n. 56 (citing "Additional Terms for YouTube TV," https://www.youtube.com/t/terms_paidservice?archive=20220518-en ("Paid TOS")), and was limited to subscriptions purchased through the Apple iTunes store.[2] *See* Paid TOS (stating "Your subscription will be billed *to your iTunes account* within 24 hours before the end of the current period…." (emphasis added)). Molina, the only Plaintiff to make a claim about YouTube TV, did not allege that he signed up for YouTube TV through the Apple iTunes (or Apple App) store; to the contrary, he alleges that he signed up for YouTube TV from the YouTube website. SAC ¶ 11.

---

[2] Because Plaintiffs' allegations concerning the purported 24- hour cancellation policy reference and rely on the Paid Terms of Service, *see* SAC. ¶ 66 n.56, they are incorporated into the Second Amended Complaint and the Court can consider them on a motion to dismiss. *See J.K.J.*, 42 F.4th at 997.

And, as Plaintiffs acknowledge in their Complaint, *see* SAC ¶ 2 n.2, YouTube stopped accepting signups through Apple devices in March 2020,[3] two years before Molina alleges that he signed up for YouTube TV (and before the one-year statute of limitations under the UTPA. ORS 646.638(6)). These allegations establish that the 24-hour policy never could have applied to any of the Plaintiffs.

## B.    YouTube's Disclosures are Clear and Conspicuous

The ARL requires the disclosure of "the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner." ORS 646A.295(1)(a). Recognizing that it would be confusing and unhelpful to bold or highlight all disclosures, the legislature expressly provided that services could use a variety of techniques to make disclosures "clear and conspicuous" by "clearly call[ing] attention to the language," including "contrasting type, font or color," and separation by "symbols or other marks." ORS 646A.293(2). Each of the YouTube Music/Premium and YouTube TV Buycarts uses a variety of techniques to make the disclosures clear and conspicuous.

### *YouTube Music/Premium*

The YouTube Music/Premium Buycart makes the disclosures clear and conspicuous in 4 ways, indicated in the numbered diagram below: (1) using contrasting type; (2) using markings to separate text; (3) using white space to differentiate sections of the buycart; and (4) using color to highlight links and actions.

---

[3] *See* SAC ¶ 2 n.2 (quoting https://www.macrumors.com/2020/02/13/youtube-tv-app-store-subscriptions-ending/).



The renewal term (monthly) and price are bolded, as is the disclosure that billing for the membership renews "automatically every month." The description of the cancellation policy—that members can "[c]ancel anytime" but will not be refunded for partial months—is set off from the line immediately above and below with contrasting type. To set off the disclosures visually, YouTube uses a gray line to separate the charging information at the top of the Buycart from the user's payment information in the middle. White space is used to emphasize the automatic renewal and cancellation disclosures immediately below the payment information, so that the prospective member's eye is drawn to the text.

In addition to highlighting the disclosures in multiple ways, YouTube also allows the user to focus on the disclosures by avoiding "clutter" that might draw the consumer's eye away from the disclosures. *Cf., e.g., Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) ("[R]elatively uncluttered" registration page sufficiently clear to put user on notice of terms and conditions); *Lundbom v. Schwan's Home Serv.*, No. 3:18-cv-02187-IM, 2020 WL 2736419, at *7

(D. Or. May 26, 2020) (User's agreement enforceable because the offer page was "not buried in distracting content" and the "registration page is not cluttered.").

### *YouTube TV*

The YouTube TV Buycart also uses four different techniques to call attention to the ARL disclosures, as shown in the image below: (1) disclosures are delineated using contrasting background colors (grey, black, and white); (2) grey lines are used to divide sections; (3) longer text disclosures are presented in dark font against a white background, and (4) links and the button are presented in blue, to make them easy to see.



As with the YouTube Music/Premium Buycart, there is no extraneous text on the YouTube TV Buycart; almost all of the text is directly related to an ARL disclosure.

