IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **VICTOR WALKINGEAGLE, NATHAN BRIGGS,** and **DONALD MOLINA,** on behalf of themselves and all other similarly situated**,** | Case No. 3:22-cv-00763-MO<br><br>**OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| **GOOGLE LLC, d/b/a YOUTUBE,** a Delaware limited liability company, and **YOUTUBE, LLC,** a Delaware limited liability company, | |
| Defendants. | |

**MOSMAN, J.,**

Before me is Defendants' Motion to Dismiss Plaintiffs' Corrected Second Amended Complaint [ECF 36]. Oral argument was held on May 8, 2023. Mins. of Proceedings [ECF 47]. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Defendants argue that Plaintiffs fail to show any violation of the Automatic Renewal Law or Free Offer Law in their complaint and that Defendants complied with the disclosure, consent, and acknowledgment requirements.

For the following reasons, I GRANT Defendants' Motion to Dismiss and dismiss this case with prejudice.

1 – OPINION & ORDER

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers only "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). While the plaintiff does not need to make detailed factual allegations at the pleading stage, the allegations must be sufficiently specific to give the defendant fair notice of the claim and the grounds on which it rests. *Id.*

Review on a motion to dismiss is normally limited to the complaint itself. If the court relies on materials outside the pleadings to make its ruling, it must treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d); *Carstarphen v. Milsner*, 594 F. Supp. 2d 1201, 1207 (D. Nev. 2009) (citing *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). But the court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 908; *see also Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. Further, the court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1135 n.1 (9th Cir. 2013).

## BRIEF BACKGROUND

YouTube, LLC ("YouTube" or "YT") and its parent company, Google LLC, offer multiple applications and services across their digital platforms. *See* Corrected Second Am. Compl. ("CSAC") [ECF 34] ¶ 1. The three automatic renewal programs at issue in this matter are YouTube Music, YouTube Premium, and YouTube TV. *Id.* ¶¶ 1–2.

Plaintiffs Victor Walkingeagle, Nathan Briggs, and Donald Molina filed this putative class action lawsuit alleging Defendants failed to provide the mandatory disclosures required by Oregon's Automatic Renewal Law ("ARL"), ORS 646A.295, and Free Offer Law ("FOL"), ORS 646.644, in violation of the Unlawful Trade Practices Act ("UTPA"), ORS 646.608(1)(ttt), (sss). *Id.* ¶ 1. All Plaintiffs allege Defendants failed to comply with the ARL because they (1) did not present the automatic renewal offer terms in a clear and conspicuous manner in visual proximity to the request for consent (citing ORS 646A.295(1)(a)); (2) charged Plaintiffs' payment methods without first obtaining affirmative consent (citing ORS 646A.295(1)(b)); (3) did not provide an acknowledgement including the offer and cancellation terms (citing ORS 646A.295(1)(c)); and (4) did not disclose a toll-free number or describe another feasible mechanism for cancellation (citing ORS 646A.295(2)). CSAC ¶¶ 6, 60, 177. Plaintiffs Walkingeagle and Molina allege Defendants violated the FOL because they failed to (1) provide requisite pre-purchase disclosures before charging consumers (citing ORS 646.644(2)(a)–(b), (d)–(g)); (2) obtain affirmative consent before charging consumers (citing ORS 646.644(4)); and (3) cancel the free trial when the consumer has used one of the cancellation procedures (citing ORS 646.644(5)). CSAC ¶¶ 198–99, 202.

## DISCUSSION

The ARL requires disclosure of automatic renewal offer terms in visual proximity to the request for consent to the offer and in an acknowledgment provided to the consumer. *See* ORS

3 – OPINION & ORDER

646A.295(1)(a), (c). Under the ARL, "offer terms" include "[t]he description of the cancellation policy that applies to the offer." ORS 646A.293(5)(b). Notably, the statute requires a *description* of the cancellation policy, not disclosure of the *complete* policy. Under the FOL, a person making a free offer must provide certain terms of the offer, including "[t]he time period during which the consumer must cancel in order to avoid incurring a financial obligation as a result of accepting the free offer." ORS 646.644(2)(f).

Plaintiffs find YouTube's disclosures insufficient pursuant to the above statutes because the checkout pages and acknowledgement emails do not reference YouTube's 7-day and 24-hour refund and cancellation policies, described in further detail below.

**I.      7-day Policy**

Plaintiffs allege the checkout pages fail to

> place subscribers on notice that, in order to receive a refund upon cancellation, the customer must have "not commenced using the relevant [YT Subscription] ordered and [the customer must make the] request no later than 7 working days after [his or her] order is completed," or that where "[a customer's purchase] order includes a free trial [], the 7 day period for requesting a refund begins at the beginning of the free trial, not when [the customer is] subsequently billed for the [YT Subscription]" as is also set forth elsewhere in the YT Website.