To manufacture a claim, Plaintiffs eschew specifics and instead rely on conclusory and self-serving allegations. Instead of addressing what YouTube's Buycarts disclose, they vaguely allege that because of YouTube's "missing and otherwise deficient" disclosures, they were "unaware that [they had been] enrolled [] in an 'automatic renewal' programs under which their YT Subscription would renew each month and results in continuous monthly automatic renewal charges." SAC ¶ 68 (Briggs), ¶ 91 (Walkingeagle), ¶ 138 (Molina). They also all allege that they believed that the subscription would "automatically terminate," SAC ¶ 91 (Walkingeagle), ¶ 120 (Briggs), ¶ 138 (Molina)—which is contrary to the plain language of the disclosures. *See* SAC ¶ 56 (YouTube Music/Premium Buycart stating "Billing starts on [date], the end of your free trial"; ¶ 57 (YouTube TV Buycart stating "By clicking 'Start Trial,' you will be [billed] … monthly until you cancel."). But as shown above, YouTube's disclosures can "easily be understood by the average person" and are emphasized using a variety of techniques so they stand out to users. *Cf. Mendoza v. Lithia Motors, Inc.*, No. 6:16-CV-01264-AA, 2019 WL 1440260, at *5-6 (D. Or. Mar. 30, 2019) (noting that "strict recitation of the statute is not required to meet the clear and conspicuous standard" in motor vehicle sales disclosures), *aff'd*, 818 F. App'x 715 (9th Cir. 2020). That is all the ARL requires.

### C. YouTube Conspicuously Discloses the Price in Visual Proximity

The ARL also requires that the "automatic renewal offer terms" be "in visual proximity… to the request for consent to the offer." ORS 646A.295(1)(a).

YouTube's disclosures are clearly in visual proximity to the "request for consent," which in the case of the YouTube Buycarts is the bright blue "Start [] Trial" button at the bottom of the Buycart screen.



YouTube's ARL disclosures and the "Start [] Trial" button appear on a single screen, with no scrolling required—even on smaller phone screens. Disclosures about the automatically renewing nature of the subscription, the monthly term, and the cancellation policy are made in a block of text above the button. The words that separate the price from the button are themselves part of the terms of the recurring offer, including the disclosures required by the ARL.

The same is true of the YouTube TV disclosure. The automatically renewing nature of the subscription, the monthly renewal term, and the description of the cancellation policy are located in a block of text directly above the "Start Trial" button; the price is directly above, separated only by four lines of text concerning the user's payment method.



To manufacture a claim, Plaintiffs invent a required "relevant" portion of page "with which the ARL is concerned." *Id.* ¶¶ 62, 63. Plaintiffs assert that the price disclosure must appear in "the block of text immediately above the 'START [] TRIAL' button." *Id.* ¶¶ 56, 66. By focusing only on the price term, Plaintiffs implicitly concede that the remainder of YouTube's disclosures are all within "visual proximity." SAC ¶ 63

As to the price term, the ARL does not mention, and does not require, that disclosures be made in a particular part of a page. Had the legislature intended to require that ARL disclosures be in "immediate proximity" to the checkout button, it knew how to—Oregon law requires such disclosures in other contexts. *See, e.g.*, ORS 646A.735(1)(f) (requiring a disclosure in "immediate proximity" to the signature in equity conveyancing); ORS 646A.710(1)(f) (requiring disclosure in "immediate proximity" to signature in foreclosure consulting agreements); *cf.* OAR 137-020-

0020(2)(j)(B) (requiring "direct proximity" for certain disclosures in auto sales). But the Legislature did not choose to use "immediate" proximity for disclosures in the ARL context, for good reason: the result would be cramped and confusing, undermining the very purpose of the statute. In addition, Plaintiffs' invented requirement of immediate proximity could force YouTube to move the section of the Buycart concerning payment method information *above* the price— which would mean that users would be told what payment method was being used *before* they saw how much they were being asked to pay. That would be inconsistent with the consumer protection goals of the ARL.

By requiring "visual proximity," the Oregon legislature allowed companies to design their automatic renewal offers in a way that would make disclosures clearly visible to a user on a single page, without requiring the user to navigate small print or dense lines of text. That is precisely what YouTube has done here.