CSAC ¶ 66 (Plaintiffs cite *YouTube Paid Service Terms of Service* (effective May 18, 2022), https://www.youtube.com/t/terms_paidservice; however, the quoted language appears in *YouTube Paid Service Terms of Service* (effective June 18, 2018), https://www.youtube.com/t/terms_paidservice?archive=20180618-en).

Plaintiffs allege the acknowledgement email is similarly deficient for failing to include the 7-day refund policy. *See id.* ¶ 126.

Here, the facts pertaining to the 7-day refund policy do not state a legal claim of an ARL or FOL violation. The ARL's definition of "offer terms" includes a description of the cancellation policy that applies to the offer, but it does not include a description of refund policies. The language of the ARL does not encompass disclosure of refund policies that do not affect the ability to

terminate the subscription agreement. Further, the FOL does not govern refunds related to charges incurred after the free offer expires. Under ORS 646.644(2)(f), the FOL focuses on what consumers must do to "avoid incurring a financial obligation as a result of accepting the free offer" and not on how consumers recover amounts already paid. Therefore, excluding the 7-day refund policy from the checkout page and acknowledgement email does not violate the ARL or FOL.

## II. 24-hour Policy

Plaintiffs allege "Defendants do not specify anywhere on the Checkout Pages that customers must cancel their [YouTube] Subscriptions 'at least 24 hours before the end of the current period' in order to avoid being automatically renewed and billed for the following renewal term, as do terms set forth on other pages of Defendants' website." CSAC ¶ 66 (citing *YouTube Paid Service Terms of Service* (effective May 18, 2022), https://www.youtube.com/t/terms_paidservice). I consider the YouTube Paid Service Terms of Service ("Paid TOS") incorporated by reference in the complaint pursuant to the standard outlined in *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The quoted language is from the "Additional Terms for YouTube TV" section of the Paid TOS, and the entire paragraph reads as follows:

> Please note: YouTube TV is an auto-renewing subscription which will renew automatically each month. Please refer to your individual application for pricing information. Your payment will be charged to your iTunes account at confirmation of purchase. Please check your Membership tab under the Settings menu for details about your subscription and to cancel at any time. Your subscription automatically renews unless you cancel your subscription at least 24 hours before the end of the current period. Your subscription will be billed to your iTunes account within 24 hours before the end of the current period and the renewal charge will be your monthly charge plus any additional add-on content you may have elected.

*YouTube Paid Service Terms of Service* (effective May 18, 2022), https://www.youtube.com/t/terms_paidservice?archive=20220518-en.

5 – OPINION & ORDER

The reference to the 24-hour cancellation policy in the Paid TOS is limited both to YouTube TV and to iTunes subscriptions. The policy states that "[y]our payment will be charged to your iTunes account" and "[y]our subscription will be billed to your iTunes account," demonstrating the policy's limited applicability. Here, Plaintiff Molina allegedly signed up for a free trial of YouTube TV in February or March of 2022 from the YouTube website, not through iTunes. *See* CSAC ¶ 11. Further, Plaintiffs acknowledge that YouTube TV no longer accepts new signups through Apple subscriptions as of March 13, 2020. *See id.* ¶ 2 n.2.

Based on the allegations in the CSAC, coupled with the document incorporated by reference, it is clear that the 24-hour cancellation policy did not apply to Plaintiff Molina, the only plaintiff who subscribed to YouTube TV. Therefore, Plaintiffs fail to state a legal claim that Defendants violated the ARL and FOL by excluding information of the outdated 24-hour policy on YouTube's checkout pages and in its acknowledgment emails.

### III. Clear and Conspicuous

Under the ARL, "offer terms" refer to the following clear and conspicuous disclosures:

(a) That the subscription or purchasing agreement will continue until the consumer cancels.
(b) The description of the cancellation policy that applies to the offer.
(c) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal or continuous service plan or arrangement, and, if the amount of the charge will change, the amount to which the charge will change, if known.
(d) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.
(e) The minimum purchase obligation, if any.

ORS 646A.293(5)(a)–(e).

"'Clear and conspicuous' means in larger type than the surrounding text, or in contrasting type, font or color to the surrounding text of the same size, or set off from the surrounding text of the

same size by symbols or other marks, in a manner that clearly calls attention to the language." ORS 646A.293(2).

I face the question of whether a judge can decide if a reasonable consumer would find the disclosures to be clear and conspicuous based on the checkout page and acknowledgement email screenshots included in the CSAC, or whether the analysis is based on a plaintiff's subjective experience. I reject Plaintiffs' argument that the question is a subjective one, and I find that consumer survey data is not required to evaluate the sufficiency of Defendants' disclosures. Without the need for further facts, I am able to assess the disclosures through the reasonable consumer prism.