Plaintiffs' attempt to rewrite the ARL's "visual proximity" requirement has been tried before, and rejected. In *Hall v. Time*, the plaintiff alleged that a magazine subscription offer was not compliant with the ARL because disclosures required by the ARL were separated from the order button by a promotion for another magazine. The district court dismissed the complaint, and the Ninth Circuit affirmed, holding that the statute required "visual *proximity*," not immediate *adjacency*, between the "automatic renewal offer terms" and "the request for consent." *Hall v. Time, Inc.*, 857 F. App'x 385, 385-86 (9th Cir. 2021) (citing Cal. Bus. and Prof. Code § 17602(a)(1)) (emphasis added). Plaintiffs' allegation of an ARL violation is indistinguishable from the one in *Hall*, and the Court should reach the same result here.

### D.    YouTube Obtains Affirmative Consent

The ARL requires that businesses obtain a "consumer's affirmative consent to the agreement containing the automatic renewal offer terms" before charging the consumer.

ORS 646A.295(1)(b). In both the Music/Premium and TV Buycarts, YouTube obtains a consumer's consent by having them click a blue button that says "START [] TRIAL," which immediately follows the required disclosures, a link to the applicable terms, and a confirmation of the users' age. *See* SAC ¶ 56 (Music/Premium), ¶ 57 (TV). Courts routinely uphold agreements where, as here, users "affirmatively acknowledge" the agreement (as here, by clicking a sign-up button), and the website contained "explicit textual notice" that doing so would "act as a manifestation of the user's intent to be bound." *Dohrmann*, 823 F. App'x at 484 (citation omitted).

To manufacture a claim, Plaintiffs invent a requirement that YouTube must include a separate checkbox for consent to the ARL terms. SAC ¶¶ 59, 69. But there is no such requirement. The only state that requires a separate "opt-in" for the automatic renewal provisions is Vermont. *See* 9 V.S.A. § 2454a(a)(2) (requiring that "in addition to accepting the contract, the consumer [must] take[] an affirmative action to opt in to the automatic renewal provision."). Oregon could have taken the same approach as Vermont. The fact that it did not establish that, no additional separate consent is required.

This too was attempted and rejected in *Hall*. Like Plaintiffs here, the plaintiff in *Hall* argued that the defendants in that case failed to secure consent to the automatic renewal offer terms. The Ninth Circuit explicitly rejected this extra-statutory requirement, because:

> [h]ad the legislature intended to require a consumer's affirmative consent to the automatic renewal terms specifically, it could have omitted the words "the agreement containing" from the provision … we decline to rewrite the statute and impose a requirement that is absent from the text.

*Hall*, 857 F. App'x at 387; *cf. Dohrmann*, 823 F. App'x at 483 (user manifested assent to Terms of Use in registration flow); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 395 (9th Cir. June 12, 2020) (same).

### E. YouTube's Receipts Fulfill the Acknowledgment Requirement

Finally, the ARL requires YouTube to send an acknowledgement that:

> includes the automatic renewal offer terms or continuous service offer terms and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the person shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

ORS 646A.295(1)(c). Acceptable cancellation methods for services that directly bill their customers include "a toll-free telephone number, electronic mail address, a post-office address only when the person directly bills the consumer, or another cost-effective, timely and easy-to-use mechanism for cancellation." ORS 646A.295(2).

YouTube's receipts include all required information, and are "capable of being retained by the consumer" because users can save the email. *See* ORS 646A.295(1)(c). The emails describe the (1) length of the applicable trial, (2) inform users that they will be "charged monthly," (3) provide a specific date on which charges will begin, (4) the amount of those charges, and (5) provide information on how to cancel. *See* SAC ¶¶ 72, 73.




Similarly, the YouTube TV email informs users that they will be charged their "membership price on a recurring basis" and provides the "Monthly price" as well as the date the charges will start.