A.    YouTube Music and YouTube Premium

The CSAC contains screenshots of the checkout pages for YouTube Music and YouTube Premium, as copied below:





CSAC ¶ 56.

Here, both checkout pages contain the offer terms required under the ARL. The checkout pages state that the subscription "will renew automatically every month," that users can "cancel anytime in Settings," along with a hyperlink to "learn more," the price of the recurring monthly charge, and the length of the renewal term. *Id.* Further, as required by ORS 646A.295(1)(a), the terms are in visual proximity to request for consent to the offer, as they are featured on the same page without the need to scroll. Contrary to Plaintiffs' argument that the cancellation description must be immediately above the final checkout button, *see id.* ¶ 66, the ARL does not require immediate adjacency to satisfy visual proximity.

The disclosures also satisfy the clear and conspicuous requirement by using text with contrasting type as the surrounding text. The key offer terms are featured in bold font, and a gray line divides the page to further demarcate the terms. Similarly, the acknowledgement email contains clear and conspicuous disclosures by using bold font and highlighting the "cancellation"

section in a light blue box. CSAC ¶ 72. It also satisfies the ARL's requirement under ORS 646A.295(1)(c) to disclose how to cancel and allow the consumer to cancel before paying for the service. *Id.* ("As a member you can explore, manage, and cancel your membership any time by visiting YouTube account settings" (the underlined text indicating a hyperlink); "You can cancel your Music Premium membership any time.").

    B.    YouTube TV

The CSAC contains a screenshot of the checkout page for YouTube TV, as copied below:



CSAC ¶ 57.

9 – OPINION & ORDER

YouTube TV's checkout page includes the mandatory disclosures under the ARL by stating that the consumer "will be charged the price above monthly until [they] cancel," that the consumer can cancel anytime in their account, the recurring charge, and the length of the automatic renewal term. *Id.* The disclosures are in visual proximity to the request for consent to the offer, for example by being featured on one page without the need to scroll.

YouTube TV uses the third option under the clear and conspicuous definition, which is to use text "set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." ORS 646A.293(2). The checkout page uses contrasting background colors to separate the sections and includes gray lines that distinguish the different disclosures. As with the YouTube Music and YouTube Premium checkout pages, there is minimal extraneous text that would detract from the clear and conspicuous nature of the disclosures.

The acknowledgment email discloses the required offer terms in a clear and conspicuous manner by using bold font and gray lines to demarcate sections. CSAC ¶ 73. Further, pursuant to ORS 646A.295(1)(c), the acknowledgment email explains how to cancel, includes hyperlinks, and allows the consumer to cancel before paying for the service. *Id.* ("If you want to see your current membership details, change your payment method, or cancel before your next charge, go to your YouTube TV settings"; "You can cancel your subscription without charge until the end of your trial period.").

### IV.  Additional ARL Claims

#### A.  Acknowledgment Requirements

Plaintiffs claim that YouTube's acknowledgment emails violate ORS 646A.295(2), which provides that "[a] person making automatic renewal or continuous service offers shall provide a toll-free telephone number, electronic mail address, a post-office address only when the person

directly bills the consumer, *or* another cost-effective, timely and easy-to-use mechanism for cancellation that must be described in the acknowledgment required by subsection (1)(c) of this section." (emphasis added). Plaintiffs allege great difficulty in attempting to cancel their subscriptions, *see* CSAC ¶¶ 9–11, but fail to allege using the cancellation method provided by YouTube in the acknowledgment emails. Here, YouTube provides a "cost-effective, timely and easy-to-use mechanism for cancellation" through allowing users to cancel anytime by following the hyperlinks. Further, the acknowledgment emails address cancellation both in the beginning and end of the messages. From the face of the complaint, it is apparent that the mechanism for cancellation satisfies the ARL's requirements.

      B.    **Affirmative Consent**

Pursuant to ORS 646A.295(1)(b), it is unlawful to "[c]harge the consumer's credit or debit card or payment account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms." Unlike the FOL, the ARL does not define affirmative consent.

Plaintiffs' argument that Defendants violated the ARL in part by failing to require "consumers to select or click a 'checkbox' next to the automatic renewal offer terms to complete the checkout process," CSAC ¶¶ 59, 69, has no source within the language of the ARL. The ARL does not specify requiring a checkbox to satisfy affirmative consent. Here, consumers have the necessary information to make an informed decision to commence the free trial and automatic renewal plan. When reading the page top to bottom, consumers first encounter the automatic renewal offer terms, then the description of additional terms, and finally the agreement confirmation button. For YouTube Music and YouTube Premium, the checkout pages state that

11 – OPINION & ORDER

"[b]y clicking **Start 1-month Trial/Start 3-month Trial**, you're verifying that you're at least 18 years old, buying a paid membership, and agreeing to these terms." *Id.* ¶ 56. For YouTube TV, the checkout page states that "[b]y clicking 'Start Trial', you will be charged the price above monthly until you cancel, and you acknowledge that you understand and agree to these terms and verify that you are 18+." *Id.* ¶ 57. At the bottom of the checkout page, Defendants display a blue box with the words "START 1-MONTH TRIAL," "START 3-MONTH TRIAL," or "START TRIAL," depending on the service. *Id.* ¶¶ 56–57. Given that a consumer is presented with the automatic renewal terms in a clear and conspicuous manner before having the option to start the trial, I find that Defendants have satisfied the ARL's affirmative consent requirement.