To manufacture a claim, Plaintiffs invent a requirement that the receipts must "provide a toll-free telephone number, electronic mail address, or a post-office address." SAC ¶ 77.[4] This argument is meritless because telephone calls, postal mail, or email are just *options* for cancellation methods, not requirements. The YouTube Music, Premium and TV receipts make it easy for users to cancel their accounts by providing links to cancel—exactly the sort of "cost-effective, timely and easy-to-use mechanism for cancellation" that is required by the ARL. ORS 646A.295(2). In the YouTube Music and Premium receipts, YouTube includes a bolded header for "**Cancellations**," and states "You can <u>cancel your Music Premium Membership</u> any time" with the underlined hyperlink allowing users to cancel in just a few clicks. In the YouTube TV receipt, the link to cancel is provided **twice**: once at the top of the email ("If you want to … cancel before your next charge, go to your <u>YouTube TV settings</u>") and at the bottom of the email ("You can <u>cancel</u> your subscription without charge ….") (hyperlinks omitted).

Users who click on the links in these emails can cancel through the website, which is clearly a cost effective, timely and easy-to-use mechanism for cancellation. This method of cancellation is not only permitted under the ARL—it is far simpler than cumbersome alternatives allowed (but not required) under the ARL, which include requiring a consumer to call or send postal mail. ORS 646A.295(2). In fact, other states now *mandate* that online services provide a cancellation method that is "exclusively online," if possible by link. Cal. Bus. & Prof. Code § 17602(c) (recently revised

---

[4] The Court should disregard Plaintiffs' repetitive and conclusory allegation that the receipts fail to include "the complete automatic renewal or continuous service terms that applied to the offer, a description of the full cancellation policy, or any specific information regarding how to cancel," SAC ¶¶ 75-77. *See, e.g.*, *J.K.J.*, 42 F.4th at 997 (court can disregard conclusory allegations), *Whitaker*, 985 F.3d at 117677 (same). These arguments fail for the same reasons as they fail with respect to the Buycarts. Plaintiffs also repeat their failed argument about the supposed 24-hour cancellation policy, which is inapplicable to Plaintiffs' claims for the reasons described in Section I.A.

California ARL); 815 ILCS 601/1 § 10(b-5) (Illinois) ("A consumer who accepts an automatic renewal or continuous service offer online must be allowed to terminate the automatic renewal or continuous service exclusively online").

Tellingly, Plaintiffs never allege that they kept the receipts, opened it, clicked the link in the email to cancel, or visited their user settings page where they could have canceled in a few simple steps. The Complaint dramatically alleges that Plaintiff Walkingeagle was unable to cancel, that Plaintiff Briggs had to cancel his debit card to stop recurring charges, and that Plaintiff Molina only succeeded in cancelling his account after several months—SAC ¶¶ 9-11[5] but it fails to allege that they did the bare minimum: use the cancellation method required by the statute. Plaintiffs' injury, if any, was not caused by any deficiency in YouTube's ARL disclosures or its cancellation policy, and so cannot give rise to a claim under the UTPA.

## II. YOUTUBE'S DISCLOSURES COMPLY WITH THE FOL

The Second Amended Complaint alleges that YouTube violates the FOL in three ways: by (1) failing to present the free offer terms in a "clear and conspicuous manner"; (2) failing to obtain affirmative consent to subsequent financial obligations; and (3) failing to allow customers to cancel their subscriptions. SAC ¶ 6.

### A. YouTube Discloses The Terms of The Free Offer

The FOL mirrors the requirements of the ARL, requiring that services disclose certain "terms of the free offer" in a "clear and conspicuous information": (i) the "enrollments in a membership, subscription or service" that result from accepting the free offer, ORS 646.644(2)(a); (ii) the "cost" or "obligation" incurred by the consumer if they accept the free trial offer, ORS

---

[5] Confusingly, the Second Amended Complaint elsewhere alleges that Briggs canceled his subscription by "instituting a block on his bank account." SAC ¶ 123.

646.644(2)(b); (iii) a "statement … that by accepting the free offer, the consumer will become obligated for . . . enrollment" in a paid YouTube subscription "unless the consumer takes affirmative action to cancel the free offer" or the subscription, ORS 646.644(2)(d); (iv) "the consumer's right to cancel the free offer using procedures specifically identified for that purpose," in a manner that is "substantially similar to that by which the consumer accepted the free offer," ORS 646.644(2)(e); (v) "[t]he time period during which the consumer must cancel in order to avoid incurring a financial obligation as a result of accepting the free offer[,]"ORS 646.644(2)(f); and (vi) "the consumer's right to receive a credit on goods or services received as a result of accepting the free offer," ORS 646.644(2)(g).