V.     **Additional FOL Claims**

A.     **Required Disclosures**

Under the FOL, "[a] person may not make a free offer to a consumer, or impose a financial obligation on the consumer as a result of the consumer's acceptance of a free offer, unless the person provides the consumer with clear and conspicuous information regarding the terms of the free offer before the consumer agrees to accept the free offer," which includes a list of required disclosures. ORS 646.644(2)(a)–(h). The FOL's definition of "clear and conspicuous information" is "language that is readily understandable and presented in such size, color, contrast and location . . . compared to other language as to be readily noticed and understood, and that is in close proximity to the request for consent to a free offer." ORS 646.644(1)(c).

As demonstrated in the above screenshots of the checkout pages, Defendants include the required applicable disclosures, including the following: identification of the services that the consumer will receive and the financial obligation incurred as a result of accepting the free offer (*see* ORS 646.644(2)(a)); the costs incurred if the consumer accepts the free offer (*see* ORS

646.644(2)(b)); a statement explaining that "the consumer will become obligated for . . . enrollment in a membership . . . unless the consumer takes affirmative action to cancel the free offer or otherwise reject . . . enrollment in a membership" (*see* ORS 646.644(2)(d)); that users have a "right to cancel the free offer using procedures specifically identified for that purpose that, at a minimum, enable the consumer to cancel by calling a toll-free telephone number or to cancel in a manner substantially similar to that by which the consumer accepted the free offer" (*see* ORS 646.644(2)(e)); and "[t]he time period during which the consumer must cancel in order to avoid incurring a financial obligation" from accepting the free offer (*see* ORS 646.644(2)(f)). Subsection (g), which pertains to a "consumer's right to receive a credit on goods or services received as a result of accepting the free offer when the goods or services are returned or rejected," ORS 646.644(2)(g), is not applicable in this context given that there is no way to return or reject a free trial for a credit, as the service ends once a user stops subscribing to it.

For similar reasons addressed in Section III, the disclosures meet the FOL's clear and conspicuous requirement.

**B.    Affirmative Consent**

The FOL defines affirmative consent as "a consumer's agreement to incur a financial obligation as a result of accepting a free offer, or to provide the consumer's billing information, given or made in the manner specifically identified for the consumer to indicate the consumer's agreement." ORS 646.644(1)(a). The FOL prohibits imposing "a financial obligation on a consumer as a result of the consumer's acceptance of a free offer unless the consumer's affirmative consent to the terms of the free offer . . . ." ORS 646.644(4). For the same reasons outlined in Section IV.B, Defendants comply with the FOL's affirmative consent requirement.

13 – OPINION & ORDER

### C. Honoring a Cancellation Attempt

"A person that makes a free offer to a consumer may not fail or refuse to cancel the free offer if the consumer has used, or made reasonable efforts to attempt to use, one of the procedures required by subsection (2)(e) of [the FOL]." ORS 646.644(5). Subsection (2)(e) addresses "the consumer's right to cancel the free offer using procedures specifically identified for that purpose that, at a minimum, enable the consumer to cancel by calling a toll-free telephone number or to cancel in a manner substantially similar to that by which the consumer accepted the free offer." ORS 646.644(2)(e).

Here, consumers can cancel their YouTube service online by following the instructions outlined both on the checkout pages and in the acknowledgment emails. Cancelling through YouTube's website is substantially similar to how Plaintiffs enrolled in YouTube services, which was through the YouTube website. CSAC ¶¶ 9–11. Plaintiffs do not allege referring back to the acknowledgment email and following the steps explaining how to cancel. Plaintiffs' subjective confusion paired with the lack of allegations stating that Plaintiffs used procedures specifically identified for cancellation fail to state a legal claim of an ORS 646.644(5) violation.

### CONCLUSION

Employing the legal standard for a motion to dismiss described above, but viewed through the lens of a reasonable consumer, I find the challenged disclosures satisfy the legal requirements. Therefore, I find the Corrected Second Amended Complaint [ECF 34] fails to state a claim for which relief can be granted.

For the above-mentioned reasons, I GRANT Defendants' Motion to Dismiss [ECF 36] and dismiss this case with prejudice.

IT IS SO ORDERED.

DATED this 12 day of June, 2023.

MICHAEL W. MOSMAN
Senior United States District Judge