As with disclosures required under the ARL, each of these disclosures under the FOL must be made using "clear and conspicuous information." ORS 646.644(2). The FOL's clear and conspicuous requirement for visual disclosures is nearly identical to that of the ARL, requiring the disclosures to be presented in an appropriate size, color, and location so they are "readily noticed and understood." ORS 646.644(1)(c). But, unlike the ARL (which sets separate proximity requirements for visual and audio disclosures), the FOL's definition of "clear and conspicuous" merely specifies that regardless of medium, the disclosure should be in "close proximity" to the request for consent. *Compare* ORS 646.644(1)(c) (FOL) *with* ORS 646A.295(1)(a) (ARL). YouTube complies with the FOL in all respects.

*First*, YouTube "[i]dentif[ies]" the membership program in which a user is enrolling by accepting the free trial offer, ORS 646.644(2)(a). In the YouTube Music/Premium Buycart, YouTube notifies users that they are "Complet[ing a] purchase" for a "YouTube Premium Membership" at the top of the screen, and notes again immediately above the button that they are "buying a paid membership." SAC ¶ 56.



Similarly, the YouTube TV Buycart discloses at the top of the screen that users are making a purchase—not for a one-time expense but for a "Base *Plan*" for YouTube TV. SAC ¶ 57 (Emphasis added). And as discussed in Section I.A, *supra*, the YouTube TV Buycart makes clear in multiple places that the Plan is for a service that is billed monthly.



The disclosures in both Buycarts are "clear and conspicuous" because they are presented in simple, straightforward language, set off by lines and contrasting colors to the background. As described in Section I.B, *supra*, there are no distractions. The disclosures are in close proximity to the button through which users indicate their consent to the offer, with the disclosure that consumers are "buying a paid membership" (YouTube Music/Premium") or "will be charged … monthly" (YouTube TV) directly above the button and the other disclosures only a few lines of text above.

Plaintiffs do not include any specific allegations that would show that YouTube fails to clearly and conspicuously "identif[y]" the membership program to which users are subscribing, and instead merely recite the statutory requirements. SAC ¶ 67. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Boyack v. Regis Corp.*, 812 F. App'x 428, 431

(9th Cir. 2020) (Allegations were insufficient where "each claim provides only conclusory allegations reciting the statutory elements.").

*Second*, YouTube discloses "[t]he cost to the consumer of any financial obligation the consumer will incur if the consumer accepts the free offer." ORS 646.644(2)(b). As set forth in Section I.A, *supra*, which addresses a similar provision in the ARL, the Buycarts clearly disclose the cost of membership. The Buycarts make clear that users are "[c]omplet[ing] a *purchase*," that there is no cost ($0.00) for the free trial but a "[m]onthly charge" afterwards and notifies users of the specific date monthly billing will start, and it lists the payment information that will be used. The YouTube TV Buycart also discloses any promotional pricing that will apply to the offer, and the duration of that pricing. Again, these disclosures are clear and conspicuous because they are in different sizes, type, and colors and only a few lines of text away from the "Start [] trial" button, with no scrolling required.

Plaintiffs' conclusory allegations that Defendants do not disclose the cost of membership therefore fails. SAC ¶ 65. To the extent Plaintiff is relying on its allegation that YouTube fails to disclose information required by the ARL in a so-called "relevant portion" of the page, that invented requirement has nothing to do with any disclosure requirements under the FOL and fails for the same reason it does for the ARL. *See* Section I.A, *supra*.

*Third*, YouTube discloses to consumers that by starting the free trial, the consumer "will become obligated for … enrollment in a membership, … unless the consumer takes affirmative action to cancel the free offer or otherwise reject … enrollment in a membership." ORS 646.644(2)(d). As discussed in Section I.B, *supra*, with respect to the ARL, YouTube clearly discloses to users that, once billing starts at the end of the free trial, it renews automatically until the user takes action to cancel, which they can do "anytime" in their account. These disclosures

are just lines of text away from the "Start [] Trial" button. Plaintiffs again merely parrot the language of the statute, SAC ¶ 64, and do not state why these disclosures fail to comply with the ARL.

**Fourth**, YouTube discloses to users that they have a "right to cancel the free offer using procedures specifically identified for that purpose that, at a minimum, enable the consumer … to cancel in a manner substantially similar to that by which the consumer accepted the free offer." ORS 646.644(2)(e). Both the Music/Premium and TV Buycarts plainly do what the statute requires: they tell users that they can "cancel anytime" in their account. In both the YouTube Music/Premium and YouTube TV Buycarts, these disclosures are directly above the "Start [] Trial" button, set off against the white space.

### *YouTube Music/Premium:*



### *YouTube TV:*



Cancellation in a user's account is "substantially similar" to the method consumers use to sign up for YouTube's paid products. Users sign up online, and "agree[]" to the free offer on a specific page via a controlled purchase flow—the Buycart. And they can likewise cancel online, by so indicating on a specific page via a controlled process flow—the Settings page. A link to that

page is provided in the receipt discussed in Section I, *supra*. YouTube's cancellation process is therefore compliant with Oregon law, which, as discussed *supra* in Section I.A, is similar to other states which require online cancellation methods for online subscriptions. *See* Cal. Bus. and Prof. Code § 17602(d)(A) (California); 815 ILCS 601/1 § 10(b-5) (Illinois).

Plaintiffs do not explain why allowing users to cancel in their "Settings" page is not "substantially similar" to the method for agreeing to the free offer terms. They simply allege that Walkingeagle and Molina tried to cancel "through the click of a button on the YT Website," but could not find one. SAC ¶¶ 100, 144, 202. But the statute does not require that YouTube include a cancellation button on every page of the YouTube website, because a user cannot "agree[]" to the free offer on any page of the site. By providing a link to cancel in the Settings page, YouTube complies.

***Fifth***, YouTube discloses "[t]he time period during which the consumer must cancel in order to avoid incurring a financial obligation as a result of accepting the free offer," ORS 646.644(2)(f). The YouTube Music/Premium Buycart states that "Billing starts on [DATE], the end of your free trial, and will renew automatically every month."



Similarly, the YouTube TV Buycart states at the top of the page the specific date on which the promotional rate or regular billing starts, and it expressly states that users "will be charged the amounts above until you cancel." SAC ¶ 57.



Again, these disclosures are clear and conspicuous because they are only three lines above the "Start 3-Month Trial" button.

To gin up a violation of this provision, Plaintiffs first rehash their allegations about the 24-hour policy, discussed in Section I.A, *supra*; SAC ¶ 66 n.56. But for the reasons discussed above, it is clear from the Complaint itself that the 24-hour cancellation policy could never have applied to Plaintiffs. SAC ¶ 2 n.2.

Plaintiffs also allege that YouTube failed to disclose a policy that refunds were only available if a user canceled within 7 days of the start of the free trial, and claim that this violates the requirements of the FOL. SAC ¶ 103.[6] This is not a cancellation policy; it is a refund policy—which is not subject to the FOL requirements. As YouTube discloses, users can "cancel anytime."

---

[6] Plaintiffs cite the current version of the Paid Terms of Service, which became effective on May 18, 2022. *See* SAC ¶ 66 nn. 54, 55 (citing https://www.youtube.com/t/terms_paidservice). The current terms do not include the language quoted in the Second Amended Complaint. The quoted language appeared in the prior version of the Terms of Service ("2018 Paid TOS"), which was effective from June 18, 2018 through May 18, 2022, and which is linked to the current one and remains available for users to access.

If they cancel before the end of the free trial period, they will never be charged. Similarly, if they cancel after the free trial ends and the paid service commences, they will never be charged after they cancel (and they will continue to have any access they have already paid for before they canceled). Whether they will be refunded any amounts already paid is an entirely different matter. The FOL explicitly recognizes this distinction. Its focus is on what users must do to "<u>avoid</u> incurring a financial obligation." ORS 646.644(2)(f) (emphasis added). It does not extend to what users must do to recover amounts already paid. YouTube's disclosures fully comply because they spell out the steps necessary to avoid being charged.

*Last*, the FOL requires, only if it is "applicable" to the offer at issue, that the service disclose "the consumer's right to receive a credit on goods or services received as a result of accepting the free offer when the goods or services are returned or rejected …." SAC ¶ 67 (emphasis omitted) (citing ORS 646.644(2)(g)). This provision is not applicable to the free trials offered by YouTube: there is no way to "return[] or reject[]" YouTube services for a "credit"; the service ends once a user stops using it. As YouTube clearly discloses, there is no charge for the "free trial," billing only starts on a specified date at the end of the free trial, and users are not refunded for partial billing periods. Plaintiffs allege a violation of this FOL provision, but do not even bother to explain how YouTube *could* violate it, let alone allege facts that would show that YouTube *did* violate it.

### B. YouTube Obtains Affirmative Consent

Like the ARL, the FOL requires that YouTube secure a consumer's "affirmative consent" to the terms of the free trial offer. But unlike the ARL, the FOL defines the term "affirmative consent" as "a consumer's agreement to incur a financial obligation as a result of accepting a free offer … given or made in the manner specifically identified for the consumer to indicate the consumer's agreement." ORS 646.644(1)(a). The statute therefore enables YouTube to designate

how consent can be expressed, rather than dictating a particular design. As explained above in Section I.D, *supra*, both the Music/Premium and TV Buycarts do just that by requiring users to click a clearly-labeled blue button to express their consent. *See* SAC ¶ 56 (Music/Premium), ¶ 57 (TV). This disclosure satisfies the requirements of the FOL, and is consistent with how other websites require users to manifest assent to agreements. *Cf. Dohrmann*, 823 F. App'x at 483 (user manifested assent to Terms of Use in registration flow); *Lee*, 817 F. App'x at 395 (same).

Plaintiffs merely repeat their failed assertion that YouTube is in violation of FOL because it does not include a checkbox for the user to indicate consent to the terms. SAC ¶ 69. As with the ARL, this is an invented requirement with no basis in the statute—and the FOL's statutory definition of "affirmative consent" makes clear that YouTube's disclosure is all that is required.

C.     **YouTube Provides A Cancellation Mechanism That Is Substantially Similar To The Procedures Used To Accept The Offer**

Plaintiffs also allege that Walkingeagle and Molina "used an excessive amount of time searching through the YT Website for a cancellation button or other similar online mechanism for cancellation, to no avail." SAC ¶¶ 100, 144, 202. This self-serving allegation gets Plaintiffs nowhere. The statute does not base compliance on a user's subjective assessment of whether he spent an "excessive" amount of time trying to cancel. The FOL requires only that YouTube cancel subscriptions after a user "used, or made reasonable efforts to attempt to use, one of the [cancellation] procedures required by subsection (2)(e)" of the FOL, ORS 646.644(5)—that is, "a manner substantially similar to that by which the consumer accepted the free offer," ORS 646.644(2)(e). In YouTube's case, that is the link to cancel in Plaintiffs' account Settings. Aimlessly "searching through the YT Website for a cancellation button" is not "substantially similar" to the way either Plaintiff Walkingeagle or Molina "accepted the free offer." ¶¶ 100, 144, 202. YouTube discloses a mechanism for cancellation that is "substantially similar" to the

mechanism for signing up by allowing users to cancel in their Settings, and is therefore not liable for Plaintiffs' failure to take advantage of this easy and clearly-disclosed cancellation method.

## CONCLUSION

YouTube complied with the ARL and FOL's disclosure, consent, and acknowledgment requirements. Plaintiffs' claims are brought under the UTPA for a violation of the ARL and FOL. *See* ORS 646.608(1)(sss), (ttt). Because Plaintiffs fail to show any violation of the ARL or FOL, their Complaint, including their putative class claims, must be dismissed.

DATED:  December 2, 2022                WILSON SONSINI GOODRICH & ROSATI


*s/ Victor Jih*
Victor Jih
vjih@wsgr.com

Attorneys for Defendants GOOGLE LLC,
d/b/a YOUTUBE and YOUTUBE, LLC

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), because it contains 7,813 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.